WILMER CUTLER PICKERING
HALE AND DORR LLP
Christopher E. Babbitt (*pro hac vice*)
David Gringer (*pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
christopher.babbitt@wilmerhale.com
david.gringer@wilmerhale.com

JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
Eric D. Gere – 023226
egere@jsslaw.com
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554
Telephone: (602) 262-5911
Facsimile: (602) 495-2633
MinuteEntries@jsslaw.com

*Attorneys for Defendant Salt River Project*
*Agricultural Improvement and Power District*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| William Ellis, Robert Dill, Edward Rupprecht, and Robert Gustavis, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Salt River Project Agricultural Improvement and Power District,<br><br>Defendant. | Case No. 2:19-cv-1228-SMB<br><br>**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 4

    A.    Arizona's Regulated Electricity Industry ............................... 4

    B.    The District Is A Public Power Utility ................................... 5

    C.    The District's Ratemaking Proceedings in 2014-2015 and 2018-2019 ............................................................................... 6

ARGUMENT ................................................................................................... 8

I.    PLAINTIFFS' CASE IS AN IMPROPER COLLATERAL ATTACK ON RETAIL ELECTRICITY RATES SET BY THE BOARD ....................... 8

    A.    The Filed Rate Doctrine Bars Plaintiffs' Claims ..................... 8

    B.    Plaintiffs' Failure To Follow A.R.S. §§ 30-810 To -812 Requires Dismissal Of All State-Law Claims ..................... 10

II.    STATE-ACTION IMMUNITY BARS PLAINTIFFS' ANTITRUST CLAIMS ................................................................................ 11

    A.    Arizona Has Displaced Competition With Ratemaking ....................... 11

    B.    Anticompetitive Effects Were The Foreseeable Result Of Arizona's Policy And The Legislature Therefore Exempted Public Power Utilities From The State's Antitrust Laws ..................... 13

    C.    Arizona Has Not Changed Its Policy On The District's Immunity ....................... 15

III.    PLAINTIFFS' STATE-LAW CLAIMS ARE BARRED UNDER ARIZONA'S ACTIONS AGAINST PUBLIC ENTITIES AND PUBLIC EMPLOYEES ACT ............................................................... 17

    A.    Arizona's One-Year Statute Of Limitations Bars All State-Law Claims ............................................................... 17

    B.    A.R.S. § 12-821.01 Compels Dismissal Of Plaintiffs' State-Law Claims ............................................................... 18

IV.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM ............. 19

A. Plaintiffs Fail To State A Claim Under Federal Or State Antitrust Law ...... 19

 1. Plaintiffs Have Not Plausibly Alleged Causal Antitrust Injury ...... 20

 2. Plaintiffs Have Not Plausibly Alleged Exclusionary Conduct ...... 21

 3. Plaintiffs Lack Standing To Bring Counts II and IV ...... 24

 4. The District Is Exempt From State Antitrust Claims ...... 24

B. Plaintiffs' Equal-Protection Claims Fail as a Matter of Law ...... 24

 1. Plaintiffs' Federal And State Equal-Protection Claims Are Barred By The Statute Of Limitations ...... 24

 2. Plaintiffs Do Not Identify Any "Similarly Situated" Customers ...... 25

 3. The Rational Basis For E-27 Is Recognized In The FAC ...... 27

C. Plaintiffs' Price Discrimination Claims Fail As A Matter of Law ...... 29

D. Plaintiffs' Claim Under A.R.S. § 44-1522 Fails As A Matter Of Law ...... 29

 1. The District Is Not A "Person" Under the CFA ...... 29

 2. Plaintiffs Have Not Pled The Elements Of A CFA Claim With The Necessary Specificity ...... 30

 3. A.R.S. § 30-806 Does Not Support Plaintiffs' CFA Claim ...... 31

V. PLAINTIFFS' CLAIMS FOR DAMAGES ARE BARRED ...... 32

A. The LGAA Provides The District Absolute Immunity From Federal And State Antitrust Damages Claims ...... 32

B. A.R.S. § 12-820.01(A) Immunizes The District From State-Law Damages ...... 33

VI. THIS COURT SHOULD DISMISS THE FAC WITHOUT LEAVE TO AMEND ...... 34

CONCLUSION ...... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Passenger Computer Reservation Sys.*,
727 F. Supp. 564 (C.D. Cal. 1989).................................................................... 24

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
948 F.2d 536 (9th Cir. 1991) ........................................................................... 13

*American Ad Mgmt., Inc. v. General Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999)........................................................................... 20

*Aprim v. City of Phoenix*,
2016 WL 6956608 (Ariz. Ct. App. 2016) ........................................................ 19

*Arizona Corp. Comm'n v. Fred Harvey Transp. Co.*,
388 P.2d 236 (Ariz. 1964) .................................................................................. 4

*Arizona Corp. Comm'n v. People's Freight Line, Inc.*,
16 P.2d 420 (Ariz. 1932) .................................................................................... 4

*Arizona Corp. Comm'n v. State ex rel. Woods*,
830 P.2d 807 (Ariz. 1992) .............................................................................. 1, 4

*Arizona Corp. Comm'n v. Superior Ct. In & For Maricopa Cty.*,
480 P.2d 988 (Ariz. 1971) ................................................................................ 33

*Arizona Dream Act Coal. v. Brewer*,
855 F.3d 957 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1279 (2018) ................ 25

*Arkansas Louisiana Gas Co. v. Hall*,
453 U.S. 571 (1981) ............................................................................................ 8

*Ashelman v. Pope*,
793 F.2d 1072 (9th Cir. 1986) .......................................................................... 34

*Atlantic Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) .......................................................................................... 20

*FCC v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993) .......................................................................................... 28

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) .......................................................................................... 22

-iii-

*California CNG v. Southern Cal. Gas Co.*,
    96 F.3d 1193 (9th Cir. 1996) ........................................................................ 17

*Canyon Del Rio Investors, L.L.C. v. City of Flagstaff*,
    258 P.3d 154 (Ariz. Ct. App. 2011) ........................................................... 18

*Capital Freight Servs., Inc. v. Trailer Marine Transp. Corp.*,
    704 F. Supp. 1190 (S.D.N.Y. 1988) ........................................................... 32

*Carlin v. DairyAmerica, Inc.*,
    705 F.3d 856 (9th Cir. 2013) ......................................................................... 8

*Chavez v. Brewer*,
    214 P.3d 397 (Ariz. Ct. App. 2009) ........................................................... 25

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ........................................................................... 25, 28

*City of Columbia v. Omni Outdoor Advert., Inc.*,
    499 U.S. 365 (1991) .................................................................................... 11

*City of Mesa v. Salt River Project Agric. Improvement and Power Dist.*,
    373 P.2d 722 (Ariz. 1962) ........................................................................... 14

*City of Phoenix v. Fields*,
    201 P.3d 529 (2009) .................................................................................... 19

*City of Phoenix v. Kasun*,
    97 P.2d 210 (Ariz. 1939) ............................................................................... 5

*County of Suffolk v. Long Island Power Auth.*,
    154 F. Supp. 2d 380 (E.D.N.Y. 2000) ......................................................... 8

*Creamer v. State, Arizona Dept. of Corr.*,
    2015 WL 127926 (Ariz. Ct. App. 2015) ..................................................... 29

*Crosby v. City of Jackson*,
    813 F. Supp. 476 (S.D. Miss. 1993) ........................................................... 28

*Crumley v. Time Warner Cable, Inc.*,
    556 F.3d 879 (8th Cir. 2009) ......................................................................... 8

*Cruz v. City of Tucson*,
    401 P.3d 1018 (Ariz. Ct. App. 2017) ......................................................... 18

*Dakota Territory Tours ACC v. Sedona-Oak Creek Airport Auth. Inc.*,
    2019 WL 1557517 (D. Ariz. Apr. 10, 2019) ............................................. 11

*Daleure v. Commonwealth of Kentucky,*
  119 F. Supp. 2d 683 (W.D. Ky. 2000) .......................................................... 13

*Deer Valley Unified Sch. Dist. No. 97 v. Houser,*
  152 P.3d 490 (2007) ..................................................................................... 18

*Driscoll v. City of New York,*
  1987 WL 26799 (S.D.N.Y. Nov. 25, 1987) ................................................... 32

*Dunlap v. Jimmy GMC of Tucson, Inc.,*
  666 P.2d 83 (Ariz. Ct. App. 1983) .............................................................. 30

*FERC v. Electric Power Supply Ass'n,*
  136 S. Ct. 760 (2016) .................................................................................. 33

*FTC v. ELH Consulting, Inc.,*
  2013 WL 4759267 (D. Ariz. Sept. 4, 2013) ................................................. 30

*Flood Control Dist. of Maricopa Cty. v. Gaines,*
  43 P.3d 196 (Ariz. Ct. App. 2002) .............................................................. 17

*Foman v. Davis,*
  371 U.S. 178 (1961) ..................................................................................... 34

*Freeport Minerals Corp. v. Arizona Corp. Comm'n,*
  419 P.3d 942 (Ariz. Ct. App. 2018), *review denied* (Oct. 31, 2018) ................ 4, 5, 12, 28

*Fressadi v. Glover,*
  2017 WL 5705830 (D. Ariz. Sept. 14, 2017) ............................................... 18

*Estate of Braden ex rel. Gabaldon v. State,*
  266 P.3d 349 (Ariz. 2011) ........................................................................... 30

*Gen. Textile Printing & Processing Corp. v. City of Rocky Mount,*
  908 F. Supp. 1295 (E.D.N.C. 1995) ............................................................. 27

*Georgia Power Project v. Georgia Power Co.,*
  409 F. Supp. 332 (N.D. Ga. 1975) ............................................................... 28

*Grason Elec. Co. v. Sacramento Mun. Util. Dist.,*
  770 F.2d 833 (9th Cir. 1985) ....................................................................... 11

*Highland Properties v. Lee Cty. Utils. Auth.,*
  173 Fed. App'x 806 (11th Cir. 2006) ...................................................... 26, 27

*International Franchise Ass'n, Inc. v. City of Seattle,*
  803 F.3d 389 (9th Cir. 2015) ....................................................................... 28

*James P. Paul Water Co. v. Arizona Corp. Comm'n,*
   671 P.2d 404 (Ariz. 1983) ............................................................................ 4

*Jung v. City of Phoenix,*
   770 P.2d 342 (1989) ................................................................................... 12

*Kairy v. SuperShuttle Int'l,*
   660 F.3d 1146 (9th Cir. 2011) .................................................................... 10

*Kartell v. Blue Shield of Mass., Inc.,*
   749 F.2d 922 (1st Cir. 1984) ...................................................................... 13

*Kunkle Transfer & Storage Co. v. Superior Court,*
   526 P.2d 1270 (Ariz. Ct. App. 1974) ......................................................... 10

*Lorona v. Arizona Summit Law Sch., LLC,*
   151 F. Supp. 3d 978 (D. Ariz. 2015) ......................................................... 30

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.,*
   140 F.3d 1228 (9th Cir. 1998) .............................................................. 21, 24

*McCallum v. City of Athens,*
   976 F.2d 649 (11th Cir. 1992) .................................................................... 15

*McLeodUSA Telecomms. Servs., Inc. v. Arizona Corp. Comm'n,*
   655 F. Supp. 2d 1003 (D. Ariz. 2009) ..................................................... 8, 9

*McNamara v. Citizens Protecting Tax Payers,*
   337 P.3d 557 (2014) ................................................................................... 31

*Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.,*
   661 F. Supp. 1504 (D. Ariz. 1987) ....................................................... 13, 17

*MetroNet Servs. Corp. v. Qwest Corp.,*
   383 F.3d 1124 (9th Cir. 2004) .............................................................. 20, 22

*Miller v. Arizona Corp. Comm'n,*
   251 P.3d 400 (Ariz. Ct. App. 2011) ............................................................. 5

*Mothershed v. Justices of the Sup. Ct.,*
   410 F.3d 602 (9th Cir. 2005) ................................................................ 11, 33

*Myers v. City of Tempe,*
   128 P.3d 751 (Ariz. 2006) .......................................................................... 34

*Nordlinger* v. *Hahn,*
   505 U.S. 1 (1992) ....................................................................................... 25

*North Carolina State Bd. of Dental Examiners v. FTC*,
135 S. Ct. 1101 (2015) ......................................................................... 11

