1  WILMER CUTLER PICKERING
   HALE AND DORR LLP
2  Christopher E. Babbitt (*pro hac vice*)
3  David Gringer (*pro hac vice*)
   1875 Pennsylvania Avenue, NW
4  Washington, DC 20006
   Telephone: (202) 663-6000
5  Facsimile: (202) 663-6363
6  christopher.babbitt@wilmerhale.com
   david.gringer@wilmerhale.com
7
8  JENNINGS, STROUSS & SALMON, P.L.C.
   A Professional Limited Liability Company
9  Eric D. Gere – 023226
   egere@jsslaw.com
10 One East Washington Street, Suite 1900
   Phoenix, Arizona 85004-2554
11 Telephone: (602) 262-5911
   Facsimile: (602) 495-2633
12 MinuteEntries@jsslaw.com

13 *Attorneys for Defendant Salt River Project*
   *Agricultural Improvement and Power District*
14

15            **UNITED STATES DISTRICT COURT**
16               **DISTRICT OF ARIZONA**

17 William Ellis, Robert Dill, Edward Rupprecht,      Case No. 2:19-cv-1228-SMB
   and Robert Gustavis, individually and on behalf
18 of all others similarly situated,                   **SALT RIVER PROJECT**
                                                        **AGRICULTURAL**
19                           Plaintiffs,               **IMPROVEMENT AND POWER**
                                                        **DISTRICT'S REPLY IN SUPPORT**
20         vs.                                          **OF ITS MOTION TO DISMISS**

21 Salt River Project Agricultural Improvement        **(Oral Argument Requested)**
22 and Power District,
23                           Defendant.
24

25
26
27
28

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.   THE AMENDED COMPLAINT IS AN IMPROPER COLLATERAL
     ATTACK ON RETAIL ELECTRICITY RATES SET BY THE BOARD .................. 1

     A.   THE FILED RATE DOCTRINE BARS ALL OF PLAINTIFFS'
          CLAIMS ....................................................................................................... 1

     B.   PLAINTIFFS' FAILURE TO COMPLY WITH A.R.S. §§ 30-810 TO -
          812 BARS ALL OF THEIR STATE-LAW CLAIMS ................................... 3

II.  STATE-ACTION IMMUNITY BARS PLAINTIFFS' ANTITRUST CLAIMS ......... 4

     A.   THE ARIZONA LAWS ESTABLISHING—AND IMMUNIZING—
          THE BOARD'S RATEMAKING AUTHORITY SATISFY THE
          CLEAR-ARTICULATION PRONG ............................................................. 4

     B.   THE ACTIVE-SUPERVISION PRONG OF STATE-ACTION
          IMMUNITY DOES NOT APPLY ................................................................ 7

III. PLAINTIFFS' STATE-LAW CLAIMS ARE BARRED BY A.R.S. §§ 12-821
     AND 12-821.01 ...................................................................................................... 8

     A.   ARIZONA'S NOTICE OF CLAIM STATUTE BARS PLAINTIFFS'
          STATE LAW CLAIMS ................................................................................ 8

     B.   PLAINTIFFS DID NOT COMPLY WITH ARIZONA'S NOTICE OF
          CLAIM STATUTE ...................................................................................... 9

     C.   A "CONTINUING VIOLATION" THEORY DOES NOT APPLY .............. 10

IV.  THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM .................. 11

     A.   PLAINTIFFS DO NOT STATE A CLAIM UNDER FEDERAL OR
          STATE ANTITRUST LAW ....................................................................... 11

          1.   Plaintiffs Have Not Plausibly Alleged Causal Antitrust Injury ........... 11

          2.   Plaintiffs Have Not Plausibly Alleged Exclusionary Conduct ............. 11

          3.   Plaintiffs Lack Standing To Bring Counts II and IV ........................... 12

     B.   PLAINTIFFS' FEDERAL AND STATE EQUAL PROTECTION
          CLAIMS FAIL ........................................................................................... 13

          1.   The Statute Of Limitations Bars Plaintiffs' Claims .......................... 13

          2.   Plaintiffs Are Not Similarly Situated To Other Customers ................. 13

          3.   The Board's Adoption Of E-27 Is Supported By A Rational Basis ...... 14

C.    PLAINTIFFS' PRICE DISCRIMINATION CLAIMS SHOULD BE DISMISSED ...................................................... 14

D.    PLAINTIFFS' CLAIM UNDER A.R.S. § 44-1522 FAILS AS A MATTER OF LAW ............................................... 15

    1.    The Consumer Fraud Act Does Not Apply To The District ................ 15

    2.    Plaintiffs Have Not Alleged Facts To Support A CFA Claim ............. 15

    3.    A.R.S. § 30-806(K) Does Not Create A Private Cause Of Action ....... 16

V.    PLAINTIFFS' DAMAGES CLAIMS ARE BARRED ................................................ 16

A.    THE LGAA PROVIDES THE DISTRICT ABSOLUTE IMMUNITY FROM FEDERAL AND STATE ANTITRUST DAMAGES CLAIMS ......... 16

B.    A.R.S. § 12-820.01(A) IMMUNIZES THE DISTRICT FROM STATE-LAW DAMAGES .......................................... 17

CONCLUSION ........................................................................ 17

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alarm Detection Systems, Inc. v. Orland Fire Protection District*,
  326 F. Supp. 3d 602 (N.D. Ill. 2018) ................................................................. 8

*AmeriCare MedServices, Inc. v. City of Anaheim*,
  2017 WL 5592892 (C.D. Cal. Apr. 21, 2017),
  *aff'd*, 735 F. App'x 473 (9th Cir. 2018) ........................................................... 8

*Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*,
  138 S. Ct. 1865 (2018) ..................................................................................... 9

*Arizona Corp. Commission v. Superior Court In & For the County of
  Maricopa*, 480 P.2d 988 (Ariz. 1971) .............................................................. 17

*Arkansas Louisiana Gas Co. v. Hall*,
  453 U.S. 571 (1981) ......................................................................................... 1

*Arpaio v. Maricopa County Board of Supervisors*,
  238 P.3d 626 (Ariz. Ct. App. 2010) ................................................................. 9

*Atlantic Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ......................................................................................... 11

*Banks v. County of San Mateo*,
  2017 WL 3434113 (N.D. Cal. Aug. 10, 2017) ................................................. 8

*Benitez v. Charlotte-Mecklenberg Hospital Authority*,
  2019 WL 1028018 (W.D.N.C. Mar. 4, 2019) .................................................. 16

*Burns v. City of Tucson*,
  432 P.3d 953 (Ariz. Ct. App. 2018) ................................................................. 16

*California CNG, Inc. v. Southern California Gas Co.*,
  96 F.3d 1193 (9th Cir. 1996) ........................................................................ 4, 7

*Camboni v. Brnovich*,
  2016 WL 4271850 (D. Ariz. Aug. 15, 2016) ................................................... 9

*Carey v. Piphus*,
  435 U.S. 247 (1978) ......................................................................................... 13