*NorthBay HealthCare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
305 F. Supp. 3d 1065 (N.D. Cal. 2018)................................................. 23

*NYNEX Corp. v. Discon, Inc.*,
525 U.S. 128 (1998) .............................................................................. 23

*Oviedo Town Ctr. II, L.L.P. v. City of Oviedo*,
2018 WL 6822693 (11th Cir. Dec. 28, 2018) ...................................... 28

*Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
555 U.S. 438 (2009) .............................................................................. 21

*Palm Springs Med. Clinic, Inc. v. Desert Hosp.*,
628 F. Supp. 454 (C.D. Cal. 1986)....................................................... 32

*Pasco Indus., Inc. v. Talco Recycling, Inc.*,
985 P.2d 535 (Ariz. Ct. App. 1998) ..................................................... 20

*Phelps Dodge Corp. v. Arizona Elec. Power Coop., Inc.*,
83 P.3d 573 (Ariz. Ct. App. 2004) ................................................. 12, 16

*FTC v. Phoebe Putney Health Sys., Inc.*,
568 U.S. 216 (2013) ......................................................................... 11, 13

*Pool Water Prods. v. Olin Corp.*,
258 F.3d 1024 (9th Cir. 2001).......................................................... 20, 21

*Public Util. Dist. No. 1 of Snohomish Cty. v. Dynegy Power Mktg., Inc.*,
384 F.3d 756 (9th Cir. 2004) .................................................................. 8

*Ragan v. Merchants Transfer & Warehouse Co.*,
337 U.S. 530 (1949) .............................................................................. 10

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995).................................................................. 20

*Rubenstein Constr. Co. v. Salt River Project Agric. Improvement & Power
Dist.*,
265 P.2d 455 (Ariz. 1953) ............................................................... 5, 29

*Salt River Valley Canal Co. v. Nelssen*,
85 P.117 (Ariz. Terr. 1906) ................................................................... 4

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991).................................................................. 34

*Save Our Valley Ass'n v. Arizona Corp. Comm'n*,
    165 P.3d 194 (Ariz. Ct. App. 2007) ........................................................ 10

*Schor v. Abbott Labs.*,
    457 F.3d 608 (7th Cir. 2006) .................................................................. 22

*Shupe v. Cricket Commc'ns, Inc.*,
    2014 WL 6983245 (D. Ariz. Dec. 10, 2014) .......................................... 30

*Simon v. Maricopa Med. Ctr.*,
    234 P.3d 623 (Ariz. Ct. App. 2010) ...................................................... 18

*Simpson v. U.S. West Commc'ns, Inc.*,
    957 F. Supp. 201 (D. Or. 1997) .............................................................. 24

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*,
    2015 WL 6503439 (D. Ariz. Oct. 27, 2015) .......................................... 32

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*,
    2015 WL 9268212 (D. Ariz. Dec. 21, 2015) .......................................... 12

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .................................................................. 20

*Sonitrol of Fresno, Inc. v. American Tel. & Tel. Co.*,
    629 F. Supp. 1089 (D.D.C. 1986) .......................................................... 17

*Southern Motor Carriers Rate Conf., Inc. v. United States*,
    471 U.S. 48 (1985) ........................................................................... 12, 13

*Stulce v. Salt River Project Agric. Improvement & Power Dist.*,
    3 P.3d 1007 (Ariz. Ct. App. 1999) ........................................................ 17

*Sun City Taxpayers' Ass'n v. Citizen Utils. Co.*,
    847 F. Supp. 281 (D. Conn. 1994) ........................................................... 9

*Taffet v. Southern Co.*,
    967 F.2d 1483 (11th Cir. 1992) .......................................................... 2, 9

*TANC v. Sierra Pac. Power Co.*,
    295 F.3d 918 (9th Cir. 2002) .................................................................... 9

*Taylor v. Rancho Santa Barbara*,
    206 F.3d 932 (9th Cir. 2000) .................................................................. 27

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
    368 F.3d 1053 (9th Cir. 2004) ................................................................ 34

*Tostado v. City of Lake Havasu,*
    204 P.3d 1044 (Ariz. Ct. App. 2008) ............................................. 33

*Town of Hallie v. City of Eau Claire,*
    471 U.S. 34 (1985) ............................................. 11

*US Airways, Inc. v. Qwest Corp.,*
    361 P.3d 942 (Ariz. Ct. App. 2015), *aff'd* 385 P.3d 412 (Ariz. 2016) ............................. 9

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004) ............................................. 22

*Visco v. State ex rel. Pickrell,*
    388 P.2d 155 (1963) ............................................. 14

*Wah Chang v. Duke Energy Trading & Mktg., LLC,*
    507 F.3d 1222 (9th Cir. 2007) ............................................. 8, 9

*Warner v. Tinder, Inc.,*
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ............................................. 23

*Wegoland Ltd. v. NYNEX Corp.,*
    27 F.3d 17 (2d Cir. 1994) ............................................. 8, 9

*Williams v. California,*
    764 F.3d 1002 (9th Cir. 2014) ............................................. 33

*Wilson v. Garcia,*
    471 U.S. 261 (1985) ............................................. 24

**Statutes**

A.R.S. 30-801 *et seq.* (Electric Power Competition Act of 1998) ............................ 16

A.R.S. § 9-516 ............................................. 14

A.R.S. § 10-2087 ............................................. 14

A.R.S. § 12-542 ............................................. 24

A.R.S. § 12-820.01 ............................................. *passim*

A.R.S. § 12-821 ............................................. *passim*

A.R.S. §§ 12-821 and 12-821.01 ............................................. 18

A.R.S. § 12-821.01 ............................................. *passim*

A.R.S. § 30-801 ............................................. 16

A.R.S. § 30-802 ............................................................................. 1, 6, 12, 14

A.R.S. § 30-803 ................................................................................. 14, 16

A.R.S. § 30-805 ................................................................................... 1, 12

A.R.S. § 30-806 ................................................................................. *passim*

A.R.S. § 30-810 .......................................................................... 2, 7, 9, 10

A.R.S. § 30-811 .......................................................................... 2, 7, 9, 10

A.R.S. § 30-812 .......................................................................... 2, 7, 9, 10

A.R.S. § 30-813 ..................................................................................... 16

A.R.S. § 40-202 ..................................................................................... 16

A.R.S. § 40-253 ................................................................................... 9, 10

A.R.S. § 40-334 ..................................................................................... 29

A.R.S. § 40-286 ..................................................................................... 15

A.R.S. § 44-1401 ................................................................................... 14

A.R.S. § 44-1412 ................................................................................... 33

A.R.S. § 44-1521 ................................................................................... 30

A.R.S. § 44-1522 ............................................................................... *passim*

A.R.S. § 48-1547 ................................................................................... 15

A.R.S. § 48-1753 ................................................................................... 15

A.R.S. § 48-2301, *et seq.* ........................................................................ 5

A.R.S. § 48-2302 ................................................................................. 5, 32

A.R.S. § 48-2334 ............................................................................ 1, 6, 12

A.R.S. § 48-2339 ................................................................................... 32

A.R.S. § 48-2340 ................................................................................... 32

A.R.S. § 48-2341 ................................................................................... 32

A.R.S. § 48-2363 ..................................................................................... 6

A.R.S. § 48-2365 ........................................................................................ 6

A.R.S. § 48-2381 ...................................................................................... 32

A.R.S. § 48-2442 ...................................................................................... 32

A.R.S. § 48-247 .................................................................................. *passim*

15 U.S.C. § 34 *et seq*. (Local Government Antitrust Act) ...................... 3, 32, 33

42 U.S.C. § 1983 ................................................................................ 8, 24, 29

1974 Ariz. Sess. Laws, ch. 26 (SB 1075) .............................................. 14

**Other Authorities**

12 E. McQuillin, *Law of Municipal Corporations* § 35:58 (3d ed.) ...................... 25

Ariz. Const. art. 13, § 7 ............................................................................ 5, 33

Ariz. Const. art. 15, §§ 1-19 .......................................................... 5, 12, 16, 29

Ariz. Op. Atty. Gen. to Ariz. St. Bd. of Accountancy, 1975 WL 434440 (Sept.
    19, 1975) ................................................................................................. 15

Fed. R. Civ. P. 9(b) .............................................................................. 3, 29, 30

Federal Rule of Evidence 201 .................................................................... 6

*Generic Proceedings Concerning Electric Restructuring Issues*, Ariz. Corp.
    Comm'n Utils. Div., ACC Dkt. Nos. E-00000A-02-0051 & E-00000A-01-
    0630 (Aug. 12, 2010) ............................................................................ 16

H.R. Rep. No. 98-965 (1984), reprinted in 1984 U.S.C.C.A.N. 4602 ...................... 32

John Chamberlin & Timothy Lyons, *Review of Proposed Adjustments to Salt
    River Project's Standard Electric Price Plans* (Dec. 12, 2014),
    https://www.srpnet.com/prices/priceprocess/2015/pdfx/Review.pdf .............................. 20

Memorandum from Jodi Jerich re: New Docket Number Request, ACC Dkt.
    No. E-00000W-13-0135 (May 14, 2013) ............................................... 16

Notice of Rulemaking Docket Opening, ACC Dkt. No. RU-00000A-18-0824
    (Aug. 17, 2018) ..................................................................................... 16

Op. Atty. Gen. No. I89-055, 1989 WL 266978 (June 21, 1989) ...................... 15

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of
    Antitrust Principles and Their Application* ¶ 225b5 (4th ed. 2018) .................. 14

Ryan Randazzo, *SolarCity Relocating 85 Arizona Workers, Cites Solar Fees*,
Arizona Republic (Apr. 30, 2015),
https://www.azcentral.com/story/money/business/2015/04/30/solarcity-
relocatingarizona- workers/26614771/ ................................................................ 23

SRP, Executive Summary: Top Issues Related to SRP's Price Proposal,
Customer Generation, at 1 (Feb. 9, 2015),
https://www.srpnet.com/prices/priceprocess/2015/pdfx/ExecSummary.pdf ...................... 6

SRP, Legal Notice (Dec. 12, 2014),
https://www.srpnet.com/prices/priceprocess/2015/pdfx/PPN.pdf ...................................... 6

SRP, Legal Notice (Dec. 20, 2018), https://www.srpnet.com/prices/
priceprocess//2019pdfx/legalad.pdf ................................................................ 7, 9

SRP, Proposed Adjustments to SRP's Standard Electric Price Plans Effective
With The April 2015 Billing Cycle (Dec. 12, 2014),
https://www.srpnet.com/prices/priceprocess//2015pdfx/BlueBook.pdf
("2014 Blue Book") ................................................................ 6, 7

State of Arizona, Office of the Auditor General, Review of Arizona Revised
Statutes (A.R.S.) §§ 30-806(I), and 40-202(B)(3) and (5) related to electric
competition (March 10, 2008) ................................................................ 15

**INTRODUCTION**

The State of Arizona has regulated the provision of electricity to its citizens since statehood—a recognition that a reliable source of power is essential to modern life and that (as noted during the Arizona Constitutional Convention) "[t]he work of fixing rates is the most complicated subject in the economic world."[1]  In this case, Plaintiffs seek judicial intervention to challenge rates fixed more than four years ago after a public statutory ratemaking process conducted by the elected governing body of the Salt River Project Agricultural Improvement and Power District (the "District"), a political subdivision of the State.

Under Arizona law, that governing body (the District's "Board") must set just and reasonable electric rates that allocate the District's costs of service among its more than one-million customers.  The Board fulfills that responsibility—delegated by the Arizona legislature—through a statutory ratemaking process that provides for notice, comment, public inspection of pertinent information, and in-person public participation at Board meetings.  *See* A.R.S. § 48-2334; *see also* A.R.S. §§ 30-802 *et seq*.; 30-805(A)(1).  The Board conducted a public ratemaking proceeding in 2014 and 2015, which resulted in the Board's February 26, 2015, decision to adopt a rate schedule that included the E-27 rate for rooftop solar customers that Plaintiffs now seek to challenge.  Despite having voluntarily opted to connect rooftop solar systems years after the Board's adoption of the E-27 rate, and thus be billed under that rate, Plaintiffs now assert that the Board's adoption of the E-27 rate violated the U.S. and Arizona constitutions, federal and state antitrust laws, and various other state laws.  They seek certification of a putative class, injunctive relief to undo the Board's 2015 decision, treble damages based on some unspecified level of overcharge, and attorneys' fees.