*Carlin v. DairyAmerica, Inc.*,
  705 F.3d 856 (9th Cir. 2013) ........................................................................... 1

*Century Aluminum of South Carolina Inc. v. South Carolina Public Authority*,
   278 F. Supp. 3d 877 (D.S.C. 2017) .................................................................... 8

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
   499 U.S. 365 (1991) ........................................................................................... 5

*City of Phoenix v. Fields*,
   201 P.3d 529 (Ariz. 2009) .................................................................................. 9

*City of Tempe v. State*,
   351 P.3d 367 (Ariz. Ct. App. 2015) ................................................................. 15

*County of Stanislaus v. Pacific Gas & Electric Co.*,
   114 F.3d 858 (9th Cir. 1997) .......................................................................... 1, 2

*Crockett v. NEA-Alaska*,
   367 F. Supp. 3d 996 (D. Alaska 2019) ........................................................... 7, 8

*Dakota Territory Tours ACC v. Sedona-Oak Creek Airport Authority Inc.*,
   2019 WL 1557517 (D. Ariz. Apr. 10, 2019) .......................................... 4, 5, 6, 8

*Deer Valley Unified School District No. 97 v. Houser*,
   152 P.3d 490 (Ariz. 2007) ................................................................................ 10

*Doe v. Dickenson*,
   2008 WL 4933964 (D. Ariz. Nov. 14, 2008) .................................................... 4

*Estate of Braden ex rel. Gabaldon v. State*,
   266 P.3d 349 (Ariz. 2011) ................................................................................ 15

*Federal Communications Commission v. Beach Communications, Inc.*,
   508 U.S. 307 (1993) ......................................................................................... 14

*Federal Trade Commission v. Phoebe Putney Health System, Inc.*,
   568 U.S. 216 (2013) ....................................................................................... 5, 7

*Felder v. Casey*,
   487 U.S. 131 (1988) ........................................................................................... 9

*Freeport Minerals Corp. v. Arizona Corp. Commission*,
   419 P.3d 942 (Ariz. Ct. App. 2018), *review denied* (Oct. 31, 2018) .............. 14

*Garrison v. Oracle Corp.*,
   159 F. Supp. 3d 1044 (N.D. Cal. 2016) ........................................................... 10

-iv-

*Gerlinger v. Amazon.com Inc.*,
  526 F.3d 1253 (9th Cir. 2008) ....................................................................... 11

*Grason Electric Co. v. Sacramento Municipal Utility District*,
  770 F.2d 833 (9th Cir. 1985) ........................................................................... 4

*Great-West Life & Annuity Insurance Co. v. Knudson*,
  534 U.S. 204 (2002) ......................................................................................... 6

*Hausauer v. City of Mesa*,
  754 F. App'x 665 (9th Cir. 2019) .................................................................... 9

*In re Multidistrict Vehicle Air Pollution*,
  591 F.2d 68 (9th Cir. 1979) ........................................................................... 10

*Johnson v. First American Title Insurance Co.*,
  2008 WL 4850198 (D. Ariz. Nov. 7, 2008) ................................................. 2, 3

*Kay Electric Cooperative v. City of Newkirk*,
  647 F.3d 1039 (10th Cir. 2011) ....................................................................... 7

*Lambert v. Tesla, Inc.*,
  923 F.3d 1246 (9th Cir. 2019) ....................................................................... 16

*Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*,
  140 F.3d 1228 (9th Cir. 1998) ....................................................................... 11

*Madrid v. Concho Elementary School District No. 6 of Apache County*,
  2010 WL 1980329 (D. Ariz. May 17, 2010),
  *aff'd*, 439 F. App'x 566 (9th Cir. 2011) .......................................................... 9

*Metro Mobile CTS, Inc. v. Newvector Communications, Inc.*,
  661 F. Supp. 1504 (D. Ariz. 1987) .................................................................. 5

*Muhaymin v. City of Phoenix*,
  2019 WL 699170 (D. Ariz. Feb. 20, 2019) ..................................................... 9

*Myers v. City of Tempe*,
  128 P.3d 751 (Ariz. 2006) ............................................................................. 17

*Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*,
  795 F.3d 1124 (9th Cir. 2015) ................................................................. 11, 12

*Neagle v. Goldman Sachs Group, Inc.*,
  2019 WL 1102199 (D. Or. Mar. 1, 2019) ..................................................... 12

-v-

*New Orleans Public Service, Inc. v. Council of New Orleans*,
    491 U.S. 350 (1989) .................................................................................... 17

*North Carolina State Board of Dental Examiners v. Federal Trade
    Commission*, 135 S. Ct 1101 (2015) ................................................... 7, 8

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) .................................... 12

*Oviedo Town Center II, LLLP v. City of Oviedo, Florida*,
    759 F. App'x 828 (11th Cir. 2018) ...................................................... 14

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.*,
    555 U.S. 438 (2009) .............................................................................. 12

*Qwest Corp. v. Kelly*,
    59 P.3d 789 (Ariz. Ct. App. 2002) ........................................................ 3

*RK Ventures, Inc. v. City of Seattle*,
    307 F.3d 1045 (9th Cir. 2002) ............................................................. 13

*Rubenstein Constr. Co. v. Salt River Project Agr. Improvement & Power Dist.*,
    265 P.2d 455 (Ariz. 1953) ............................................................... 7, 15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.*,
    559 U.S. 393 (2010) ................................................................................ 9

*SolarCity Corp. v. Salt River Agricultural Improvement & Power District*,
    2015 WL 6503439 (D. Ariz. Oct. 27, 2015) ................................... 2, 16

*Sonitrol of Fresno, Inc. v. American Telephone and Telegraph Co.*,
    629 F. Supp. 1089 (D.D.C. 1986) ........................................................ 5

*Southern Motor Carriers Rate Conference, Inc. v. United States*,
    471 U.S. 48 (1985) .................................................................................. 5

*State ex rel. Utilities Commission v. Carolina Utility Customers Association,
    Inc.*, 500 S.E.2d 693 (N.C. 1998) ...................................................... 13

*Sumid v. City of Prescott*,
    230 P. 1103 (Ariz. 1924) ...................................................................... 15

*Sun City Taxpayers' Association v. Citizens Utilities Co.*,
    45 F.3d 58 (2d Cir. 1995) ....................................................................... 1

*Taffet v. Southern Co.*,
    967 F.2d 1483 (11th Cir. 1992) (en banc) ............................................ 3

*Tostado v. City of Lake Havasu,*
  204 P.3d 1044 (Ariz. Ct. App. 2008) .................................................................. 17

*Ventures Edge Legal PLLC v. GoDaddy.com LLC,*
  2018 WL 619723 (D. Ariz. Jan. 30, 2018) ........................................................ 15

*Wah Chang v. Duke Energy Trading and Marketing, LLC,*
  507 F.3d 1222 (9th Cir. 2007) ............................................................................ 3

*Walton v. Arizona,*
  2017 WL 5997441 (D. Ariz. June 27, 2017) ...................................................... 10

*Watkins v. Arpaio,*
  367 P.3d 72 (Ariz. Ct. App. 2016) ..................................................................... 10