Plaintiffs' claims fail as a matter of law.  Arizona statutes establish the exclusive means to challenge the Board's ratemaking under state law and require parties to first seek

---

[1] *Arizona Corp. Comm'n v. State ex rel. Woods*, 830 P.2d 807, 816 (Ariz. 1992) (quoting Records of the Arizona Constitutional Convention of 1910, at 979 (John S. Goff ed., 1991)).

rehearing before the Board followed by a request for judicial review in state court within 30 days. Plaintiffs did neither. As one court explained, allowing rate challenges like this one outside of a state's statutory process "would encourage consumers of a utility's services to sit out the state's rate-making process and then to repair to court to play litigation lottery. There could be no end to the number of strike suits that would be brought as eager lawyers, using the class action vehicle, circumvent the states' rate-making mechanism[.]" *Taffet v. Southern Co.*, 967 F.2d 1483, 1492 (11th Cir. 1992). This case proves that point.

The First Amended Complaint ("FAC") should be dismissed with prejudice under a body of federal and state caselaw and statutes that collectively bar this action. In summary:

1. Plaintiffs' challenge to the District's ratemaking is barred in its entirety by the filed rate doctrine and Arizona law, A.R.S. §§ 30-810 – 812, which recognize that the ratemaking decisions of a utility's governing body are not subject to judicial review outside of the applicable statutory framework. This is the wrong time—and the wrong place—for Plaintiffs to challenge the results of the Board's 2015 ratemaking process. The FAC should therefore be dismissed in its entirety. *See* **Section I.**

2. The state-action immunity doctrine protects a state's policy to authorize and regulate conduct that would otherwise be subject to antitrust liability. Arizona has adopted a policy of regulated natural monopolies to deliver electricity instead of free-market competition and substituted ratemaking authority for price competition. In recognition of the inherently anticompetitive nature of this system, the legislature has expressly exempted the District from antitrust liability for the Board's ratemaking decisions. *See* A.R.S. § 48-247. The state-action immunity doctrine thus bars the Plaintiffs' four antitrust claims (Counts I-IV). *See* **Section II.**

3. The state-law claims (Counts III-VI, VIII-IX) are barred by both the one-year statute of limitations for actions against public entities, A.R.S. § 12-821, and by Plaintiffs' failure to comply with the notice-of-claim statute, A.R.S. § 12-821.01. *See* **Section III.**

4. Even if the antitrust claims (Counts I-IV) were not otherwise barred, they fail to state a claim because Plaintiffs do not—and cannot—plausibly allege: (a) <u>causal antitrust</u>

injury: an injury resulting from *a reduction in or loss of competition*; (b) underline exclusionary conduct: Under controlling Supreme Court and Ninth Circuit precedent, there is no cause of action under the antitrust laws for above-cost pricing (like Plaintiffs allege here); (c) attempted monopolization (Counts II, IV): Plaintiffs lack standing to bring those claims; only competitors of the defendant have standing to assert a claim for attempted monopolization; or (d) state law antitrust claims: The District is exempt from Arizona's antitrust laws under A.R.S. § 48-247. *See* **Section IV.A.**

5.  Plaintiffs' equal-protection claims (Counts VII and VIII) fail because: (a) they are untimely; and (b) the FAC recognizes that solar customers are not "similarly situated" to non-solar customers and that there was a rational basis for the Board's adoption of the E-27 rate. *See* **Section IV.B.**

6.  Plaintiffs' price-discrimination claims (Counts V and VI) fail because they are predicated on laws that apply only to "public service corporations," which are constitutionally defined to exclude entities such as the District. *See* **Section IV.C.**

7.  Plaintiffs' consumer-fraud claim (Count IX) fails since: (a) the District is not a "person" within the meaning of the statute; (b) it is not pled with the specificity required by Rule 9(b); and (c) the FAC does not adequately allege a violation of A.R.S. § 30-806, for which no private cause of action exists in any event. *See* **Section IV.D.**

8.  Finally, Plaintiffs' damages claims should be dismissed under the Local Government Antitrust Act, which immunizes local governmental bodies like the District from damages under the antitrust laws, and under A.R.S. § 12-820.01, which provides the District "absolute" immunity against monetary damages under state law for ratemaking decisions. *See* **Section V.**

Arizona law provides District ratepayers, including Plaintiffs, multiple avenues to participate in, and seek redress relating to, the Board's ratemaking decisions. They may petition for rate changes; participate in public ratemakings; attend Board meetings; or campaign for, and vote to elect, representatives to the Board; and then, if still dissatisfied, follow the statutory process for rehearing and judicial review. What they may not do, as a

-3-

matter of law, is bring untimely claims in federal court seeking to disturb the highly specialized and complex determinations that are the crux of any ratemaking. Because these defects cannot be cured by amendment, the case should be dismissed with prejudice.

**BACKGROUND**

**A.    Arizona's Regulated Electricity Industry**

With the adoption of the Arizona Constitution in 1912, Arizona established that its public policy respecting public utilities, including electric utilities, would be "one of regulated monopoly over free-wheeling competition." *James P. Paul Water Co. v. Arizona Corp. Comm'n*, 671 P.2d 404, 407 (Ariz. 1983); *Arizona Corp. Comm'n v. Fred Harvey Transp. Co.*, 388 P.2d 236, 237 (Ariz. 1964) ("Arizona is a regulated monopoly state. We have said this so often it would seem unnecessary to repeat our many statements over the course of so many years."). Public utilities were deemed to be "best conducted under a system of legalized and regulated monopoly" because the services they provide are "vitally necessary to modern civilization" and competition among public utilities "in the end injures rather than helps the general good." *Arizona Corp. Comm'n v. People's Freight Line, Inc.*, 16 P.2d 420, 422 (Ariz. 1932); *Arizona Corp. Comm'n v. State ex rel. Woods*, 830 P.2d 807, 813 (Ariz. 1992) (the intent of the framers was to give the government "a strong role in protecting the public interest through regulation" of public utilities).

The rates charged by public utilities operating in Arizona's regulated monopoly system are not set by competition in the open market, but instead, by the government's determination of what is fair and reasonable through a ratemaking process. *Salt River Valley Canal Co. v. Nelssen*, 85 P.117, 119 (Ariz. Terr. 1906) ("A reasonable rate is one which is as fair as possible to all whose interests are involved."). The "general theory of [ratemaking] is that the total revenue, including income from rates and charges, should meet a utility's operating costs and … give … a reasonable rate of return[.]" *Freeport Minerals Corp. v. Arizona Corp. Comm'n*, 419 P.3d 942, 944 (Ariz. Ct. App. 2018), *review denied* (Oct. 31, 2018). After identifying the appropriate revenue requirement, the next step in ratemaking is

to fairly allocate the revenue required among the various customers of the utility. *Id.* at 944-945.[2]

Pursuant to the Arizona Constitution, the regulation of electric utilities is divided between the Arizona Corporation Commission ("ACC") and the legislature. The ACC regulates Arizona's private utilities, which are operated by public service corporations and cooperatives, Ariz. Const. art. 15, § 1, while the legislature oversees public power utilities, including the District, *see Rubenstein Constr. Co. v. Salt River Project Agric. Improvement & Power Dist.*, 265 P.2d 455, 456 (Ariz. 1953). Accordingly, for private utilities, ratemaking is performed by the ACC. *Freeport Minerals Corp.*, 419 P.3d at 944. In contrast, ratemaking for public power utilities is performed by elected bodies under authority delegated to them by the legislature. *City of Phoenix v. Kasun*, 97 P.2d 210, 212 (Ariz. 1939) (the "legislature is the only body which has the right to regulate the rates charged by a municipal corporation operating a public utility.").

## B. The District Is A Public Power Utility

The District is an agricultural improvement district, A.R.S. § 48-2301, *et seq.*, that is a "political subdivision of the State of Arizona," FAC ¶ 28, vested with all "immunities and exemptions granted municipalities and political subdivisions under th[e Arizona] constitution or any law of the State or of the United States," Ariz. Const. art. 13, § 7; A.R.S. § 48-2302. It operates a vertically integrated electric utility, comprised of electric generation, transmission (the long-range transportation of high-voltage electricity), and distribution (the final stage in the delivery of usable electric power) systems. The District is governed by a

---

[2] To fairly allocate the revenue required, ratemaking examines the cost of serving the different types of ratepayers and the rate of return under the proposed rate plan. *Freeport Minerals Corp.*, 419 P.3d at 945. It is a recognized goal of ratemaking to base rates on the cost of service and to "reduc[e]" any "pre-existing interclass subsidies"; however, a public utility's rates must also consider public policy factors, including "economic, social, historical, and other factors that may affect customers when determining revenue allocation." *Id.* Thus, the ratemaking process is considered a "complex and specialized" endeavor, *Miller v. Arizona Corp. Comm'n*, 251 P.3d 400, 407 (Ariz. Ct. App. 2011), that is the exercise of legislative power. *Id.* at 404.

fourteen-member Board, the members of which are publicly elected to four-year terms. *See* A.R.S. §§ 48-2363(A), 48-2365(A).

The Board sets and modifies the retail electric rates for the District's ratepayers. *See* A.R.S. §§ 30-802, 48-2334. Before any changes to rates can be made, the District must "provide public notice of proposed changes." A.R.S. §§ 30-802(B)(1), 48-2334(B). The District must then make specific information available to the public, *id.* §§ 30-802(B)(2), 48-2334(C), and provide an opportunity for the public to comment on the proposed changes, *id.* §§ 30-802(B)(3), 48-2334(D). The District must also hold a public meeting (or meetings) at which District management, consultants, and any interested persons may submit written comments or make oral presentations to the Board. *Id.* At the end of this process, and after making any modifications based on the public process, the Board votes in open session on proposed rate changes. *Id.* §§ 48-2334(E), 30-802(B)(4).

## C. The District's Ratemaking Proceedings in 2014-2015 and 2018-2019

The District followed the prescribed statutory process when it completed a ratemaking proceeding in 2014-2015. On December 12, 2014, the District issued a public notice stating its intent to open a process to consider proposed rate changes.[3] The same day, it released a proposal with adjustments to its then-applicable retail electricity rates.[4] The proposal included a general 3.9% overall average annual increase for all residential customers and a new rate—the E-27 rate that Plaintiffs challenge—for customers who generate a portion of their own electricity through solar panels or otherwise.[5] The proposal explained that the

---

[3] SRP, Legal Notice (Dec. 12, 2014), https://www.srpnet.com/prices/priceprocess/2015/pdfx/PPN.pdf ("2014 Legal Notice"). This document, and the other publicly available District documents cited in this section, are subject to judicial notice under Federal Rule of Evidence 201 and therefore properly considered on a motion to dismiss. The District is filing a Request for Judicial Notice with its Motion to Dismiss.

[4] SRP, Proposed Adjustments to SRP's Standard Electric Price Plans Effective With The April 2015 Billing Cycle (Dec. 12, 2014), https://www.srpnet.com/prices/priceprocess/2015/pdfx/BlueBook.pdf ("2014 Blue Book").

[5] SRP, Executive Summary: Top Issues Related to SRP's Price Proposal, Customer Generation, at 1 (Feb. 9, 2015), https://www.srpnet.com/prices/priceprocess/2015/pdfx/ExecSummary.pdf.

District incurs substantial costs to build and maintain the infrastructure necessary to meet the combined peak demand of its customers. Although customers with rooftop solar panels typically require less total electricity from the District, solar panels do not reduce significantly (if at all) that customer's peak demand for power from the District. Because the District's traditional retail electricity rates mainly recovered costs through usage charges, those rates did not cover the District's cost of serving rooftop solar customers. The E-27 rate was designed to allow the District to recover those costs, considering rooftop solar customers' unique profile.[6]

At the close of the process, on February 26, 2015, the Board approved the proposed changes to the rate schedules—subject to certain modifications—including the E-27 rate. FAC ¶¶ 8, 73. No one filed a request for rehearing or sought the required judicial review in state court pursuant to A.R.S. §§ 30-810 – 812.