*Wegoland Ltd. v. NYNEX Corp.,*
  27 F.3d 17 (2d Cir. 1994) ..................................................................................... 2

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
  401 U.S. 321 (1971) ............................................................................................ 10

**Statutes**

A.R.S. § 10-140 ...................................................................................................... 15

A.R.S. § 12-820 ................................................................................................... 9, 17

A.R.S. § 12-821 ................................................................................................... 8, 10

A.R.S. § 30-801 (Electric Power Competition Act of 1998) .................................. 6

A.R.S. § 30-802 ................................................................................................. 1, 2, 7

A.R.S. § 30-803 ....................................................................................................... 6

A.R.S. § 30-805 ................................................................................................... 2, 7

A.R.S. § 30-806 ...................................................................................................... 16

A.R.S. §§ 30-810 to -812 ..................................................................................... 3, 4

A.R.S. § 40-202 ....................................................................................................... 6

A.R.S. § 40-252 ....................................................................................................... 3

A.R.S. § 44-1221 ................................................................................................ 15, 16

A.R.S. § 44-1412 ................................................................................................ 17

A.R.S. § 44-1522 ................................................................................................ 15

A.R.S. § 48-247 .................................................................................................... 7

A.R.S. § 48-2301 ................................................................................................ 14

A.R.S. § 48-2302 ................................................................................................ 16

A.R.S. § 48-2334 .......................................................................................... 1, 2, 7

15 U.S.C. § 34 (Local Government Antitrust Act) ............................................ 16

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. 9

**Constitutional Provisions**

Ariz. Const. art. 13 § 7 ........................................................................... 7, 14, 16, 17

Ariz. Const. art. 15 § 2 ................................................................................ 14, 15

**Other Authorities**

H.R. Rep. No. 98-965 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4602 ................. 16

S. Rep. No. 98-593 (1984) ................................................................................. 16

**INTRODUCTION**

The First Amended Complaint ("FAC") should be dismissed for the reasons stated in the District's Motion to Dismiss. Plaintiffs' Opposition distorts the plain terms of the relevant state and federal laws, disavows essential allegations in the FAC, and disregards straightforward principles of antitrust law. At bottom, the FAC is little more than an untimely contention that Plaintiffs' electricity bills are higher than they would prefer. Courts and policymakers have, over decades, settled on the considered judgment that ratepayers dissatisfied with their utility bills must seek recourse from the elected officials tasked with ratemaking under state law, not in federal court. This Court should not disturb that judgment and should dismiss the FAC with prejudice.

**ARGUMENT**

**I.    THE AMENDED COMPLAINT IS AN IMPROPER COLLATERAL ATTACK ON RETAIL ELECTRICITY RATES SET BY THE BOARD**

**A.    The Filed Rate Doctrine Bars All Of Plaintiffs' Claims**

The filed rate doctrine—which prohibits collateral challenges to rates that have been approved by a utility's governing body—forecloses all of Plaintiffs' claims. *See* Mem. 8-9; *Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 45 F.3d 58, 62 (2d Cir. 1995) (dismissing challenge to ACC-approved rates allegedly predicated on false information). None of Plaintiffs' three arguments to the contrary has merit.

Plaintiffs first contend, without support, that the Board is not a "regulatory agency of the type that may implicate the doctrine." Opp. 4. But the filed rate doctrine applies to "the spectrum of regulated utilities," *see Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981), and has been given an "expansive reading and application." *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 868 (9th Cir. 2013). Indeed, courts "apply the filed rate doctrine" to avoid "usurp[ing] a function" that was assigned by the legislature "to a federal regulatory body." *County of Stanislaus v. Pacific Gas & Elec. Co.*, 114 F.3d 858, 862 (9th Cir. 1997).

Here, Arizona's legislature has delegated the ratemaking function to the District's Board. *See* A.R.S. §§ 48-2334; 30-802. As the FAC acknowledges, the Board is "tasked

1   with determining the reasonableness of rates." *See* FAC ¶ 58.  Just like the ACC's

2   ratemaking authority for investor-owned utilities, the District's publicly-elected Board must

3   evaluate rates proposed by the District's management pursuant to a public process set by

4   law, and the Board is required to determine whether those proposed rates are just and

5   reasonable.  *See* A.R.S. §§ 30-805(A)(1); 30-802 *et seq*.; 48-2334.  This satisfies the

6   doctrine's requirements.

7           Next, Plaintiffs assert the doctrine does not apply because they do not challenge the

8   "reasonability" of the District's rates.  Opp. 5.  As an initial matter, Plaintiffs *do* challenge

9   the reasonableness of the District's rates.  *See e.g.*, FAC ¶¶  9, 84, 88, 163.  Moreover,

10  seeking collateral judicial review of specialized ratemaking decisions is, by definition,

11  challenging whether those decisions are reasonable.  *See Wegoland Ltd. v. NYNEX Corp.*, 27

12  F.3d 17, 18 (2d Cir. 1994) (any filed rate "is per se reasonable and unassailable in judicial

13  proceedings brought by ratepayers").  The doctrine requires courts to reject the invitation to

14  invade the province of the governing ratemaking authority, recognizing that courts are not

15  institutionally suited to determine whether rates are, in fact, "just and reasonable."  *Id*. at 19.

16          Regardless, the filed rate doctrine is not limited to "reasonableness" challenges.  *See,*

17  *e.g.*, *County of Stanislaus*, 114 F.3d at 866 (doctrine bars "all claims" that challenge a filed

18  rate).  Plaintiffs' reliance on *SolarCity Corp. v. Salt River Agricultural Improvement &*

19  *Power District*, 2015 WL 6503439, at *14 (D. Ariz. Oct. 27, 2015), and *Johnson v. First*

20  *American Title Ins. Co.*, 2008 WL 4850198 (D. Ariz. Nov. 7, 2008), is therefore misplaced.

21  In *SolarCity*, respectfully, Judge Rayes incorrectly found that no challenge to the

22  reasonableness of the rates had been pled and therefore incorrectly concluded that "[w]hether

23  the rates are reasonable [had] no bearing" on the alleged antitrust claims.  That ruling, which

24  cited no authority, conflicts with the Ninth Circuit precedent cited above.  Tellingly,

25  SolarCity itself declined to defend the court's reasoning on appeal.  No. 15-17302, Dkt. 48.

26  Regardless, since Plaintiffs here *do* challenge the reasonableness of the District's rates, the

27  opinion is clearly distinguishable.  And *Johnson* does not apply because "the [filed] rate

28  itself [wa]s not challenged," 2008 WL 4850198 at *4.  There, the plaintiffs conceded that

-2-

both rates at issue were reasonable and complained only that they were entitled to the lower of the two. *Id.* Such an argument does not implicate the doctrine. *Id.*

Lastly, Plaintiffs suggest that Arizona courts have "expressly declined" to adopt the filed-rate doctrine. Opp. 5. To the contrary, Arizona courts have *not* "expressly declined" to adopt the filed rate doctrine and neither case cited by Plaintiffs even implicated the doctrine. *See Qwest Corp. v. Kelly*, 59 P.3d 789, 800 (Ariz. Ct. App. 2002); *Johnson*, 2008 WL 4850198 at *4. The issue likely remains unresolved in Arizona courts because state law independently forecloses collateral attacks on filed rates. *See* A.R.S. §§ 30-810 to -812, 40-252. Regardless, the Ninth Circuit has held that the filed rate doctrine "turns away … state antitrust actions" and "state tort actions." *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007).