Over the past four years, customers within the District's service territory have continued to purchase and install rooftop solar panels. FAC ¶¶ 20-25, 86. Indeed, the four named Plaintiffs all ***voluntarily*** elected to go on the E-27 rate by connecting rooftop solar panels well after the rate had been adopted. *Id.* ¶¶ 20-27. To assist rooftop solar customers in reducing their electric bills under the E-27 rate, the District provides cash incentives to customers to install demand controllers or battery systems that can be used to meet their electricity needs during peak demand hours. FAC ¶¶ 93-94.

The Board conducted another ratemaking proceeding in 2018 and 2019.[7] On March 25, 2019, it adopted a rate schedule that lowered average electricity rates and modified and expanded the rates for rooftop solar customers. Not only were changes made to the E-27 rate about which Plaintiffs complain, but the Board adopted two additional, optional rate plans for rooftop solar customers that are available to the named Plaintiffs among others. These changes took effect with the May 2019 billing cycle, and no rehearing was requested.[8]

---

[6] 2014 Blue Book at 26-28.
[7] *See* SRP, Legal Notice (Dec. 20, 2018), https://www.srpnet.com/prices/priceprocess/2019/pdfx/legalad.pdf ("2018 Legal Notice").
[8] *Id.*

**ARGUMENT**

I. **PLAINTIFFS' CASE IS AN IMPROPER COLLATERAL ATTACK ON RETAIL ELECTRICITY RATES SET BY THE BOARD**

   A. **The Filed Rate Doctrine Bars Plaintiffs' Claims**

The filed rate doctrine applies whenever a plaintiff's claims require a reviewing court to revise or evaluate utility rates set pursuant to a statutory and specialized process. *See, e.g.*, *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007). The doctrine forbids a court from adjudicating collateral challenges to a utility's rate where that rate has been approved by the utility's governing body. *See Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981). At the doctrine's core is the awareness that courts "'are not institutionally well suited to engage in retroactive rate setting.'" *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994) (citation omitted); *see also McLeodUSA Telecomms. Servs., Inc. v. Arizona Corp. Comm'n*, 655 F. Supp. 2d 1003, 1018 (D. Ariz. 2009) (citing *Wegoland* and holding that the doctrine barred a claim that ACC-approved rates were discriminatory).

In the Ninth Circuit, the "filed rate doctrine has been given an expansive reading and application." *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 868 (9th Cir. 2013). The doctrine provides "fortification against direct attack [of filed rates and] is impenetrable. It turns away both federal and state antitrust actions [and] state tort actions." *Wah Chang*, 507 F.3d at 1225. The doctrine also precludes fraud claims, *Crumley v. Time Warner Cable, Inc.*, 556 F.3d 879, 881 (8th Cir. 2009), and claims brought under 42 U.S.C. § 1983, *County of Suffolk v. Long Island Power Auth.*, 154 F. Supp. 2d 380, 385 (E.D.N.Y. 2000). The doctrine bars claims for damages, *Wah Chang*, 507 F.3d at 1225, and injunctive relief where, as here, the injunctive relief sought would require adjustments to a filed rate, *Public Util. Dist. No. 1 of Snohomish Cty. v. Dynegy Power Mktg., Inc.*, 384 F.3d 756, 761 (9th Cir. 2004).

Each of Plaintiffs' claims in some way collaterally attacks the E-27 rate on the ground that the rate is too high, discriminatory, or unreasonable, *e.g.*, FAC ¶¶ 1, 5, 9, 142, and thus is barred by the filed rate doctrine. Specifically, the Ninth Circuit has explained that it "turns

away" cases that "necessarily hinge on a claim that the … approved rate was too high and would, therefore, undermine [ratemaking] authority through the medium of direct court actions." *Wah Chang*, 507 F.3d at 1226. This is because adjudicating Plaintiffs' claims would require the Court to evaluate the rates the Board adopted in 2015 against a hypothetical set of alternatives in order to "determine what rate should have been set" by the Board. *See, e.g.*, *Taffet*, 967 F.2d at 1491; *Wah Chang*, 507 F.3d at 1226 (doctrine bars claims that "would inevitably drag the courts into a determination of what rate would be fair and proper"); *TANC v. Sierra Pac. Power Co.*, 295 F.3d 918, 929-930 (9th Cir. 2002) (courts cannot set a different rate than the approved rate nor can they assume a different hypothetical rate). To grant Plaintiffs their requested monetary and/or injunctive relief, the Court would have to both compensate them for supposed overpayments when measured against whatever hypothetical rate the Court selected, and reset a rate schedule that was adopted more than four years ago, which has already been superseded by a new schedule effective May 2019. FAC ¶ 195(D), (G).[9] This is impermissible.

Finally, Plaintiffs' attack on the E-27 rate directly implicates the filed rate doctrine's interest in preserving the finality of rates set pursuant to a legislative or administrative framework. *Wegoland*, 27 F.3d at 21-22. That interest in finality is especially strong where, as here, there is a statutory framework for public participation in the ratemaking process, and that process occurred four years ago and affected over a million ratepayers. *See supra* at 1, 6-7; *Taffet*, 967 F.2d at 1492. As discussed below, Arizona has structured judicial review of the District's ratemaking to bar precisely this type of collateral attack.[10] Accordingly, the filed rate doctrine bars Plaintiffs' claims in their entirety.

---

[9] *See* 2018 Legal Notice.

[10] Arizona has effectively adopted the filed rate doctrine legislatively. *See* A.R.S. §§ 30-810 – 812; § 40-253; *see also Sun City Taxpayers' Ass'n v. Citizen Utils. Co.*, 847 F. Supp. 281, 283 (D. Conn. 1994) (predicting state would adopt filed rate doctrine); *McLeod USA*, 655 F. Supp. 3d at 1018-1019 (same). Arizona courts have also held that filed tariffs are the conclusive and exclusive determination of rights among utilities and their customers and non-customers alike, endorsing the doctrine's principles. *US Airways, Inc. v. Qwest Corp.*, 361 P.3d 942, 945 (Ariz. Ct. App. 2015), *aff'd* 385 P.3d 412 (Ariz. 2016) (mem.).

## B. Plaintiffs' Failure To Follow A.R.S. §§ 30-810 To -812 Requires Dismissal Of All State-Law Claims

The Arizona legislature has codified the principles underlying the filed rate doctrine by barring collateral attacks on the Board's ratemaking decisions. *See* A.R.S. §§ 30-810 – 812. This statutory framework independently bars Plaintiffs' state-law claims.

A.R.S. § 30-810 unequivocally states: "*No claim*" arising from the Board's ratemaking "shall accrue in *any court*" unless an application for rehearing is filed with the Board within 20 days of entry of the order or decision, A.R.S. § 30-810(A). Once the rehearing application is resolved, a dissatisfied party must seek judicial review through the state courts within 30 days. *Id.* § 30-811, 812. Because Plaintiffs did not follow this mandatory and exclusive process for contesting the Board's ratemaking, their state-law claims (Counts III-VI, VIII, and IX) fail. *See Save Our Valley Ass'n v. Arizona Corp. Comm'n*, 165 P.3d 194, 202 (Ariz. Ct. App. 2007) (plaintiff's failure to exhaust remedies under substantively identical A.R.S. § 40-253 precluded judicial review); *Kunkle Transfer & Storage Co. v. Superior Court*, 526 P.2d 1270, 1272 (Ariz. Ct. App. 1974) (Under § 40-253 "[ACC] orders or decisions are not subject to collateral attack.").

Further, A.R.S. § 30-812(F) makes this framework for seeking judicial review exclusive by stating that, outside of it, courts "do[] not have jurisdiction to enjoin, restrain, suspend, delay or review any order or decision of the governing body of [a] public power entity … relating to rate making or rate design." Plaintiffs' state-law claims seek both to review and enjoin the rate design of a public power entity's governing body. *See* FAC ¶¶ 145, 152, 160, 168, 185, 195. Under the *Erie* doctrine, this Court is therefore barred from hearing a state-law challenge. *See, e.g., Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949) ("Where local law qualifies or abridges [a claim], the federal court must follow suit."); *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1148 (9th Cir. 2011) (declining to hear state law claims under substantively identical statute seeking injunctive relief when such relief was unavailable under state law).

## II. STATE-ACTION IMMUNITY BARS PLAINTIFFS' ANTITRUST CLAIMS

Under the state-action immunity doctrine, political subdivisions like the District are immune from the antitrust laws whenever their alleged anticompetitive activities are "authorized by the State pursuant to state policy to displace competition with regulation or monopoly public service."[11] *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39 (1985). This is known as the "clear-articulation requirement," and it is met "where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 229 (2013). As this Court summarized in dismissing another antitrust suit on state-action immunity grounds only last month: To satisfy the clear articulation test, "a state legislature need not 'expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects.'" *Dakota Territory Tours ACC v. Sedona-Oak Creek Airport Auth. Inc.*, 2019 WL 1557517, at *9 (D. Ariz. Apr. 10, 2019) (citing *Eau Claire*, 471 U.S. at 42, 43). Nor must the legislature explicitly authorize specific anticompetitive effects. *Eau Claire*, 471 U.S. at 39. Instead, the test is satisfied where the anticompetitive effects are "the foreseeable result of what the statute authorizes." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 372-373 (1991).[12]

### A. Arizona Has Displaced Competition With Ratemaking

Under Arizona's system for providing electric service through public utilities, government ratemaking has displaced prices set through competition. For the District, the Arizona legislature has delegated its authority to set the District's retail electricity rates to the Board and imposed a detailed process for making changes to the District's rate schedules that

---

[11] State action immunity bars antitrust claims under both state and federal law. *See Mothershed v. Justices of the Sup. Ct.*, 410 F.3d 602, 609 (9th Cir. 2005). A political subdivision's entitlement to state-action immunity is a question of law. *Grason Elec. Co. v. Sacramento Mun. Util. Dist.*, 770 F.2d 833, 835 (9th Cir. 1985).

[12] Because the District is a political subdivision of the State of Arizona, governed by an electorally accountable body, there is no requirement that the state actively supervise the District's conduct. *See, e.g., North Carolina State Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101, 1112 (2015); *Eau Claire*, 471 U.S. at 34, 37.

includes public notice, public hearings, and public comments before a public vote on any rate change by the elected members of the Board.[13]  *See, e.g.*, A.R.S. §§ 30-802; 48-2334.  As Plaintiffs allege, Arizona law also imposes substantive constraints on the Board's ratemaking, including a requirement that the District's retail electricity rates be just and reasonable.  *See* FAC ¶ 57 (alleging that the District's rates must "reflect the just and reasonable price for providing the service" (citing A.R.S. § 30-805)); *Jung v. City of Phoenix*, 770 P.2d 342, 344 (1989) (municipalities generally must charge "reasonable rates" when performing utility service).

Plaintiffs' antitrust claims are all based on alleged anticompetitive effects resulting from the Board's 2014-15 ratemaking.  The District's ratemaking is entitled to state-action immunity because (i) ratemaking is inherently anticompetitive, and (ii) the alleged anticompetitive effects of the District's ratemaking are the foreseeable result of the State's clearly articulated policy (articulated by Arizona's legislative history, the Court of Appeals in interpreting the Constitution,[14] and by the ACC) that public utility electric service be regulated and displace competitive market-based rates.[15]

Under Supreme Court precedent, a legislative grant of ratemaking authority is "inherently anticompetitive," and, as a result, satisfies the requirement for state-action immunity.  *Southern Motor Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48, 64 (1985).[16]  A formal ratemaking process is "inherently anticompetitive," *id.*, because,

---

[13] The ACC performs the equivalent function of overseeing the public ratemaking process for investor-owned "public service corporations" like Arizona Public Service Co. ("APS").
[14] *Phelps Dodge Corp. v. Arizona Elec. Power Coop., Inc.*, 83 P.3d 573, 578-579 (Ariz. Ct. App. 2004).
[15] In Arizona, the state's policy can be clearly articulated by the ACC, separately from the legislature, because "unlike such bodies in most states, [the ACC] is not a creature of the legislature, but is a constitutional body which owes its existence to provisions in the organic law of this state."  *Freeport Minerals Corp.*, 419 P.3d at 944; Ariz. Const. art. 15, §§ 1-19.
[16] Respectfully, this Court, through the Honorable Douglas L. Rayes, erred when holding that the legislature's decision to set the District's retail electric rates through a ratemaking was not a clearly articulated state policy to displace competition.  *See SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 2015 WL 9268212, at *3 (D. Ariz. Dec. 21, 2015).  Judge Rayes' holding on the District's entitlement to state-action immunity was

-12-

"[w]here the government regulates an industry and requires that it submit rates for approval, competition is altered in a fundamental way," *Daleure v. Commonwealth of Kentucky*, 119 F. Supp. 2d 683, 690 (W.D. Ky. 2000). By contrast, in a competitive market, businesses have the ability to set and adjust their own prices, quickly and privately, in response to market conditions. *See, e.g.*, *Kartell v. Blue Shield of Mass., Inc.*, 749 F.2d 922, 927 (1st Cir. 1984). The District cannot do that; instead, it must follow the statutorily mandated ratemaking process set forth under Arizona law. Moreover, the substantive requirement that the District's rates be just and reasonable further confirms that the rates are "not [set] by the market." *Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.*, 661 F. Supp. 1504, 1510, 1515-1516 (D. Ariz. 1987) (holding that a requirement that rates be just and reasonable established state-action immunity). Put another way, any anticompetitive effects here are the foreseeable result of the Board's exercise of its ratemaking authority because, as the Supreme Court has explained, the exercise of such authority is *inherently* anticompetitive. *See Southern Motor Carriers*, 471 U.S. at 64; *see generally Phoebe Putney*, 568 U.S. at 230 (citing cases where the Supreme Court has found state-action immunity because the relevant state laws "displaced unfettered business freedom").