**B.**   **Plaintiffs' Failure To Comply With A.R.S. §§ 30-810 To -812 Bars All Of Their State-Law Claims**

Arizona law provides the exclusive procedure for challenging the Board's ratemaking decisions. *See* A.R.S. §§ 30-810 to -812; Mem. 10. Plaintiffs' excuses for their non-compliance have no merit. *First*, they assert that they were not "dissatisfied parties" in the 2014-2015 ratemaking process and were therefore not obligated to comply with the statutory procedure. That is untenable. Defining only participating customers and those immediately dissatisfied as "parties" would eviscerate the clear intent of the statutes to preclude any judicial review outside of the prescribed process. *See* A.R.S. § 30-810(B) (stating "no claim" shall otherwise accrue in "any court"). But even assuming Plaintiffs were correct about their status, allowing non-participating customers who eventually become dissatisfied with their rates *more* latitude than those who participate in the proceeding to challenge the Board's final decision would encourage interested persons to sit out such proceedings so they could later mount collateral attacks. *See Taffet v. Southern Co.*, 967 F.2d 1483, 1492 (11th Cir. 1992) (en banc). Such an interpretation is contrary to the language and would undermine the purpose of the Title 30 regime. Plaintiffs cite no authority for departing from the statute's plain terms and fail to distinguish the Arizona Court of Appeals cases applying

1  the corresponding provisions of Title 40 to bar collateral attacks on decisions of the ACC.

2  *See* Mem. 10.  In any event, their "party" status is irrelevant:  If parties, they were bound

3  by—and failed to comply with—Title 30; if not parties, they have no right to seek judicial

4  review.[1]

5       *Second*, Plaintiffs ignore A.R.S. § 30-812(f), which deprives courts of jurisdiction to

6  "review" or "enjoin" the Board's rates outside the Title 30 framework, regardless of "party"

7  status.  "The Court is entitled to treat Plaintiff[s'] failure to respond" on this point "as [a]

8  waiver of the issue."  *Doe v. Dickenson*, 2008 WL 4933964, at *5 (D. Ariz. Nov. 14, 2008).

9  **II.   STATE-ACTION IMMUNITY BARS PLAINTIFFS' ANTITRUST CLAIMS**

10       Plaintiffs' antitrust claims are independently barred by the District's state-action

11  immunity. Mem. 11-17.  Plaintiffs assert that "the two elements of state-action immunity are

12  factual questions … inappropriately resolved on a motion to dismiss."  Opp. 8.  To the

13  contrary, the "applicability of state action immunity is a question of law[.]"  *Grason Elec.*

14  *Co. v. Sacramento Mun. Util. Dist.*, 770 F.2d 833, 835 (9th Cir. 1985); *see also Cal. CNG,*

15  *Inc. v. S. Cal. Gas Co.*, 96 F.3d 1193, 1203 (9th Cir. 1996) (resolving both elements on a

16  motion to dismiss); *Dakota Territory Tours ACC v. Sedona-Oak Creek Airport Auth. Inc.*,

17  2019 WL 1557517 (D. Ariz. Apr. 10, 2019) (dismissing case on state-action immunity

18  grounds).

19       **A.   The Arizona Laws Establishing—And Immunizing—The Board's**

20            **Ratemaking Authority Satisfy The Clear-Articulation Prong**

21       The Arizona statutory scheme governing the District's provision of electricity—and

22  the Board's ratemaking—satisfies the "clear-articulation" prong of state-action immunity.

23  The State has approved a system of regulated natural electric monopolies overseen by

24  elected officials, rather than leave pricing for this essential public service to the market.

25

26  _____

27  [1] Moreover, Plaintiffs' argument about their status (Opp. 5-6) misreads the December 12, 2014 notice, which is written in inclusive terms and does not support the negative inference

28  that Plaintiffs seek to draw (i.e., that interested persons who elect *not* to participate are exempt from the requirements of A.R.S. §§ 30-810 to -812).

While Plaintiffs may disagree with Arizona's policy, it is precisely the type of policy judgment that the state-action doctrine protects. *See FTC v. Phoebe Putney Health Sys.*, 568 U.S. 216, 226 (2013) (state-action immunity "preserves to the States their freedom … to use their municipalities to administer state regulatory policies free of the federal antitrust laws"). Plaintiffs' contrary arguments misstate the inquiry under the state-action doctrine and mischaracterize the relevant Arizona laws.

*First*, Plaintiffs argue that "while SRP may have the authority to set *its own* rates, there is no clearly articulated policy that allows SRP to set the rates of would-be competitors." Opp. 10.  By conceding the Board's ratemaking authority, Plaintiffs have conceded their case.  The clear-articulation inquiry asks whether the alleged anticompetitive effects are "the foreseeable result of what the statute authorizes." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 372-73 (1991).  Here, the challenged conduct is the Board's ratemaking.  The Supreme Court has recognized that the "rate-setting process" is "inherently anticompetitive," *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 64 (1985), and the anticompetitive effects of regulated utility ratemaking on the unregulated prices charged by solar companies are eminently foreseeable, *see Sonitrol of Fresno, Inc. v. American Tel. & Tel. Co.*, 629 F. Supp. 1089 (D.D.C. 1986); *Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.*, 661 F. Supp. 1504, 1516 (D. Ariz. 1987); *see generally* Mem. 17.  The conferral of ratemaking authority on the Board thereby constitutes a clearly articulated state policy.

*Second*, because ratemaking is inherently anticompetitive, Plaintiffs cannot analogize the Board's authority to the general authorization of a local hospital system to make acquisitions that was at issue in *Phoebe Putney*.  Opp. 10.  Indeed, *Phoebe Putney* expressly contrasted that general authority—a "simple permission to play in the market"—with cases like *Southern Motor Carriers* where the legislature had authorized the defendants to "act or regulate in ways that are inherently anticompetitive," or otherwise "displace[] unfettered business freedom." 133 S. Ct. at 1013 & n.7.  As noted, moreover, Judge Lanza recently rejected the argument Plaintiffs make here.  *See Dakota Territory Tours*, 2019 WL 1557517,

at *9 ("Plaintiffs argue these statutes are insufficient to trigger immunity … because they don't expressly authorize municipalities to engage in anticompetitive conduct when operating airports.  This argument is unavailing.").