### B. Anticompetitive Effects Were The Foreseeable Result Of Arizona's Policy And The Legislature Therefore Exempted Public Power Utilities From The State's Antitrust Laws

The requirements for state-action immunity are additionally satisfied because the legislature and ACC: (i) created a system where public utility service is provided by natural monopolies operating in defined service territories, and (ii) in recognition of that system, expressly exempted public utilities like the District from antitrust liability in the same legislation that enacted Arizona's own antitrust laws.

In Arizona, as elsewhere, "'[l]ocal public utilities supplying electricity … are usually regarded as classic examples'" of natural monopolies. *Alaska Airlines, Inc. v. United*

---

based on the Court's incorrect assumption that only the ACC can set retail electric rates. *Id*. The ACC has no authority over the District's ratemaking. *See* FAC ¶ 37 (The District "is not under the ACC's jurisdiction for rates.").

-13-

1   *Airlines, Inc.*, 948 F.2d 536, 548 (9th Cir. 1991); *Visco v. State ex rel. Pickrell*, 388 P.2d 155,

2   159-160 (1963) (stating that "Arizona has adopted completely the 'regulated monopoly'

3   theory."). The District is a political subdivision of the State itself, operating as a public

4   electric utility and natural monopoly. *See* Background, *supra*; *see also City of Mesa*, 373

5   P.2d at 726; A.R.S. § 9-516(A) (declaring state public policy to protect public utilities from

6   competition when "adequate" service is being offered). In recognition of the District's

7   natural monopoly status, the legislature required that the District's rates be set by a publicly-

8   elected Board (and not by what the market will bear). *See* A.R.S. §§ 30-802; 48-2334. And

9   Arizona law limits competition with the District to "electricity suppliers certificated by the

10   [ACC] pursuant to section 40-207," A.R.S. § 30-803(A), rather than allowing free-market

11   competition. Anticompetitive effects are plainly foreseeable from this regulatory structure.

12        The leading antitrust treatise agrees. In fact, it uses this exact scenario—i.e., the

13   "grant of power to a municipality to operate an electric utility"—as a "clear case" of a clearly

14   articulated state policy to displace competition sufficient to establish state-action immunity

15   because: "Under our given system of retail electric distribution, monopoly seems 'natural'

16   and inevitable, and thus one can easily infer from the power to operate the utility the

17   collateral power to exclude other firms wishing to perform the same function." Phillip E.

18   Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their*

19   *Application* ¶ 225b5 (4th ed. 2018). In other words, the very anticompetitive effects

20   complained of here were the foreseeable result of a clearly articulated state policy, and the

21   District is therefore immune from antitrust liability.

22        Further reinforcing Arizona's clear policy displacing competition, and critically

23   important to understanding the legislature's intent, when Arizona adopted its own antitrust

24   laws in 1974, the legislature—in the same legislation—simultaneously exempted the District

25   and other natural monopolies from liability under those laws, making clear that the

26   legislature expressly contemplated anticompetitive effects from public utility ratemaking.

27   *See* 1974 Ariz. Sess. Laws, ch. 26 (SB 1075) (simultaneously adopting renumbered A.R.S.

28   § 44-1401 *et seq.* and exemptions from antitrust for: cooperatives (A.R.S. § 10-2087);

electrical districts (A.R.S. § 48-1547); power districts (A.R.S. § 48-1753); public service corporations (A.R.S. § 40-286) and special taxing districts, including the District (A.R.S. § 48-247)). Specifically, the State's antitrust laws "***shall not apply*** to any conduct or activity" of the District so long as the activity is approved by statute. A.R.S. § 48-247 (emphasis added). This exemption from the antitrust laws applies to the District's ratemaking (which is authorized by state law), independently bars Plaintiffs' state-law antitrust claims, and separately satisfies the requirements for state-action immunity. *See McCallum v. City of Athens*, 976 F.2d 649, 654-655 (11th Cir. 1992) (holding that a state-law provision immunizing a municipal waterworks from antitrust liability "unequivocally revealed that [the legislature] contemplated that its municipalities might engage in anticompetitive conduct" and therefore satisfied the requirements for state-action immunity); *see also* Ariz. Op. Atty. Gen. No. I89-055, 1989 WL 266978 (June 21, 1989); Ariz. Op. Atty. Gen. to Ariz. St. Bd. of Accountancy, 1975 WL 434440 (Sept. 19, 1975).

Arizona has adopted a regulatory structure for public power utilities like the District that makes anticompetitive effects, including the specific anticompetitive effects complained of here, foreseeable. The District is thus entitled to state-action immunity.

## C. Arizona Has Not Changed Its Policy On The District's Immunity

Arizona's policy of protecting the District's utility operations from competition—and its exemption of the Board's ratemaking from antitrust liability—remains intact. Plaintiffs seek to overcome that policy by alleging that the Electric Power Competition Act of 1998 ("EPCA") opened the District's service territory to competition and subjected the District to the State's antitrust laws for their claims. *See* FAC ¶¶ 53-59. That is incorrect.

First, the District's service territory is not open to competition because "[e]lectric competition never materialized in Arizona."[17] While EPCA created a statutory framework that could *eventually* allow for limited and highly regulated competition from certain

---

[17] State of Arizona, Office of the Auditor General, Review of Arizona Revised Statutes (A.R.S.) §§ 30-806(I), and 40-202(B)(3) and (5) related to electric competition (March 10, 2008) ("Auditor General Report"), at 1.

suppliers "certified by the [ACC]," A.R.S. §30-803(A), the ACC has not exercised its constitutional authority to certificate any such suppliers nor implemented the necessary framework that would allow such competition to occur. *See* Ariz. Cons. art. 15, § 3. When it took initial steps to develop such a framework in the late 1990s, the Arizona Court of Appeals struck down a key aspect of the ACC rules as "unconstitutional on its face." *Phelps Dodge*, 83 P.3d at 586; *see also* Auditor General's Report. That decision "largely halted the movement to … provide for retail electric competition," and, to date, the ACC has not elected to move forward with retail competition of any sort.[18]

Second, even if EPCA were eventually implemented by the ACC, it would allow for competition only in the limited areas of "*competitive* electric generation service" and "other services," (emphasis added) as defined in A.R.S. § 30-801(10) & (15) and § 40-202(10) & (17), and again, only if the suppliers of such services were "certificated by the [ACC]," *id.* §§ 30-803(A). The District does not engage in such competition, but rather provides vertically integrated electric service exclusively within its service territory under rates set through a statutory ratemaking process. The services offered by rooftop solar installers fall outside of EPCA's framework, and Plaintiffs do not—and cannot—allege that rooftop solar installers are certificated by the ACC. *See* Auditor General Report at 3 (noting that the Arizona Court of Appeals invalidated all pending supplier applications).

Third, Plaintiffs' reliance on A.R.S. § 30-813 is misplaced. By its terms, that provision limits the District's exemption in A.R.S. § 48-247 only with respect to "*competitive* electric generation service" and "other services" (emphasis added) as defined by statute—that the District and other public utilities *might* provide at some point in the

---

[18] *Generic Proceedings Concerning Electric Restructuring Issues*, Ariz. Corp. Comm'n Utils. Div., ACC Dkt. Nos. E-00000A-02-0051 & E-00000A-01-0630 (Aug. 12, 2010), at 1. In 2013, the ACC opened a new docket to reexamine whether Arizona should allow retail electric competition; however, after a notice and comment period, the ACC closed the docket on the basis of constitutional impediment. *See* Memorandum from Jodi Jerich re: New Docket Number Request, ACC Dkt. No. E-00000W-13-0135 (May 14, 2013). Still another docket to consider retail competition was opened in August 2018, but no action has been taken. *See* Notice of Rulemaking Docket Opening, ACC Dkt. No. RU-00000A-18-0824 (Aug. 17, 2018).

future if the ACC takes steps to introduce such competition. Because that competition is not allowed under current law, the statute has no relevance here.

For all of these reasons, EPCA and its related statutes do not undermine, but instead fortify the District's state-action immunity. *See California CNG v. Southern Cal. Gas Co.*, 96 F.3d 1193, 1198 (9th Cir. 1996) (where legislature delegated to a regulator the decision whether to allow competition, "any activity" by the utility was entitled to state-action immunity until the regulator took the necessary steps to introduce competition); *Sonitrol of Fresno, Inc. v. American Tel. & Tel. Co.,* 629 F. Supp. 1089 (D.D.C. 1986) (applying state-action immunity to regulated utility rates that had allegedly harmed the unregulated activity of other related service providers). As this Court explained in disposing of an antitrust case on state-action immunity grounds more than a generation ago: to qualify for such immunity, the State "need only have a policy to replace unfettered competition with regulation; the regulatory regime need not be repugnant to the goals of the antitrust laws, nor need it completely oust principles of competition." *Metro Mobile CTS*, 661 F. Supp. at 1516. As relevant here, Arizona policy has clearly "replace[d] unfettered competition with regulation." Accordingly, the provisions of EPCA and the ACC's actions under it only underscore the District's immunity.

## III. PLAINTIFFS' STATE-LAW CLAIMS ARE BARRED UNDER ARIZONA'S ACTIONS AGAINST PUBLIC ENTITIES AND PUBLIC EMPLOYEES ACT

### A. Arizona's One-Year Statute Of Limitations Bars All State-Law Claims

Pursuant to Arizona's Actions Against Public Entities or Public Employees Act, A.R.S. § 12-820, *et seq*., Plaintiffs' state-law claims are governed by Arizona's one-year statute of limitations, which states: "***All actions*** against any public entity[19] … shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12–821 (emphasis added). The one-year statute of limitations governs all claims, and all forms of relief, against a public entity. *Flood Control Dist. of Maricopa Cty. v. Gaines*, 43 P.3d

---

[19] A.R.S. §§ 12-821 and 12-821.01 apply to claims against the District. *Stulce v. Salt River Project Agric. Improvement & Power Dist.*, 3 P.3d 1007, 1009, n.1 (Ariz. Ct. App. 1999).

1   196, 200 (Ariz. Ct. App. 2002); *Canyon Del Rio Investors, L.L.C. v. City of Flagstaff*, 258

2   P.3d 154, 160 (Ariz. Ct. App. 2011).

3       A cause of action accrues under A.R.S. § 12-821 when the claimant "realizes he or

4   she has been damaged and knows or reasonably should know the cause, source, act, event,

5   instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-

6   821.01(B). A claimant "'need not know all the facts underlying a cause of action to trigger

7   accrual.'" *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017) (citation

8   omitted). Instead, a claim accrues "when 'a reasonable person would have been on notice to

9   investigate.'" *Id.*

10      Plaintiffs' state-law claims accrued no later than 2015. The FAC alleges that the

11  wrongful act occurred in 2015 with the Board's adoption of E-27. *See, e.g.*, FAC ¶¶ 6, 72

12  and ¶ 73. Plaintiffs assert that E-27 is a discriminatory rate that immediately and adversely

13  impacted "all [District] customers" because it supposedly "strips class members … [of] their

14  choice to use solar" by rendering that choice "economically unfeasible." *See, e.g.*, FAC

15  ¶¶ 92, 124. Because the Board's adoption of E-27 occurred in a public ratemaking process,

16  and was the subject of significant interest and media coverage, FAC ¶¶ 45 n.7; 63 n.13; 71

17  n.17; 72 n.18; 86 n.19, Plaintiffs were on notice to investigate their alleged claims on or

18  shortly after the date of the Board's decision. Therefore, Plaintiffs' state-law claims, filed

19  nearly four years after their accrual, are barred under A.R.S. § 12-821.