*Third*, Plaintiffs' argument regarding the Electric Power Competition Act ("EPCA") both misreads EPCA and mischaracterizes the District's argument.  Plaintiffs argue that EPCA opened the State to certificated suppliers of "electric generation services" and providers of "other services."  *See* Opp. 10 n.6, 12.  Those are defined terms under EPCA, *see* A.R.S. § 30-801(10), (15), and Plaintiffs do not allege that rooftop solar installers qualify under either definition.  While Plaintiffs repeatedly italicize "*other services*" as though it were a catchall that encompassed rooftop solar systems, Opp. 10 & n.6, 12, they ignore the statute's definition of "other services" as "metering, meter reading, billing and collecting services."  A.R.S. § 30-801(15).  Even if Plaintiffs could shoehorn rooftop solar companies into EPCA's definitional provisions, EPCA allows competition only from those suppliers "certificated by the [ACC]," A.R.S. § 30-803(A).  The Arizona Court of Appeals long ago halted the movement to competition and invalidated all then-pending applications for certification.  Mem. 15-16.  Plaintiffs do not allege that any subsequent certifications have been granted.  EPCA is thus of no help to Plaintiffs.[2]

Plaintiffs also mischaracterize the District's argument in asserting that the District "argues that the EPCA is inapplicable because competition has not yet materialized among the established players in the market."  Opp. 11.  The District's argument, again, is that EPCA established a framework to allow competition in two types of services (neither of which is at issue here) and only by suppliers "certificated by the [ACC]" (which has not

---

[2] Plaintiffs also assert that A.R.S. § 40-202(B) establishes a general policy favoring competition, but that provision has nothing to do with self-generating customers or unregulated rooftop solar providers.  What the legislature intended by "competitive market" is clear from the specific provisions of EPCA—a regulated market in which only certificated "electricity suppliers" and public power entities could potentially participate.  A.R.S. § 30-803(A).  "[V]ague notions of a statute's basic purpose are … inadequate to overcome the words of its text regarding the *specific* issue under consideration."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 220 (2002) (citations omitted).

occurred).  It is not the organic failure of competition to materialize that renders EPCA irrelevant; it is that policymakers have not opened the State to competition as relevant to this case.  This also distinguishes the law here from that at issue in *Kay Elec. Coop. v. City of Newkirk*, 647 F.3d 1039 (10th Cir. 2011), upon which Plaintiffs rely.  Under Ninth Circuit authority, Arizona's regulated structure immunizes the Board's ratemaking from antitrust liability.  *See Cal. CNG*, 96 F.3d at 1198; Mem. 17.

*Finally*, A.R.S. § 48-247 is clear:  Arizona's antitrust laws "shall not apply to any conduct or activity of the District … approved by a statute of this state."  Contrary to Plaintiffs' assertion (Opp. 13), specific statutes authorize the Board to set and modify the District's rates.  *See* A.R.S. §§ 48-2334; 30-802 *et seq*; 30-805(A).  No more "approval" is required.

## B.    The Active-Supervision Prong Of State-Action Immunity Does Not Apply

The active-supervision requirement for state-action immunity does not apply to electorally accountable "local government entities" like the District.  *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1011 (D. Alaska 2019) (quoting *Phoebe Putney*, 568 U.S. at 225-26).  Under Arizona law, the District is a political subdivision, constitutionally entitled to "all immunities" granted to local government entities under either state or federal law, Ariz. Const. art. 13 § 7, and is governed by an electorally accountable Board.  Thus, it need not satisfy the active supervision prong of the doctrine.[3]

Plaintiffs' reliance on *North Carolina State Bd. of Dental Examiners v. FTC*, 135 S. Ct 1101 (2015) ("*NCSB*"), has no merit.  Opp. 14-15.  *NCSB* held that when a "nonsovereign actor [is] controlled by active market participants," it must satisfy active supervision.  *Id.* at

---

[3] Plaintiffs' argument that the District is not the "type" of governmental entity immunity from the antitrust laws because its "retail electricity operations are an ordinary business enterprise" (Opp. 8-9) ignores Arizona law.  The Arizona Supreme Court has expressly held that the District's utility operations do not alter its status as a governmental entity, explaining:  "There can be no such metamorphosis." *Rubenstein Constr. Co. v. Salt River Project Agr. Improvement & Power Dist.*, 265 P.2d 455, 456 (Ariz. 1953)

1110.  *NCSB*, however, dealt with a state-level dental-licensing board dominated by practicing dentists elected by other practicing dentists.  *Id.*

The Board is a categorically different entity than the one in *NCSB*.  The District is not alleged to be controlled by "active market participants" in the provision of retail electricity; it is governed by a Board elected by eligible landowners.  Plaintiffs do not and cannot allege otherwise.  The District is not required to establish active supervision, particularly given that Plaintiffs do not even allege that the Board is controlled by active market participants.  *See Century Alum. of S. Carolina Inc. v. S. Carolina Pub. Serv. Auth.*, 278 F. Supp. 3d 877, 889 (D.S.C. 2017) (state-created nonprofit utility was not subject to active-supervision requirement); *AmeriCare MedServs., Inc. v. City of Anaheim*, 2017 WL 5592892, at *2 (C.D. Cal. Apr. 21, 2017) (active-supervision requirement applies "where [] state policy empowers private parties to exercise anti-competitive power over the very markets in which they participate" (citing *NCSB*, 135 S. Ct. at 1107)), *aff'd*, 735 F. App'x 473 (9th Cir. 2018).

Further, Plaintiffs are wrong in asserting the exemption from the active-supervision requirement is limited to municipalities.  Opp. 15.  Courts have routinely recognized that non-municipal government entities need not establish active supervision.[4]  Judge Lanza recently recognized this point, holding that an airport authority was exempt from active supervision because "courts have treated such entities as functionally identical to cities, towns, and counties for purposes of the [state-action] immunity analysis."  *Dakota Territory Tours*, 2019 WL 1557517, at *10 (internal citation omitted).

## III.   PLAINTIFFS' STATE-LAW CLAIMS ARE BARRED BY A.R.S. §§ 12-821 AND 12-821.01

### A.   Arizona's Notice Of Claim Statute Bars Plaintiffs' State Law Claims

The District of Arizona and the Ninth Circuit have long held that state-law claims filed against an Arizona public entity in federal court must comply with Arizona's notice of

---

[4] *See Banks v. County of San Mateo*, 2017 WL 3434113, at *7 (N.D. Cal. Aug. 10, 2017) (counties); *Crockett*, 367 F. Supp. 3d at 1010 (school districts); *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 326 F. Supp. 3d 602, 620 (N.D. Ill. 2018) (fire district).

claim statute.  *See, e.g., Camboni v. Brnovich*, 2016 WL 4271850, at *7-8 (D. Ariz. Aug. 15, 2016); *Hausauer v. City of Mesa*, 754 F. App'x 665, 666 (9th Cir. 2019).  Plaintiffs' "procedural" argument to the contrary is meritless.  Opp. at 16-17.  "Federal courts entertaining state-law claims ... are *obligated* to apply" a state's notice of claim requirement. *Felder v. Casey*, 487 U.S. 131, 151 (1988) (emphasis added).  The holding in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, does not overturn *Felder*, nor does it support Plaintiffs' position, as it addressed a direct conflict between a state law and Fed. R. Civ. P. 23.  559 U.S. 393, 398 (2010).  There is no procedural conflict with the federal rules here. Instead, strict compliance with A.R.S. § 12-820.01 is a *prerequisite* to bringing state-law claims against public entities in federal court.  *Muhaymin v. City of Phoenix*, 2019 WL 699170, at *10 (D. Ariz. Feb. 20, 2019).