20  **B.    A.R.S. § 12-821.01 Compels Dismissal Of Plaintiffs' State-Law Claims**

21      Arizona's notice of claim statute requires that a claimant file a notice of claim that

22  "strictly complies" with the notice of claim statute within 180 days of the accrual of the

23  claim and before commencing a lawsuit against the District. *Simon v. Maricopa Med. Ctr.*,

24  234 P.3d 623, 630 (Ariz. Ct. App. 2010); *Fressadi v. Glover*, 2017 WL 5705830, at *7-8 (D.

25  Ariz. Sept. 14, 2017). The notice of claim must manifest a willingness to settle a claim for a

26  "particular and certain amount of money" that "if agreed to by the government entity" will

27  resolve all liability. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 493

28  (2007). Where, as here, the notice of claim is filed on behalf of a "putative class

-18-

representative," the notice must include "a 'specific amount' for which his individual claim can be settled." *City of Phoenix v. Fields*, 201 P.3d 529, 534 (2009) (holding that a notice of claim filed by a putative class representative that only offers to settle claims on behalf of a "yet-uncertified class" does not satisfy notice of claim statute). A failure to timely comply with the notice of claim statute requires dismissal of any state-law causes of action. A.R.S. § 12-821.01(A).

Plaintiffs' "Notice of Claim" filed with the District on December 11, 2018, does not strictly comply with the notice of claim statute. *See* Exhibit 1 to Def.'s Request for Judicial Notice.[20] *First,* Plaintiffs' purported notice of claim on behalf of putative class representatives lacks the necessary offer to settle the individual claims of the named Plaintiffs required by *Fields*. Instead, Plaintiffs' notice of claim declared that they would ***not*** settle unless the claims of the entire class were included in the compromise. *Id.* Because Plaintiffs' notice of claim fails to abide by *Fields*, it does not comply with the notice of claim statute.

*Second*, Plaintiffs did not identify a "specific" amount that they would accept to settle any claims on behalf of the class or otherwise. Rather, Plaintiffs' purported notice of claim demands that the District commit to pay "all reasonable attorneys' fees and costs … to date on this matter." *Id.* at 2. Plaintiffs alleged their settlement demand "increases on a daily basis" and that the "final figure" would not be known until the settlement had been "agreed to in principal." *Id.* Thus, Plaintiffs failed to make the sum-certain settlement offer required under A.R.S. § 12-821.01. Plaintiffs' failure to file a timely and proper notice of claim requires dismissal of the state-law claims.

## IV.   THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM

### A.   Plaintiffs Fail To State A Claim Under Federal Or State Antitrust Law

Plaintiffs' first four counts allege unlawful monopolization and attempted

---

[20] Plaintiffs' purported notice of claim is properly considered on a motion to dismiss without "the effect of converting the motion into one for summary judgment." *Aprim v. City of Phoenix*, 2016 WL 6956608, at *2-3 (Ariz. Ct. App. 2016).

monopolization under federal and Arizona antitrust law. To state a claim on any of these counts, the FAC must plausibly allege that the District: "(1) possessed monopoly power in the relevant market, (2) willfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004); *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (attempted monopolization).[21]

### 1. Plaintiffs Have Not Plausibly Alleged Causal Antitrust Injury

Causal antitrust injury is "a substantive element of an antitrust claim, and the fact of injury or damage must be alleged at the pleading stage." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). This requirement seeks to "ensure[] that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (emphasis in original). To meet this requirement, a plaintiff "must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior." *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001).

The relevant analysis begins with "identification of the defendant's specific unlawful conduct." *American Ad Mgmt., Inc. v. General Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Here, the alleged unlawful conduct is charging higher prices that limit "competition from solar energy systems." FAC ¶ 6; *see also* FAC ¶¶ 13, 47, 73, 85, 124. Thus, Plaintiffs must plausibly allege that they paid higher prices for electricity because of a loss of competition from rooftop solar installers.

Plaintiffs make no such allegation. Plaintiffs do allege that they were injured by having to pay higher rates for their electric service than other District ratepayers.[22] *E.g.*,

---

[21] The elements for Plaintiffs' state-law antitrust claims mirror their federal counterparts. *See, e.g., Pasco Indus., Inc. v. Talco Recycling, Inc.*, 985 P.2d 535, 542 (Ariz. Ct. App. 1998) (analyzing A.R.S. § 44-1403 "under federal case law interpreting §2 of the Sherman Act.").

[22] Plaintiffs allege that according to District data, customers pay more under E-27 than under the District's previous rate plan for rooftop solar customers. That data, which is incorporated by reference in the FAC, predicted that some customers would pay more, while others would pay less. *See, e.g.*, John Chamberlin & Timothy Lyons, *Review of Proposed Adjustments to*

-20-

FAC ¶ 25 (alleging Plaintiffs were "financially injured" by the "conduct complained of").

However, Plaintiffs do not allege—as they must—that they paid higher rates for their electric

service *due to the loss of competition from solar installers*. *See Pool Water*, 258 F.3d at

1034. Plaintiffs in fact allege the inverse: that competition was reduced because they had to

pay higher prices for their electricity. *E.g.*, FAC ¶ 85 (contending that the E-27 rate "makes

it impossible for solar customers to obtain any viable return on a solar energy system

investment, *thereby eliminating any competition from solar energy.*") (emphasis added).

This is not a viable theory of antitrust liability, because even if rooftop solar competition had

flourished after E-27, Plaintiffs' alleged injury would be the same. That is, Plaintiffs would

be paying more for electricity, regardless of any lessening of competition. The Ninth Circuit

has made clear that, under such circumstances, Plaintiffs have not suffered a causal antitrust

injury and thus have failed to state an antitrust claim. *See Lucas Auto. Eng'g, Inc. v.

Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998) (where loss incurred would

also have incurred regardless of effect on competition, no causal antitrust injury existed).

### 2. Plaintiffs Have Not Plausibly Alleged Exclusionary Conduct

Plaintiffs' contend that the *price* the District charged certain customers for electricity

made it "economically unfeasible for solar customers and solar installers to purchase solar

energy systems for use within the relevant market." FAC ¶ 124. This is not a valid antitrust

theory. All businesses—including monopolies—are free to choose "the prices, terms, and

conditions" on which they will deal with other parties. *Pacific Bell Tel. Co. v. Linkline

Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). Thus, the Supreme Court has recognized that it

is not unlawful to charge high prices "unless [those prices are separately] accompanied by an

---

*Salt River Project's Standard Electric Price Plans*, at 60 (Dec. 12, 2014),
https://www.srpnet.com/prices/priceprocess/2015/pdfx/Review.pdf (customers who switch to
solar and reduce peak demand would pay less on E-27 than under the District's standard
residential plan). Thus, the Court is not required to accept the allegation that customers paid
more for electricity under E-27, but even if the Court were so inclined, Plaintiffs have failed
the causal injury requirement.

-21-

element of anticompetitive conduct," *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

The Supreme Court has further explained that there is no harm to competition from prices set above a defendant's costs. *See, e.g.*, *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993). Here, Plaintiffs' theory of harm to competition is that the District set its rates for solar customers at too *high* a level relative to its rates for non-solar customers, making adoption of rooftop solar "economically unfeasible," not that the District's is pricing below its costs. FAC ¶ 124. Allowing Plaintiffs to challenge the District's above-cost pricing would essentially require the District to set its prices to accommodate putative competitors, which is directly contrary to the antitrust laws. *See, e.g.*, *Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) ("[A]ntitrust law does not require monopolists to cooperate with rivals by selling them products that would help the rivals to compete .… Cooperation is a problem in antitrust, not one of its obligations.").

Even allegedly "discriminatory" prices are not actionable if above cost. In particular, the Ninth Circuit has held that "maintain[ing] a price discrimination structure"—or even adopting a new pricing structure designed to exclude a rival by making it "unprofitable" for the rival to compete—does not itself violate the antitrust laws. *MetroNet*, 383 F.3d at 1132-1133.[23] As in *MetroNet*, Plaintiffs here allege "discriminatory" pricing motivated by a desire to exclude competition. FAC ¶¶ 73, 75-80. But just as in *MetroNet*, this claim must be rejected. As the Ninth Circuit explained, antitrust courts are "ill-suited" to identify the "proper price" a business must charge for its products and services. 383 F.3d at 1133. Any requirement to the contrary, the Court observed, would violate the Supreme Court's existing precedent, including the Supreme Court's decision in *Trinko*. *Id*. at 1134.

Setting aside the fact that Plaintiffs challenge above-cost pricing, their theory of harm to competition is self-defeating—and therefore implausible. Plaintiffs' allege that:

---

[23] *MetroNet* expressly upheld the legitimacy of charging "different prices" even for "favored and disfavored consumers in order to recover the common costs of serving both sets of customers." 383 F.3d at 1136.

"[C]ustomers are unlikely to make an economically unsound decision in purchasing and installing new solar energy systems if it results in paying a higher amount for power …." FAC ¶ 85. If this is true, Plaintiffs—all of whom connected solar energy systems after E-27 was adopted—must have determined that installing a solar energy system would not have resulted in their paying a higher amount for power. Plaintiffs cannot have it both ways. Either customers only install rooftop solar systems if doing so is economically advantageous to them; if so, Plaintiffs were not injured because they did not pay more for electricity. Or, alternatively, Plaintiffs and others who went on the E-27 rate installed solar energy systems without regard to the economic impact. In that case, competition from rooftop solar installers would necessarily be unaffected. In either case, Plaintiffs' theory is implausible and fails to state a claim. *See, e.g.*, *NorthBay HealthCare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1074 (N.D. Cal. 2018) (conclusory and implausible allegations of antitrust injury fail to state a monopolization claim); *Warner v. Tinder, Inc.*, 105 F. Supp. 3d 1083, 1098 (C.D. Cal. 2015) (contradictory allegations fail to state a claim).

The plausibility of Plaintiffs' theory is not saved by the addition to the FAC of an allegation that a single installer of solar energy systems "began relocating employees to other states" after E-27 was enacted. FAC ¶ 87. The article Plaintiffs cite to support this allegation quotes the CEO of that company stating that the relocation "actually ends up better for [his company]," because even ***before E-27*** the company's profit margins were low in Arizona, and that the move was not a "bad thing for the company."[24] Thus, Plaintiffs have not sufficiently tied this company's decision to reduce its Arizona workforce to the adoption of the E-27 rate. Even if Plaintiffs had done so, the decision of a single firm to reduce its Arizona workforce says nothing about E-27's effect on competition. *See, e.g.*, *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (upholding dismissal of monopolization claims

---

[24] Ryan Randazzo, *SolarCity Relocating 85 Arizona Workers, Cites Solar Fees*, Arizona Republic (Apr. 30, 2015), https://www.azcentral.com/story/money/business/2015/04/30/solarcity-relocatingarizona-workers/26614771/ (cited FAC ¶ 87 n.20).

because "plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process").

### 3. Plaintiffs Lack Standing To Bring Counts II and IV

Another threshold requirement for a private antitrust plaintiff is the requirement of antitrust standing, which is distinct from, and more demanding than traditional Article III standing. *See, e.g.*, *Lucas Auto.*, 140 F.3d at 1232. Plaintiffs' attempted monopolization claims (Counts II and IV) fail because consumers as a class lack standing to bring attempted monopolization claims. Multiple courts in the Ninth Circuit have explained why this is so:

> When defendants engage in … anticompetitive acts in an attempt to gain a monopoly, the competitor who is being driven out of the market is the party with standing. Only when the defendants achieve a monopoly … is there harm to the consumers.