### B.   Plaintiffs Did Not Comply With Arizona's Notice Of Claim Statute

*First*, Plaintiffs concede that they did not comply with *City of Phoenix v. Fields*, which requires a notice of claim filed on behalf of a putative class to "identif[y] the amount for which each 'putative class representative would settle *his own claim*[.]'"  201 P.3d 529, 534 (Ariz. 2009) (emphasis added).[5]  Plaintiffs argue, instead, that their noncompliance is excused because of a claimed fiduciary duty to putative class members.  But where "the relevant state law is established by a decision of 'the State's highest court,' that decision is 'binding on the federal courts.'"  *Animal Sci. Products, Inc. v. Hebei Welcome Pharm. Co. Ltd*., 138 S. Ct. 1865, 1874 (2018) (internal citations omitted).  Moreover, there is no conflict because the filing of a notice of claim comes *before* a class action is filed, and therefore before any fiduciary duty could arise.  *Fields*, 201 P.3d at 534.

---

[5] Plaintiffs argue *Fields* is distinguishable because they seek injunctive relief.  Nothing in *Field*s supports that reading.  Moreover, the notice of claim statute applies to claims for equitable relief that are the "equivalent of a damages claim."  *Arpaio v. Maricopa County Bd. of Supervisors*, 238 P.3d 626, 630 (Ariz. Ct. App. 2010); *Madrid v. Concho Elementary Sch. Dist. No. 6 of Apache County*, 2010 WL 1980329, at *2 (D. Ariz. May 17, 2010), *aff'd*, 439 F. App'x 566 (9th Cir. 2011).  Because Plaintiffs' desired injunctive relief is purely financial in nature (i.e., a reduction to their electricity bill), it is the equivalent of a damages claim and subject to the notice of claim requirement.

*Second*, Plaintiffs do not dispute that their notice of claim lacked a sum-certain amount because it demanded an ever-increasing amount of attorneys' fees. Mem. at 19. A notice of claim must identify a "particular and certain amount of money" that will resolve all liability. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 493 (Ariz. 2007). Therefore, Plaintiffs' state-law claims are barred.

### C.    A "Continuing Violation" Theory Does Not Apply

Plaintiffs concede that their state-law claims accrued more than one year before the complaint was filed. In an attempt to avoid dismissal under A.R.S. § 12-821, they contend that the common-law "continuing harm" doctrine excuses their untimeliness. But the definition of accrual for claims against public entities in § 12-821.01(B) "preclude[s] application of the 'continuing wrong' doctrine." *Watkins v. Arpaio*, 367 P.3d 72, 73 (Ariz. Ct. App. 2016). Because "the limitations rules that apply" to claims against the District are "creatures of statute, not the common law," Plaintiffs cannot rely on the doctrine and "wait to bring suit until more than a year after acts sufficient to state a claim occur." *Id.* at 77; *see also Walton v. Arizona*, 2017 WL 5997441, at *4-5 (D. Ariz. June 27, 2017) (adopting *Watkins*). Plaintiffs' reliance on *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), is misplaced. As both *Watkins* and *Walton* recognized, Plaintiffs' reliance on "common law from other … [jurisdictions]" where the "continuing harm" doctrine was followed is ineffective. *Watkins*, 367 P.3d at 75; *Walton*, 2017 WL 5997441 at *4-5.

Lastly, a continuing violation theory does not apply where, as here, an overt act that is the alleged basis of the antitrust claim is "irrevocable, immutable, permanent and final" and the damages that occur during the limitation period "were but unabated inertial consequences of some pre-limitations action," *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 72 (9th Cir. 1979). Plaintiffs claim the 2015 adoption of E-27 resulted in "a substantial penalty fee that is applied monthly." FAC ¶ 6. But "[m]erely carrying out during the limitations period a final, binding decision made prior to the limitations period does not qualify as a new overt act." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1071-1072 (N.D. Cal. 2016).

1    IV.    **THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM**

2          A.    **Plaintiffs Do Not State A Claim Under Federal Or State Antitrust Law**

3                1.    **Plaintiffs Have Not Plausibly Alleged Causal Antitrust Injury**

4          Plaintiffs do not dispute that they must plausibly allege causal antitrust injury—i.e.,

5    that their "alleged injury flows from that which makes defendants' acts unlawful." *Lucas*

6    *Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998)

7    (citations omitted).  Plaintiffs also concede that what they contend makes the District's acts

8    unlawful is a reduction in competition from "solar energy."  Opp. 18.  Yet they fail to allege

9    any damage caused by a reduction in competition from solar energy.

10         Instead, Plaintiffs emphasize that they do not allege that they "paid more *for their*

11   *rooftop solar panels*."  Opp. 18 (emphasis added); *see also* Opp. 21.  This concession is fatal

12   to their case.  The purported injury Plaintiffs claim—paying higher rates from the District—

13   is not causally linked to any reduction in competition, as those rates apply irrespective of any

14   increase or decrease in competition from solar energy.  *See, e.g.*, *Lucas Auto Eng'g, Inc.*, 140

15   F.3d at 1233 (9th Cir. 1998) (no causal antitrust injury where loss incurred would also have

16   occurred regardless of effect on competition).

17         The requirement of causal antitrust injury applies with equal force to cases where the

18   plaintiffs are customers.  *See, e.g.*, *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th

19   Cir. 2008); *compare* Opp. 18-19.  Plaintiffs' failure to plausibly allege the requisite causal

20   connection here warrants dismissal of their antitrust claims.

21                2.    **Plaintiffs Have Not Plausibly Alleged Exclusionary Conduct**

22         In arguing they have plausibly alleged exclusionary conduct, Plaintiffs state it is

23   "obvious" they are challenging the District's above-cost rates.  Opp. 21 ("Plaintiffs have

24   alleged that SRP increased its prices[.]").  This concession dooms Plaintiffs' claims, because

25   both the Supreme Court and the Ninth Circuit have squarely held that "only predatory

26   [below-cost] pricing has the requisite anticompetitive effect."  *Atl. Richfield Co. v. USA*

27   *Petroleum*, 495 U.S. 328, 339 (1990) (alteration in original); *see also Name.Space, Inc. v.*

28   *ICANN*, 795 F.3d 1124, 1132 (9th Cir. 2015) ("Barring predatory behavior, [defendants are]

-11-

free to choose the parties with whom [they] will deal, as well as the prices, terms, and conditions of that dealing."  (internal citations omitted)).

Plaintiffs' argument that this rule is limited to actions brought by competitors (Opp. 21) is unsupported and inaccurate.  The Supreme Court limits § 2 pricing claims to prices that are below-cost because expanding § 2 liability for pricing decisions would cause firms to "refrain from aggressive price competition to avoid potential antitrust liability."  *Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 452 (2009).  That rationale applies as much or more to claims by consumers.