*Simpson v. U.S. West Commc'ns, Inc.*, 957 F. Supp. 201, 205-206 (D. Or. 1997) (quoting *In re Air Passenger Computer Reservation Sys.*, 727 F. Supp. 564 (C.D. Cal. 1989)). Because Plaintiffs allege that they are District customers and not competitors, they lack antitrust standing, *id.* at 206, and their attempted monopolization claims must be dismissed.

### 4. The District Is Exempt From State Antitrust Claims

Plaintiffs' state antitrust claims are barred by A.R.S. § 48-247. As explained in Sections II.B and II.C, the District's exemption from state antitrust claims under A.R.S. § 48-247 applies to the challenged ratemaking that is the basis of Plaintiffs' antitrust claims.

## B. Plaintiffs' Equal-Protection Claims Fail as a Matter of Law

### 1. Plaintiffs' Federal And State Equal-Protection Claims Are Barred By The Statute Of Limitations

Plaintiffs' federal equal-protection claim under 42 U.S.C. § 1983 is governed by the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). Arizona's statute of limitations for personal injury actions is two years. *See* A.R.S. § 12-542(1). A one-year limitation period applies to Plaintiffs' state equal-protection claim because the District is a public entity. A.R.S. § 12-821.

Plaintiffs' equal-protection claims accrued no later than 2015 when the E-27 rate was adopted.  FAC ¶¶ 73, 170-73, 180-82.  Plaintiffs did not file this action within two years (or one year for their state-law claim), and therefore, dismissal of these claims is appropriate.

### 2. Plaintiffs Do Not Identify Any "Similarly Situated" Customers

Plaintiffs' equal-protection claims rely on the conclusory allegation that solar, non-solar, and grandfathered solar customers are similarly situated customers of the District.  FAC ¶¶ 155, 170, and 180.  Because the "facts" alleged in the Complaint show otherwise, Plaintiffs' equal protection claims must be dismissed.

A necessary element of an equal-protection claim is the identification of a "*comparable* group" that is treated differently than the plaintiff.  *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 982 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1279 (2018) (emphasis added).[25]  Although the Equal Protection Clause "commands" that "all persons *similarly situated* should be treated alike," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (emphasis added), "it does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in *all* relevant respects alike." *Nordlinger* v. *Hahn*, 505 U.S. 1, 10 (1992) (emphasis added).  Therefore, to state an equal-protection claim a complaint must establish that the plaintiff is "similar [to the comparable group] in those respects that are relevant to [the government's] own interests and its policy." *Arizona Dream Act Coal.,* 855 F.3d at 966.

The pertinent "interests and policies" of a public utility when setting rates includes "the right to classify consumers under reasonable classifications based upon such factors as the cost of service, the purpose for which the service or the product is received, the quantity or the amount received, the different character of the service furnished, the time of its use or any other matter that presents a substantial difference as a ground for distinction." 12 E. McQuillin, *Law of Municipal Corporations* § 35:58 (3d ed.).  Accordingly, "a lack of

---

[25] The federal and state constitutional provisions relied on by Plaintiffs for their equal-protection claim are "substantially the same in effect," *Chavez v. Brewer*, 214 P.3d 397, 408 (Ariz. Ct. App. 2009), and therefore the arguments set forth herein apply equally to both claims.

uniformity in the rate charged [by a public utility] is not necessarily unlawful discrimination;" rather, "the classification of a user, and thus the amount charged, is within the [public utility's] discretionary authority." *Id.*; s*ee also Highland Properties v. Lee Cty. Utils. Auth.*, 173 Fed. App'x 806, 809 (11th Cir. 2006) (affirming dismissal of equal protection claim against public utility based on relevant differences between plaintiff and alleged comparable group).

The FAC fails to identify a "comparable group" that is "alike in all relevant respects" from the perspective of a public utility engaged in ratemaking. The FAC instead recognizes, and is even premised on, the fact that solar customers and non-solar customers are dissimilar.[26] Notably, solar customers have differences in their load patterns, total electricity consumption, and demands on the grid as compared to the District's non-solar customers. *See* FAC ¶ 46 (quoting Edison Electric Institute article recognizing that solar customers present "cost-recovery challenges" due to the "lost load" and resulting "cross-subsidies" among the utility's customers). The FAC also recognizes that solar customers do not just consume electricity; they, unlike non-solar customers, also generate electricity that the District's grid must accommodate. FAC ¶¶ 60-62. These recognized material differences between solar and non-solar customers prohibit Plaintiffs' equal-protection claim.

Plaintiffs' contention that "grandfathered solar customers" are "similarly situated," FAC ¶¶ 170 and 180, also fails. The District had both provided incentives to non-solar customers who were willing to install solar-energy systems for a period of time before the 2015 price process and charged rooftop solar customers for electricity based solely on their usage and a fixed charge. FAC ¶ 12. The incentives were phased out, and the E-27 rate was

---

[26] *See, e.g.,* FAC ¶ 3 ("[b]y generating electricity through solar energy systems, solar customers consume and purchase less electricity from SRP"); ¶ 4 (alleging that solar customers, unlike non-solar customers, only require "supplemental electricity for the limited circumstances when their solar energy system produces and stores less than what they need"); and ¶ 52 ("solar energy customers … purchase electricity from SRP in order to have power at times when their solar energy system cannot fully meet their needs for electric power"); FAC ¶ 155 ("solar customers rely on SRP for electricity during times when they are unable to self-generate sufficient electricity").

adopted for new rooftop solar customers. When it adopted E-27, the Board decided to "grandfather" customers that "previously installed solar energy systems or [that] contracted with SRP for its installation as of December 8, 2014," on their existing rate plan. FAC ¶ 16. Unlike Plaintiffs, who elected to install solar-energy systems *after* the effective date of the E-27 rate, the grandfathered customers had incurred the cost of installing solar systems prior to the adoption of E-27. This difference in the relationship between the District and its grandfathered solar customers compels dismissal of the FAC to the extent it is based on the District's treatment of new and grandfathered rooftop solar customers under equal protection analysis. *See Gen. Textile Printing & Processing Corp. v. City of Rocky Mount*, 908 F. Supp. 1295, 1309 (E.D.N.C. 1995) (rejecting equal protection claim against municipal utility where the challenged classification was rationally based on the differences between the ratepayers); *Highland Properties*, 173 Fed. App'x at 809 (same).

The *facts* alleged in the FAC show that there are material differences between Plaintiffs, grandfathered solar customers, and non-solar customers for purposes of the District's ratemaking. The material differences between these customers require dismissal of Plaintiffs' equal protection claims as a matter of law.

### 3. The Rational Basis For E-27 Is Recognized In The FAC

Plaintiffs do not contend they are a suspect class, a quasi-suspect class, or that a fundamental interest is implicated by the acts of the District. Here, Plaintiffs agree that the adoption of E-27 is subject to rational basis review,[27] the lowest level of judicial scrutiny, and must be upheld so long as there is a *conceivable*, rational justification for the District's adoption of E-27.

To state an equal-protection claim under rational basis review, the complaint must plead facts that are sufficient to carry the heavy burden of proving that there is no "rational relationship between the disparity of treatment and some legitimate government purpose." *See Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 938 (9th Cir. 2000) (affirming grant of a

---

[27] During the LRCiv 12.1(c) meet and confer, Plaintiffs' counsel acknowledged that rational basis review applies to the equal protection claims.

12(b)(6) motion where the facts alleged in the complaint failed to show that the challenged laws lacked a rational relationship with the "reasonably conceivable" government purpose). When applying rational basis review, the challenged classification is always entitled to a "'strong presumption of validity,'" *International Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 407 (9th Cir. 2015), but in the area of economics and social welfare, the presumption of validity is bolstered by the courts' preference to allow the democratic process to address any alleged wrongs by public officials, *City of Cleburne*, 473 U.S. at 440. Thus, "[i]t is quite easy" for a municipal utility's rate to satisfy rational basis scrutiny.[28] *Oviedo Town Ctr. II, L.L.P. v. City of Oviedo,* 2018 WL 6822693, at *6 (11th Cir. Dec. 28, 2018).

Here, the FAC acknowledges that, before adopting the E-27 rate, the District identified a rational basis for the new solar-customer classification. FAC ¶¶ 46, 84, 100 (alleging that a stated purpose for the 2014/2015 ratemaking was to adopt a rate design that would fairly recover the District's costs for serving solar customers and eliminate the cost shift to the District's non-solar customers); *see Freeport Minerals*, 419 P.3d at 945-946 (explaining how utility ratemaking includes the process of identify the cost of serving each class of customer with the objective of minimizing subsidies between different customers groups). Plaintiffs contend, however, that the basis offered by the District for the adoption of the E-27 rate is "pretextual." FAC ¶ 100. An allegation of pretext does not prevent dismissal because "it is entirely irrelevant for constitutional purposes whether" the District "was actually motivated by the conceived reason for the challenged distinction." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993). Instead, because the FAC has suggested "these rational foundations," Plaintiffs "defeated their argument that it could not possibly be rational." *Oviedo Town Ctr. II, L.L.L.P.*, 2018 WL 6822693, at *7 (affirming dismissal of a §1983 complaint on a motion to dismiss). Thus, Plaintiffs' allegation that the bases

---

[28] In fact, courts have repeatedly found that ratepayers do not have a constitutionally protected interest in the rates that they pay for electricity. *See, e.g., Georgia Power Project v. Georgia Power Co.*, 409 F. Supp. 332, 334 (N.D. Ga. 1975) (holding that public utility customers do not have a constitutionally protected property interest to a particular utility rate); *Crosby v. City of Jackson,* 813 F. Supp. 476, 477 (S.D. Miss. 1993) (same).

identified by the District for E-27 were supposedly "pretextual" compels, rather than prevents, dismissal of the federal and state equal-protection claims.[29]

### C. Plaintiffs' Price Discrimination Claims Fail As A Matter of Law

Plaintiffs contend that the adoption of E-27 violates Article 15, § 12 of the Arizona Constitution and A.R.S. § 40-334. FAC ¶¶ 153-168. However, Article 15, § 12 of the Arizona Constitution and A.R.S. § 40-334(A) apply only to "*public service corporations*." Because the District is not a "public service corporation," *see Rubenstein Constr. Co.*, 265 P.2d at 456, those claims must be dismissed. Further, as noted in Section IV.B.3, the legality of setting electric rates among customer classes that have different usage profiles or other material differences relevant to their costs of service is well established. Plaintiffs' bare allegation that such pricing is "discriminatory" is wholly conclusory.

### D. Plaintiffs' Claim Under A.R.S. § 44-1522 Fails As A Matter Of Law

Plaintiffs' final claim is an unprecedented allegation: that the District, a political subdivision and public power entity, is subject to a private cause of action under Arizona's Consumer Fraud Act, A.R.S. § 44-1522 *et seq.* (the "CFA"). Plaintiffs fail to state a claim under the CFA for three reasons: (i) the CFA does not apply to political subdivisions; (ii) Plaintiffs have not pled the claim with the specificity required under Rule 9(b), Fed. R. Civ. P.; and (iii) Title 30, A.R.S., does not create a private cause of action. Accordingly, Plaintiffs' claim under the CFA should be dismissed.

#### 1. The District Is Not A "Person" Under the CFA

A claim under the CFA may be brought against any "person," which is defined as "any natural person or the person's legal representative, partnership, domestic or foreign corporation, any company, trust, business entity, or association, any agent, employee,

---

[29] If the state equal-protection claim is not dismissed, Plaintiffs' request for monetary damages under that count still fails. Arizona does not recognize a claim for damages for violations of state constitutional rights. Instead, damages for violations of constitutional rights existing under both the state and federal constitutions must be brought under § 1983. *Creamer v. State, Arizona Dept. of Corr.*, 2015 WL 127926, at *2, n.1 (Ariz. Ct. App. 2015) ("seeking damages" for "alleged constitutional violations," of rights in the state and federal constitutions must be brought "under 42 U.S.C. § 1983.").

-29-

salesman, partner, officer, director, member, stockholder, associate or trustee." A.R.S. § 44-1521(6). The legislature's election not to specifically include the state or its political subdivisions in the CFA's definition of "person" establishes that the provisions therein do not apply to public entities like the District, and, therefore, Plaintiffs' CFA claim must be dismissed. *See Estate of Braden ex rel. Gabaldon v. State*, 266 P.3d 349 (Ariz. 2011) (holding that the Arizona legislature will specifically mention public actors when defining "person" if it intends for public actors to be within the scope of the definition.