The plausibility of Plaintiffs' antitrust claims is likewise defeated by the fact that they all connected solar systems *after* (and regardless of) the implementation of E-27.  Plaintiffs' theory of competitive harm is predicated on their allegation that under E-27 customers "are unlikely to make an economically unsound decision in buying and installing new solar energy systems if it results in paying a higher amount for power," FAC ¶ 85, supposedly thwarting competition from rooftop solar.  Plaintiffs' own experience directly undermines the plausibility of Plaintiffs' theory of competitive harm.[6]

### 3. Plaintiffs Lack Standing To Bring Counts II and IV

Plaintiffs' argument (Opp. 22-23) that they have antitrust standing on their attempted monopolization claims because they are based on paying higher prices lacks support in both law and logic.  Indeed, another court recently rejected this argument, explaining that in an attempted-monopolization case, the "competitor, not the consumer, is the party with antitrust standing to bring a claim of attempted monopolization[;] higher prices paid by consumers in an attempted monopolization … are not injuries the antitrust laws were designed to prevent." *Neagle v. Goldman Sachs Group, Inc.*, 2019 WL 1102199, at \*12 (D. Or. Mar. 1, 2019).

---

[6] Plaintiffs cannot avoid the plain language in SolarCity's public statement regarding its exit from the District's service territory (Opp. 22); in any event, SolarCity's exit is irrelevant here.  *See* Mem. 23 (citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998)).

1

2

**B.      Plaintiffs' Federal And State Equal Protection Claims Fail**

**1.      The Statute Of Limitations Bars Plaintiffs' Claims**

A § 1983 claim accrues when the Plaintiffs "know or have reason to know of the injury that is the basis of their action."  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002).  "[A]ctual injury" is not required.  *Carey v. Piphus*, 435 U.S. 247, 266 (1978).  And additional actions that are "the inevitable consequence" of the earlier "operative decision"—as opposed to actions that are the "result of 'independent consideration'"—do not toll or restart the statute of limitations.  *RK Ventures, Inc.,* 307 F.3d at 1061.  The Board's decision to adopt E-27 in 2015 is the "operative decision" that triggered the statute of limitations.  Indeed, Plaintiffs allege that the adoption of E-27 immediately injured "all [District] customers" because it stripped them of their "choice to use solar" by rendering it "economically unfeasible."  FAC ¶¶ 19, 124.  Monthly bills to E-27 customers are simply the "inevitable consequence" of the Board's decision to adopt E-27 and do not restart the statute of limitations.

**2.      Plaintiffs Are Not Similarly Situated To Other Customers**

Plaintiffs' argument that non-solar, grandfathered solar, and solar customers are similarly situated for equal protection purposes because these groups all purchase "*the same* electricity" from the District, Opp. 23-24, ignores the FAC's own acknowledgement of attributes of solar customers that distinguish them for ratemaking purposes.  A utility's cost to serve a customer depends on "a number of conditions or factors, … including quantity of use, time of use, manner of service, and costs of rendering the various services."  *See, e.g.*, *State ex rel. Utils. Comm'n v. Carolina Util. Customers Ass'n, Inc.*, 500 S.E.2d 693, 704 (N.C. 1998) (emphasis omitted).  Plaintiffs agree that solar customers are different from non-solar customers in many relevant respects.  When the sun is shining, solar customers "consume and purchase less electricity from [the District]" than non-solar customers.  FAC ¶ 3.  In addition, solar customers generate excess electricity that must be "stored into the grid."  FAC ¶ 64.  And when the sun is not available, rooftop solar customers still demand reliable electric service from the District, requiring the District to develop and maintain

-13-

1    sufficient generation assets to serve them.  FAC ¶ 4.  These unique attributes are the reason

2    why Arizona ratemaking bodies—including the ACC—recognize solar customers as a

3    distinct class.  *See* FAC ¶ 63 & n. 13 (the ACC's "decision [in December 2016] establishes

4    rooftop solar customers as a separate class.").

5          Moreover, grandfathered customers are not similarly situated to Plaintiffs.  Avoiding

6    customer "rate shock ... is a well-recognized tenet of, and generally accepted as a legitimate

7    concern, in utility ratemaking."  *Freeport Minerals Corp. v. Arizona Corp. Comm'n*, 419

8    P.3d 942, 947 (Ariz. Ct. App. 2018), *review denied* (Oct. 31, 2018).  Thus, more than simply

9    a difference in timing, Plaintiffs' decision to purchase or connect rooftop solar systems years

10   after the E-27 rate had been announced and implemented is fundamentally different than the

11   grandfathered customers who installed solar *before* E-27 was adopted and who the Board

12   determined should receive the benefit of a grandfathering policy to avoid rate shock.

13          **3.**     **The Board's Adoption Of E-27 Is Supported By A Rational Basis**

14          The FAC identifies a rational basis for adopting E-27—to establish a rate properly

15   designed for solar customers that fairly recovers the District's cost of serving these

16   customers.  *See* FAC ¶ 100.  Plaintiffs contend, however, that the Court cannot decide the

17   issue on a motion to dismiss because the FAC labels that justification "unfounded, false and

18   pretextual."  Opp. 25.  Because it is "entirely irrelevant for constitutional purposes whether

19   the conceived reason for the" adoption of the E-27 rate "actually motivated" the Board, *FCC

20   v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993), the allegation that the justification for

21   E-27 was unfounded, false or pretextual does not prevent dismissal, *see Oviedo Town Ctr. II,

22   LLLP v. City of Oviedo, Fla.*, 759 F. App'x 828, 838 (11th Cir. 2018).

23          **C.**     **Plaintiffs' Price Discrimination Claims Should Be Dismissed**

24          As a matter of law, the District is not a public service corporation (*see* A.R.S. § 48-

25   2301, *et seq*.; Ariz. Const. art. 13, § 7; *id.* art. 15, § 2), a reality Plaintiffs acknowledge.

26   FAC, ¶¶ 10, 35; Opp. 14 & n.10.  Yet Plaintiffs improperly argue that the District's legal

27   status is a fact question.  The District's legal status cannot change based on allegations made

28

in a complaint.  *See Rubenstein*, 265 P.2d at 456 (the District cannot "lose" its legal status and "become" a public service corporation).

### D.    Plaintiffs' Claim Under A.R.S. § 44-1522 Fails As A Matter Of Law

#### 1.    The Consumer Fraud Act Does Not Apply To The District

The CFA's definition of "person" does not include the state itself or its "political subdivisions," like the District.  *See* A.R.S. § 44-1221(6); *Estate of Braden ex rel. Gabaldon v. State*, 266 P.3d 349, 353 (Ariz. 2011) (the legislature has "repeatedly demonstrated its ability to specifically mention public actors when it intends their inclusion" in a statute). Plaintiffs rely on cases, outside of the CFA context, holding that the generic term "corporation" can include "municipal corporations," *see Sumid v. City of Prescott*, 230 P. 1103 (Ariz. 1924), and *City of Tempe v. State*, 351 P.3d 367 (Ariz. Ct. App. 2015), to argue that CFA applies to the District.  The CFA's definition of "person" uses the specific term "*domestic* or *foreign* corporations," thereby excluding municipal corporations like the District.  A.R.S. § 44-1221(6) (emphasis added).[7]  *Sumid* and *City of Tempe* thus do not support Plaintiffs' position.  Plaintiffs' position would also require the Court to ignore Arizona's constitution, which expressly defines the bounds of a "corporation" for purposes of the provision of electric and other public utility services, art. 15, § 2.