### 2. Plaintiffs Have Not Pled The Elements Of A CFA Claim With The Necessary Specificity

Plaintiffs' CFA claim is subject to the heightened pleading standards under Fed. R. Civ. P. 9(b). *Lorona v. Arizona Summit Law Sch., LLC*, 151 F. Supp. 3d 978, 995 (D. Ariz. 2015). The necessary elements of a CFA claim include "a false promise or misrepresentation," actual "reliance" on the alleged misrepresentation, and "consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983); *Shupe v. Cricket Commc'ns, Inc.*, 2014 WL 6983245, at *6 (D. Ariz. Dec. 10, 2014).

Plaintiffs fail to allege the necessary elements of a CFA claim with the required specificity. Rather than identify the necessary "who, what, when, where, and how" for the supposed misrepresentations by the District, *Lorona*, 151 F. Supp.3d at 995, Plaintiffs instead merely allege that unspecified "abusive business practices" of the District give rise to their claim. FAC ¶ 190. This type of ambiguous, nonspecific pleading of consumer fraud does not comply with the requirements of Rule 9(b). *See, e.g.*, *FTC v. ELH Consulting, Inc.*, 2013 WL 4759267, at *1 (D. Ariz. Sept. 4, 2013) ("misrepresentations [must be stated] with particularity[.]").

The FAC does not allege with sufficient particularity actual reliance on a misrepresentation that caused injury. *First*, none of the Plaintiffs contends that he heard an alleged misstatement by the District. *Second,* the FAC does not allege how the supposed misstatement was detrimentally relied on by any Plaintiff. Such a claim would be illogical. When Plaintiffs elected to become solar customers, the E-27 rate was already effective, in

some cases for years.  Thus, Plaintiffs' reliance, if any, on a statement allegedly made prior to the adoption of E-27 could not constitute the proximate cause of their injury.  Plaintiffs' CFA claim should be dismissed.

### 3.    A.R.S. § 30-806 Does Not Support Plaintiffs' CFA Claim

Plaintiffs allege that A.R.S. § 30-806, which states a "[f]ailure of a public power entity to comply *with the rules adopted* [by the public power entity] pursuant to … this section or the procedures listed in subsection D of this section is an unlawful practice pursuant to section 44-1522," supports their CFA claim.  A.R.S. § 30-806(K) (emphasis added).  Plaintiffs do not, however, identify in the FAC the necessary "rule" that was violated.  *See id*.  Moreover, the provisions in Title 30, A.R.S., do not create a private cause of action.  Thus, Plaintiffs' reliance on A.R.S. § 30-806(K) does not support their CFA claim.

On its terms, A.R.S. § 30-806(K) is violated only when the District fails to follow a "rule" it has adopted.  Plaintiffs do not identify any such rule, but instead allege that the District has "failed to adopt" the rules that are a predicate to reliance on A.R.S. § 30-806(K).  FAC ¶ 190.  Because an alleged failure to adopt a "rule" does not violate the statute, the allegations cannot support Plaintiffs' CFA claim.

In addition, there is no private cause of action for violations of A.R.S. § 30-806(K).  In the FAC, Plaintiffs quote only a portion of A.R.S. § 30-806(K), while omitting material language.  FAC ¶ 188 (mistakenly citing A.R.S. § 30-806(D)).  The second sentence in subpart (K) that is omitted by Plaintiffs limits the prosecution of a violation of A.R.S. § 30-806 to the Arizona Attorney General's office.  *See* A.R.S. § 30-806(K) ("The *attorney general* may investigate and take appropriate action as prescribed by title 44, chapter 10, article 7.") (emphasis added).  This express grant of a right of action to the Attorney General, with no provision for private enforcement, bars Plaintiffs' attempt to create a private right of action.  *See, e.g.*, *McNamara v. Citizens Protecting Tax Payers*, 337 P.3d 557, 559 (2014).  Thus, Plaintiffs' CFA claim relying on provisions in Title 30 must be dismissed.

## V. PLAINTIFFS' CLAIMS FOR DAMAGES ARE BARRED

### A. The LGAA Provides The District Absolute Immunity From Federal And State Antitrust Damages Claims

The Local Government Antitrust Act ("LGAA") states that "[n]o damages, interest on damages, costs, or attorney's fees may be recovered" in an antitrust action "from any local government[.]" 15 U.S.C. § 35(a). It broadly defines "local government" to include "a school district, sanitary district, or any other special function governmental unit established by State law in one or more states." 15 U.S.C. § 34(1); *Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F. Supp. 454, 458 (C.D. Cal. 1986). The "special function governmental unit provision" is construed broadly and is "designed to protect those political subdivisions of the state, which though they do not have broad governmental powers, nonetheless serve a public function in the provision of a particular service." *Capital Freight Servs., Inc. v. Trailer Marine Transp. Corp.*, 704 F. Supp. 1190, 1198 (S.D.N.Y. 1988). Examples of such entities include "planning districts, water districts, sewer districts, irrigation districts ... and mosquito control districts." H.R. Rep. No. 98-965, at 19-20 (1984), reprinted in 1984 U.S.C.C.A.N. 4602, 4620-4621. The District easily fits within this framework. The District is a "public, political, taxing subdivision of the state," A.R.S. § 48-2302, and is expressly authorized to exercise powers common to local governments.[30] Accordingly, in prior litigation challenging the E-27 rate, this Court held that the LGAA required dismissal of all of "[plaintiffs'] antitrust damages claims." *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 2015 WL 6503439, at *13-14 (D. Ariz. Oct. 27, 2015).

The District's immunity under the LGAA not only extends to Plaintiffs' federal antitrust law claims, but also to their state antitrust law claims. *See id.; Driscoll v. City of New York*, 1987 WL 26799, at *2 (S.D.N.Y. Nov. 25, 1987). This is true for at least two reasons. *First,* Arizona's constitution grants to the District and other political subdivisions

---

[30] *See, e.g.*, A.R.S. § 48-2340 (power of eminent domain); *id.* § 48-2339 (power to construct works across public and private property); *id.* § 48-2341 (power to survey land); *id.* § 48-2442 (power to call elections for bond issuances). Moreover, like other local governments, the District is governed by an elected body, *id.* § 48-2381, and its property and bonds are immune from taxation, *id.* § 48-2302.

all "immunities … granted … political subdivisions under … any law of … the United States." Ariz. Const. art. 13 § 7.  Because the LGAA is a law of the United States that grants political subdivisions immunity (from federal antitrust law damages claims), it necessarily bars state antitrust law damages claims.  *Second*, the Arizona legislature desired to achieve uniformity between Arizona's antitrust laws and the federal antitrust laws.  *See* A.R.S. § 44-1412.  Because the federal antitrust laws do not permit damage claims against political subdivisions, Arizona's antitrust laws should be read comparably.  *Cf. Mothershed*, 410 F.3d at 609 (holding that Arizona law incorporates state action immunity doctrine in light of the legislature's desire to achieve uniformity between state and federal antitrust laws).

### B.    A.R.S. § 12-820.01(A) Immunizes The District From State-Law Damages

Under Arizona law, "public entities" enjoy "absolute immunity" from claims for damages for the exercise of (1) any "legislative function," and (2) "administrative function[s] involving the determination of a fundamental governmental policy."  A.R.S. § 12-820.01.  "Absolute immunity" under A.R.S § 12-820.01 "is a question of law," *Tostado v. City of Lake Havasu*, 204 P.3d 1044, 1047 (Ariz. Ct. App. 2008), that is "appropriate for resolution on a motion to dismiss," *Williams v. California*, 764 F.3d 1002, 1018 (9th Cir. 2014).

"[R]ate-making is a legislative function."  *Arizona Corp. Comm'n v. Superior Ct. In & For Maricopa Cty.*, 480 P.2d 988, 991 (Ariz. 1971).  There can be no question that Plaintiffs' claim for monetary relief arises from a challenge to rates that the District adopted through an exercise of its ratemaking authority.  *FERC v. Electric Power Supply Ass'n*, 136 S. Ct. 760, 770 (2016) ("rate-setting" in the electricity industry is the act of "establish[ing] the amount of money a consumer will hand over in exchange for power").  Thus, Plaintiffs challenge the Board's exercise of a legislative function, and A.R.S. § 12-820.01(A)(1) bars Plaintiffs' state-law claims for damages.

The District's ratemaking is also an "exercise of an administrative function involving the determination of fundamental governmental policy."  A.R.S. § 12-820.01(A)(2).  A public entity's "determination … to seek … the resources necessary for … [t]he construction or maintenance of facilities" is a "determination of fundamental governmental policy."  *Id.*

1 § 12-820.01(B). The District sets electricity rates to cover such costs. *See supra* at 6-7; *see*
2 *also Myers v. City of Tempe*, 128 P.3d 751, 753 (Ariz. 2006) (administrative decision that
3 "involved … the distribution of resources and assets, and required consulting the city's
4 subject matter experts" was immune). Its rate-setting therefore qualifies as an
5 "administrative function" entitled to immunity under A.R.S. § 12-820.01(A)(2).

6 **VI.  THIS COURT SHOULD DISMISS THE FAC WITHOUT LEAVE TO AMEND**

7 Dismissal without leave to amend is proper where the complaint cannot be saved by
8 amendment. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th
9 Cir. 2004). Further amendments here would be futile and should not be permitted.

10 The FAC suffers from several incurable legal defects as set forth in Sections I-III and
11 IV.B & C. No set of facts alleged in a further "amendment could overcome the fundamental
12 futility of [these] claims." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). Where
13 relief is legally precluded such that any "amended complaint would be subject to dismissal,"
14 dismissal without leave to amend is appropriate. *Id.*; *see also Ashelman v. Pope*, 793 F.2d
15 1072, 1075 (9th Cir. 1986) (where "immunity[ies] bar recovery, no amendment could cure
16 the deficiency and the action was properly terminated on a motion to dismiss"). Moreover,
17 the FAC suffers from the same factual deficiencies as the original Complaint. *See* Section
18 IV.A. Denial of leave to amend is appropriate after "failure to cure deficiencies by
19 amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1961). The FAC
20 reflects Plaintiffs' attempt to cure after a meet-and-confer teleconference at which the
21 District advised Plaintiffs of each of these deficiencies. There is no reason to believe that
22 Plaintiffs could, by amending further, state plausible claims for relief.

23 <center>**CONCLUSION**</center>

24 Plaintiffs ask this Court to wade into the specialized, legislative ratemaking process
25 that the Arizona legislature has delegated to the District's elected Board. Plaintiffs make this
26 request to obtain preferential electricity rates so that they can "obtain [a] viable return on a
27 solar energy system investment," at the cost of the District's other ratepayers. FAC ¶ 85.
28 No legal principle supports Plaintiffs' effort—especially through a belated, collateral attack

<center>-34-</center>

on a public ratemaking process—and there are many that expressly forbid it. Plaintiffs' claims should be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 7th day of May, 2019.


/s/ Christopher E. Babbitt

JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
Eric D. Gere – 023226
egere@jsslaw.com
One East Washington Street, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 262 5911
Facsimile: (602) 495 2633
minuteentries@jsslaw.com

WILMER CUTLER PICKERING HALE AND DORR LLP
Christopher E. Babbitt (*pro hac vice*)
David Gringer (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663 6000
Facsimile: (202) 663 6363
christopher.babbitt@wilmerhale.com
david.gringer@wilmerhale.com

*Attorneys for Defendant Salt River Project Agricultural Improvement and Power District*

1

**CERTIFICATE OF SERVICE**

2       On May 7, 2019, I electronically transmitted the attached document to the Clerk's

3  office using the CM/ECF System for filing and transmittal of a notice of electronic filing to

4  the following CM/ECF registrants:

5  ZIMMERMAN REED LLP
    14646 North Kierland Blvd., Ste. 145
6  Scottsdale, AZ 85254
    Hart L. Robinovitch

7

    ZIMMERMAN REED LLP
8  1100 IDS Center
    80 South Eighth Street
9  Minneapolis, MN 55402
    David M. Cialkowski
10  Alia M. Abdi

11  GUSTAFSON GLUEK PLLC
    Canadian Pacific Plaza
12  120 South Street, Suite 2600
    Minneapolis, MN 55402
13  Daniel E. Gustafson
    Daniel C. Hedlund
14  Daniel J. Nordin

15                              /s/Christopher E. Babbitt