#### 2.    Plaintiffs Have Not Alleged Facts To Support A CFA Claim

Plaintiffs have not pled facts sufficient under any pleading standard to state a CFA claim.  Any argument that "individualized reliance inquiries are not required" under the CFA "has been long and consistently rejected by Arizona courts."  *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, 2018 WL 619723, at *3 (D. Ariz. Jan. 30, 2018) (denying class certification on CFA claim because proof of actual reliance by all putative class members would be necessary).  Here, no Plaintiff alleges actual reliance on, or injuries proximately caused by, an act by the District that is prohibited by the CFA.

---

[7] A "domestic corporation" is one "incorporated under or subject to chapters 1 through 17 of [Title 10]."  A.R.S. § 10-140(14).  The District is formed under Title 48.

### 3.      A.R.S. § 30-806(K) Does Not Create A Private Cause Of Action

Rather than creating a private right of action, A.R.S. § 30-806(K) permits only the attorney general to sue for a violation of rules adopted by a public power entity.  *Compare* A.R.S. § 30-806(K) *with id.* § 44-1221(C) (similar statute, but expressly authorizing private cause of action).  The statute's text is "the best and most reliable" indicator of the legislature's intent.  *Burns v. City of Tucson*, 432 P.3d 953, 955 (Ariz. Ct. App. 2018).

## V.    PLAINTIFFS' DAMAGES CLAIMS ARE BARRED

### A.      The LGAA Provides The District Absolute Immunity From Federal And State Antitrust Damages Claims

Contrary to their own allegations (FAC ¶¶ 28, 38) and Arizona law (Ariz. Const. art. 13, §7; A.R.S. § 48-2302), Plaintiffs contend that the District is not a "local government." Opp. 33.  That the District is entitled to protection under the Local Government Antitrust Act ("LGAA") should be beyond dispute.  The District clearly falls within the "explicitly inclusive, not exclusive," text of the LGAA.  *Benitez v. Charlotte-Mecklenberg Hosp. Auth.*, 2019 WL 1028018, at *4 (W.D.N.C. Mar. 4, 2019).

Given the clear statutory text (and Plaintiffs' own allegations), resorting to legislative history is unnecessary.  *See Lambert v. Tesla, Inc.*, 923 F.3d 1246, 1251 (9th Cir. 2019). Even looking at such history, the District fits easily into the non-exhaustive list of "[e]xamples" it contains.  H.R. Rep. No. 98-965, at 19-20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4602, 4620-4621.  That history further refutes Plaintiffs' assertion (Opp. 33) that the LGAA applies only where the burden of damages would fall on taxpayers.  Congress enacted the LGAA to "allow local governments to go about their daily functions without the paralyzing fear of antitrust lawsuits." S. Rep. No. 98-593, at 3 (1984).  That concern exists whether the burden of antitrust damages would be borne by taxpayers or, as here, ratepayers.

Plaintiffs also incorrectly claim the LGAA bars only *federal* antitrust damages.  Opp. 33-34.  They fail to address this Court's holding that the LGAA bars both federal and state antitrust damages claims against the District.  *SolarCity Corp.*, 2015 WL 6503439, at *13-14.  That holding is correct, as the District enjoys all "immunities … granted … political

subdivisions under … any law of … the United States," Ariz. Const. art. 13 § 7, and

Arizona's antitrust laws are read consistent with federal antitrust law, *see* A.R.S. § 44-1412.

**B.      A.R.S. § 12-820.01(A) Immunizes The District From State-Law Damages**

Contrary to Plaintiffs' arguments (Opp. 34-35), ratemaking is a legislative function

regardless of the ratemaking body at issue.  Indeed, the Arizona Supreme Court's decision so

holding, *Arizona Corp. Comm'n v. Superior Ct. In & For Cty. of Maricopa*, 480 P.2d 988,

991 (Ariz. 1971), examined out-of-state cases—involving *other* ratemaking bodies—to

conclude that "[t]he *general rule* is that rate-making is legislative in character," *id.* at 990

(emphasis added).  The Board is a ratemaking body, engaging in "an essentially legislative

act."  *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 371 (1989).

Moreover, the District's ratemaking is a protected administrative function because the

District is plainly a "public entity" under state law, *see* A.R.S. § 12-820(7), and its

ratemaking decisions involve "the distribution of resources and assets" needed to cover the

costs of providing reliable water and power within its service territory, *see Myers v. City of*

*Tempe*, 128 P.3d 751, 753 (Ariz. 2006) (treating such decisions as administrative function).

Finally, immunity under § 12-801.01 "is a question of law for the court."  *Tostado v.*

*City of Lake Havasu*, 204 P.3d 1044, 1047 (Ariz. Ct. App. 2008).  Plaintiffs fail to

distinguish this case or explain how factual development could reveal that the District's

ratemaking is neither a legislative function nor a protected administrative function.

## CONCLUSION

The First Amended Complaint should be dismissed with prejudice.

1    RESPECTFULLY SUBMITTED this 18th day of June, 2019.

2                                                    /s/ Christopher E. Babbitt

3    JENNINGS, STROUSS & SALMON, P.L.C.    WILMER CUTLER PICKERING HALE AND
     A Professional Limited Liability Company    DORR LLP
4    Eric D. Gere – 023226                         Christopher E. Babbitt (*pro hac vice*)
5    egere@jsslaw.com                              David Gringer (*pro hac vice*)
     One East Washington Street, Suite 1900        1875 Pennsylvania Avenue NW
6    Phoenix, AZ 85004                             Washington, DC 20006
7    Telephone: (602) 262 5911                     Telephone:  (202) 663 6000
     Facsimile: (602) 495 2633                     Facsimile:  (202) 663 6363
8    minuteentries@jsslaw.com                      christopher.babbitt@wilmerhale.com
                                                   david.gringer@wilmerhale.com
9
10                                                 *Attorneys for Defendant Salt River Project*
                                                   *Agricultural Improvement and Power*
11                                                 *District*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

On June 18, 2019, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a notice of electronic filing to the following CM/ECF registrants:

ZIMMERMAN REED LLP
14646 North Kierland Blvd., Ste. 145
Scottsdale, AZ 85254
Hart L. Robinovitch

ZIMMERMAN REED LLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
David M. Cialkowski
Alia M. Abdi

GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Street, Suite 2600
Minneapolis, MN 55402
Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin

CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, DC 20005
Anchun Jean Su
Howard M. Crystal

/s/Christopher E. Babbitt