Hart L. Robinovitch (AZ SBN 020910)
**ZIMMERMAN REED LLP**
14646 North Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
Email: hart.robinovitch@zimmreed.com

*Attorneys for Plaintiffs and the Class*

*(Additional Counsel listed below)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

William Ellis, Robert Dill, Edward Rupprecht, and Robert Gustavis, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

Salt River Project Agricultural Improvement and Power District,

Defendant.

CASE NO.: 2:19-CV-1228-SMB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS**

1

## TABLE OF CONTENTS

2

I.     INTRODUCTION ................................................................................................1

II.    RELEVANT FACTUAL ALLEGATIONS ........................................................2

     A.    Factual Background ..................................................................................2

     B.    Procedural Background .............................................................................5

III.   ARGUMENT ......................................................................................................6

     A.    Legal Standard .........................................................................................6

     B.    Plaintiffs Allege Violations of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. ...................................................................7

          1.  Because Arizona law forbids charging differential rates, doing so cannot be considered a legitimate state interest. ......................................................8

          2.  Because Arizona law forbids differentiating between self-generating customers and other utility customers, Plaintiffs are similarly situated to non-solar users. ..............................................................................................12

          3.  Plaintiffs have plausibly alleged that the E-27 rate does not rationally relate to SRP's purported interest of balancing costs among customers. ................14

     C.    Standing Exists for Plaintiffs' Attempted Monopolization Claim. .....................15

IV.   CONCLUSION ................................................................................................17

1

**TABLE OF AUTHORITIES**

2

Page(s)

**Cases**

3

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of California,*
4
  190 F.3d 1051 (9th Cr. 1999) ................................................................ 15, 16, 17

5
*Arizona Dream Act Coal. v. Brewer,*
6
  757 F.3d 1053 (9th Cir. 2014) ............................................................................ 12

7
*Arizona Dream Act Coal. v. Brewer,*
  855 F.3d 957 (9th Cir. 2017) .............................................................................. 14
8

9
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................... 6, 7

10
*Ball v. James,*
11
  451 U.S. 355 (1981) ............................................................................................. 2

12
*Blue Shield of Va. v. McCready,*
13
  457 U.S. 465 (1982) .......................................................................................... 17

14
*CFPB v. Gordon,*
  819 F 3d 1179 (9th Cir. 2000) .............................................................................. 9
15

16
*Chamber of Commerce v. City of Seattle,*
  890 F.3d 769 (9th Cir. 2018) ................................................................................ 9

17
*Country Classic Dairies, Inc. v. Milk Control Bureau,*
18
  847 F.2d 593 (9th Cir. 1988) .............................................................................. 12

19
*County of Maricopa v. North Central Dev. Co.,*
  566 P.2d 688 (Ariz. Ct. App. 1977) ..................................................................... 8
20

21
*Cousins v. Lockyer,*
  568 F.3d 1063 (9th Cir. 2009) .............................................................................. 6

22
*Crerand v. State,*
23
  859 P.2d 772 (Ariz. App.1993) ............................................................................ 8

24
*Ellis v. Salt River Project Agric. Improvement & Power Dist.,*
25
  24 F.4th 1262 (9th Cir. 2022) ........................................... 1, 6, 10, 11, 15, 16, 17

26
*Ellis v. Salt River Project Agric. Improvement & Power Dist.,*
  432 F. Supp. 3d 1070 (D. Ariz. 2020) ................................................ 5, 6, 16, 17

27

28

ii

*Flying J Inc. v. City of New Haven*,
  549 F.3d 538 (7th Cir. 2008) ................................................................................... 7

*Freeport Minerals Corp. v. Arizona Corp. Comm'n*,
  419 P.3d 942 (Ariz. Ct. App. 2018)...................................................................... 11

*Gen. Textile Printing & Processing Corp. v. City of Rocky Mount*,
  908 F. Supp. 1295 (E.D.N.C. 1995) .................................................................... 13

*Gosnell Dev. Corp. v. Ariz. Dept. of Revenue*,
  744 P.2d 451 (Ariz. Ct. App. 1987)....................................................................... 8

*Heller v. Doe by Doe*,
  509 U.S. 312 (1993)............................................................................................. 14

*Holt Civic Club v. City of Tuscaloosa*,
  439 U.S. 60 (1978)............................................................................................... 14

*Kadrmas v. Dickinson Public Schools*,
  487 U.S. 450 (1988)............................................................................................... 8

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994)............................................................................................... 9

*McClusky v. Sparks*,
  291 P.2d 791 (Ariz. 1955) .................................................................................... 10

*Miller v. Salt River Valley Water Users' Ass'n*,
  463 P.2d 840 (Ariz. 1970) .................................................................................... 10

*Minnesota v. Clover Leaf Creamery Co.*,
  449 U.S. 456 (1981)............................................................................................... 9

*Neagle v. Goldman Sachs Grp., Inc*,
  No. 6:18-CV-00754-MC, 2019 WL 1102199 (D. Or. Mar. 1, 2019) ................... 16

*Peoples Rights Org., Inc. v. City of Columbus*,
  152 F.3d 522 (6th Cir. 1998) ................................................................................. 8

*Romer v. Evans*,
  517 U.S. 620 (1996).......................................................................................... 8, 14

*S. Pac Co. v. Cochise County*,
  377 P.2d 770 (Ariz. 1963) .................................................................................... 10

*Sioux City Bridge Co. v. Dakota County*,
  260 U.S. 441 (1923) ............................................................................................. 10

iii

PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS

*Smith v. Salt River Project Agric. Improvement & Power Dist.*,
    109 F.3d 586 (9th Cir. 1997) .................................................................................. 2

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*,
    No. CV-15-00374-PHX-DLR, 2015 WL 9268212 (D. Ariz. Dec. 21, 2015) ..................... 10

*Thornton v. City of St. Helens*,
    425 F.3d 1158 (9th Cir. 2005) .............................................................................. 12

*Town of Wickenburg v. Sabin*,
    200 P.2d 342 (Ariz. 1948) ............................................................................. 9, 10

*Wojciechowski v. Kohlberg Ventures, LLC*,
    923 F.3d 685 (9th Cir. 2019) ................................................................................. 7

*Wroblewski v. City of Washburn*,
    965 F.2d 452 (7th Cir. 1992) ................................................................................. 7

**Statutes**

42 U.S.C. § 1983 .................................................................................................. 7, 8

A.R.S. § 30-801 ....................................................................................................... 1

A.R.S. § 30-805(D) ............................................................................................. 4, 5, 9

A.R.S. § 30-805(A) ................................................................................................ 5, 9

A.R.S. § 30-805(A), (D) and (E) ............................................................................... 11

A.R.S. §§ 30-805(A) and (D) .............................................................................. 2, 9, 13

A.R.S. § 30-805 ..................................................................................................... 7, 9

Ariz. Const. Art. 15, § 12 ........................................................................................... 8

Ariz. Const., Art. 13, § 7 ............................................................................................. 2

Ariz. Const. Art. 9, § 1 ............................................................................................. 10

Ariz. Rev. Stat. Ann. § 40-202(D) ............................................................................. 10

U.S.C. § 1 ................................................................................................................. 1

## I.    INTRODUCTION

Plaintiffs William Ellis, Robert Dill, Edward Rupprecht, and Robert Gustavis ("Plaintiffs") are customers of Defendant Salt River Project Agricultural Improvement and Power District's ("SRP" or "Defendant") who commenced this action in 2019 challenging SRP's imposition of discriminatory and monopolistic surcharges for electricity.  Despite the fact that Arizona law mandates non-discriminatory electricity rates based on solar self-generation and encourages competition from solar, Defendant imposed surcharges and higher rates on Plaintiffs solely because they own solar panels.

Plaintiffs allege that SRP's imposition of discriminatory, higher rates on solar customers conflicts with the Electric Power Competition Act, A.R.S. §30-801 *et seq.* ("EPCA"), and violates the Equal Protection Clause of the 14th Amendment of the U.S. Constitution, as well as the Sherman Act, 15. U.S.C. § 1 *et seq*. Plaintiffs plausibly allege that the discriminatory rates imposed by SRP (such as its E-27 rate plan enacted in 2015) do not have a rational basis related to a legitimate state interest. *See*, *e.g.*, First Amended Complaint, ECF No. 12 ("FAC"), ¶¶ 1, 9-19, 12, 46-47, 54-59, 73, 78, 82-87, 96-107, 170, 174.

In January 2022, the Ninth Circuit Court of Appeals reversed the District Court's January 10, 2020, order [ECF No. 29] dismissing the complaint. The Court of Appeals held that Plaintiffs' Equal Protection claims were timely, as new claims accrue each time a discriminatory charge is imposed, and that Plaintiffs adequately alleged antitrust injury with respect to both Plaintiffs' monopolization and attempted monopolization claims. *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1273 (9th Cir. 2022) ("*Ellis II*").

SRP's renewed motion to dismiss should be denied. First, Plaintiffs allege a valid Equal Protection Claim. SRP, a public entity, imposed discriminatory, higher electricity rates only on solar customers like Plaintiffs who purchased the exact same electricity as non-solar customers. While SRP argues that its decision to impose the discriminatory rates had a rational basis, Defendant completely ignores the requirement that its classification must be related to a legitimate state interest. The discriminatory rate cannot relate to a legitimate state interest because it directly conflicts with state laws that expressly prohibit imposition of discriminatory

1

rates and surcharges to consumers who self-generate part of their electricity based on reduced purchases, as well as prohibits anticompetitive behavior. A.R.S. §§30-805(A) and (D), 813. Second, standing for the attempted monopolization claim was decided by the Ninth Circuit's decision and is the law of the case. For the additional reasons set forth below, SRP's motion to dismiss should be denied and this case should proceed to the discovery stage.

## II.    RELEVANT FACTUAL ALLEGATIONS

### A.    Factual Background

SRP is a public power entity operating in the Phoenix, Arizona metropolitan area. In *Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d 586, 593-94 (9th Cir. 1997), the Ninth Circuit confirmed that SRP is a political subdivision and as such, is subject to challenges for violations of the U.S. Constitution. *See also* Ariz. Const., Art. 13, § 7; *Ball v. James*, 451 U.S. 355, 366-68 (1981) (recognizing SRP as a "nominal public entity"); FAC ¶¶ 28-38.

SRP is a monopolist that provides electricity to customers in its defined service territory within Arizona. FAC ¶¶ 2, 5-6, 42-53. With complete control over the electrical grid in its territory, SRP has monopoly power over the pricing, sale and distribution of electricity to all retail customers within the territory. FAC ¶ 2. The only competition SRP faces comes from companies that sell solar energy systems to SRP customers—and from the customers themselves—allowing those customers then to self-generate power and reduce their reliance on the amount of retail electricity they need to purchase from SRP. FAC ¶ 13. However, even those customers are captive to SRP's monopoly power, as the electricity they self-generate cannot meet their total energy requirements, requiring them to purchase the difference in needed electricity from SRP—the only electricity provider within the territory. FAC ¶ 4. The retail electricity purchased by solar customers is the same as that purchased by non-solar customers.

Until approximately 2014, the rates for supplemental electricity needed to be purchased from SRP were not discriminatory. FAC ¶ 5. That changed in 2014 when SRP implemented its higher electricity rates for customers who self-generate portions of their needed electricity. Plaintiffs allege the rate change was not in furtherance of any valid environmental, social or

2

other existing governmental policy or legitimate state interest, but instead was aimed at maintaining SRP's monopoly power, impeding solar development despite its recognized benefits, quashing competition for electricity from self-generating consumers with solar energy systems, and generating additional revenues for SRP through exploitation of its monopoly power. FAC ¶¶ 5, 46-47, 71-87.

In 2014, SRP implemented a new pricing scheme called the Standard Electric Price Plans ("SEPPs"). FAC ¶ 6. As part of its SEPPs, SRP implemented the E-27 price plan for customers who self-generate electricity. *Id.* The E-27 price plan imposes a substantial monthly fee only on its customers who own solar panels. FAC ¶ 6. Under the E-27 price plan, Plaintiffs allege, SRP charges customers generating electricity through solar energy systems approximately $600 more per year. FAC ¶ 7. Rather than increase rate plans for all customers equally and across-the-board, SRP adopted a far smaller rate increase for everyone else. *See* FAC ¶ 8 (comparing the 2014 increase for solar (65%) with non-solar (3.9%)). SRP's E-27 price plan therefore significantly punishes and discriminates against customers that use solar energy systems and disincentivizes further purchases and use of solar energy systems. FAC ¶¶ 8, 47, 71-87. Plaintiffs allege the discriminatory rates were imposed by SRP as an attempt to 1) make solar use less economical, and thus turn customers back toward SRP for full electricity needs with the hope they would abandon solar, and 2) eliminate solar competition. FAC ¶¶ 9-18, 71-95.

Plaintiffs allege SRP intentionally stifled all competition from the growing solar energy market by its implementation of the discriminatory E-27 price plan. FAC ¶ 10, 71-87, 106; *see also, e.g.*, FAC ¶ 73 ("On February 26, 2015, SRP's Board of Directors approved the new price plans, which imposed new rates for all SRP customers. The implementation of SRP's E-27 plan reflects SRP's intent to eliminate competition associated with solar energy systems. An email obtained from an SRP executive in reference to solar energy stated: 'Hold the fort down…feeling restless while the enemy is preparing an attack.' Rather than disclaim the statement, SRP claimed the employee was merely joking in reference to solar energy being the 'enemy'."). Customers recognize that SRP's pricing plan strips the economic value in investing in solar energy systems to self-generate electricity. *Id.*; FAC ¶¶ 84-86. After SRP implemented

3

the E-27 price plan, applications for solar energy systems in the SRP territory fell. *Id.*

SRP argues that the basis for the discriminatory rate is to ensure that solar customers pay the purported extra costs SRP incurs to serve them. Even assuming these costs exist—and Plaintiffs allege they do not—Arizona law forbids imposing higher rates or surcharges on self-generators to recover any stranded cost resulting from serving those customers or from their reduced purchases. A.R.S. §30-805(D). Plaintiffs allege solar energy systems confer substantial *benefits* to the grid and to SRP itself that offset or reduce the costs of service for customers with solar energy systems. FAC ¶¶ 10-11, 60-70.[1]

Plaintiffs allege that SRP recognized how it benefits from solar energy customers. Prior to the implementation of the E-27 price plan, SRP provided significant incentives to encourage and incentivize its customers to self-generate electricity through solar energy systems. SRP offered these financial incentives to customers for buying or leasing solar energy systems in their homes or businesses. For example, at one point, SRP provided incentives averaging up to $4,000 per customer to promote and encourage consumers to install solar energy systems. Plaintiffs allege there is no legitimate basis for such a dramatic reversal. Instead, SRP heeded calls from industry groups to exclude and limit solar competition for electricity, and to increase SRP's revenues at Plaintiffs' (and class members') expense, through discriminatory rates contrary to Arizona's stated interest in fostering solar self-generation. FAC ¶¶ 12, 46-47, 56-59; *see also* ¶ 46 (quoting Edison Electric Institute, *Disruptive Challenges: Financial Implications and Strategic Responses to a Changing Retail Electric Business*, January 2013) ("This paper encourages an immediate focus on *revising state and federal policies* that do not align the

---

[1] *See generally* FAC ¶ 11, n.1, quoting Brookings Institute, *Rooftop solar: Net metering is a net benefit*, May 23, 2016 ("The study concludes that solar power provides a substantial public benefit because it reduces electricity prices due to the displacement of more expensive power sources, reduces air and climate pollution, reduces costs for the electric grid system, reduces the need to build more power plants to meet peak demand, stabilizes prices, and promotes energy security. These avoided costs represent a net benefit for non-solar ratepayers. These generally positive PUC conclusions about the benefits of net metering have been supported by a national lab and several think tanks….For instance, a review of 11 net metering studies by Environment America Research and Policy Center has found that distributed solar offers net benefits to the entire electric grid through reduced capital investment costs, avoided energy costs, and reduced environmental compliance costs.").

interests of customers and investors, particularly revising utility tariff structures in order to eliminate cross subsidies (by non-DER participants) and utility investor cost-recovery uncertainties."). Thus, the Complaint alleges that SRP's actions imposing the discriminatory rates conflicted with then-existing state policies that it only hoped to have "revised" in the future.

Plaintiffs allege facts sufficient to show that SRP's higher rates for solar customers do not bear a rational relation to a legitimate state interest. FAC ¶¶ 46, 96-107.  A governmental entity's desire to reap additional revenue cannot provide justification for a decision to accomplish that through 1) imposition of a discriminatory rate structure, 2) charging for costs prohibited by statute, and 3) anti-competitive conduct, when then-applicable laws expressly prohibit that. In particular, A.R.S. §30-805(A) prohibited an entity like SRP from imposing discriminatory rates. Furthermore, A.R.S. §30-805(D) prohibited SRP from using solar customers' reduced purchases due to self-generation as a basis to justify discriminatory rates or from imposing surcharges to "recover any stranded cost." The statute barred SRP from even *calculating* that cost. *Id*. A.R.S. § 30-813 reflected Arizona's interest in prohibiting anti-competitive behavior.  Therefore, the legitimate state interest in effect at the time, as confirmed by statute, was to prohibit the very type of discriminatory rates SRP imposed in 2015 and maintained through 2022.  In turn, Plaintiffs repeatedly allege in their Complaint that SRP's conduct, imposing discriminatory rates on customers who self-generate a portion of their electricity, like Plaintiffs, lacks any rational basis related to a legitimate state end. FAC ¶¶ 1, 9-19, 12, 46-47, 54-59, 73, 78, 82-87, 96-107, 174.

## B.    Procedural Background

Plaintiffs filed their First Amended Complaint on April 23, 2019, challenging SRP's conduct. ECF No. 12. On May 7, 2019, SRP filed a motion to dismiss challenging the adequacy of Plaintiffs' claims. ECF No. 14, 14-1. The Court granted SRP's motion to dismiss on certain grounds. *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 432 F. Supp. 3d 1070 (D. Ariz. 2020) ("*Ellis I*").  The Court's ruling on the equal protection claim was based on timeliness and accrual of claims. *Id.* at 1087-88. The Court, however, indicated in addressing the state action immunity issue that "Arizona has not articulated a clear and affirmative policy

5

to permit the District's anticompetitive conduct." *Id.* at 1085-86.

The Court of Appeals affirmed the district court's holding that Plaintiffs' claims for monopolization and attempted monopolization under the Sherman Act were not barred by the filed-rate doctrine and state-action immunity (*Ellis II*, 24 F.4th at 1278) and also upheld the determination that state action immunity doctrine did not apply. *Id.* at 1276-77 ("To the contrary, the district court correctly observed that Arizona's 'statutes signal a shift by [the] legislature to *promote* competition in the retail electricity market,' not to curtail it." …. "Even if '[t]he sort of competition [Arizona law] envisions has yet to emerge on the scale the legislature hoped,' Arizona has clearly 'expresse[d] a policy preference for competition in electricity generation and supply.'") (citations omitted). Finally, the Court of Appeals reversed the Court's dismissal of the Equal Protection theory, holding that new claims accrued each month Plaintiffs were charged the allegedly discriminatory rates (*id*. at 1272-73), and reversed the Court's dismissal of the monopoly and attempted monopoly theories, holding that Plaintiffs adequately alleged antitrust injury (*id*. at 1274-75) ("The increased prices that SRP imposed on solar customers are 'inextricably intertwined with'—indeed they are the means of—SRP's allegedly unlawful scheme to reduce solar-energy competition.").

SRP now moves to dismiss the Equal Protection (Count VII) and attempted monopoly (Count II) theories. Notably, SRP does not move to dismiss the monopoly theory under the Sherman Act, conceding the case will proceed no matter the outcome of this motion. *See* ECF No. 42 at 3 (recognizing Count I monopolization count remains).

## III.   ARGUMENT

### A.   Legal Standard

When a complaint is analyzed at the pleading stage under Rule 12(b)(6), well-pled factual allegations are presumed as true. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A complaint setting forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter stating a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

Here, with regard to the Equal Protection Claim, Plaintiffs' complaint alleges that: 1) Plaintiffs were treated differently in comparison to other similarly situated people with respect to their purchase of identical electricity, 2) there was *no rational basis* for SRP's conduct adopting the discriminatory and anticompetitive rates at issue, and 3) SRP's conduct was in direct conflict with Arizona's laws and policies, including the anti-discriminatory rate provisions in §30-805, making clear that there was no legitimate state interest. FAC ¶¶ 1, 9-19, 46-47, 54-59, 73, 78, 82-87, 96-107, 170-71, 174, 182. Those allegations must be accepted as true at the motion to dismiss stage. *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 688 n.2 (9th Cir. 2019).

A "perplexing situation" arises when a lawsuit challenging a government action subject to rational basis review is evaluated under the deferential standard of a Rule 12(b)(6) motion to dismiss. *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992). "The solution is to 'take as true all of the complaint's allegations and reasonable inferences that follow, [and then] apply the resulting 'facts' in light of the deferential rational basis standard." *Flying J Inc. v. City of New Haven,* 549 F.3d 538, 546 (7th Cir. 2008) (quoting *Wroblewski*, 956 F.2d at 460). The court in *Wroblewski* ultimately held that to get past a Rule 12(b)(6) motion to dismiss on an equal protection claim, a plaintiff must merely "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." 965 F.2d at 460. Here, Plaintiffs have plainly met their burden of alleging sufficient facts to overcome the presumption that there is no rational basis between SRP's implementation of discriminatory rates and a legitimate governmental goal. FAC ¶¶1, 9, 96-107.  Plaintiffs adequately allege that SRP's discriminatory rates violate the equal protection clause because there can be no rational basis when they conflict with Arizona's express interest in prohibiting them.

## B.    Plaintiffs Allege Violations of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

The Fourteenth Amendment's Equal Protection Clause "generally require[s] that all

persons subject to state legislation shall be treated alike under similar circumstances." *Crerand v. State,* 859 P.2d 772, 774 (Ariz. App.1993). Under equal protection rationality review, a law must bear a rational relationship to a legitimate governmental interest. *Romer v. Evans,* 517 U.S. 620, 635 (1996) (citing *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 462 (1988)). "Rational basis review, while deferential, is not 'toothless.'" *Peoples Rights Org., Inc. v. City of Columbus,* 152 F.3d 522, 532 (6th Cir. 1998)(citation omitted). When a state governmental entity imposes discriminatory charges against one group of citizens but not others, such conduct gives rise to a valid claim under the Equal Protection Clause, through 42 U.S.C. 1983. *See*, *e.g.*, *Gosnell Dev. Corp. v. Ariz. Dept. of Revenue*, 744 P.2d 451, 453 (Ariz. Ct. App. 1987) (discriminatory tax rates violate Equal Protection Clause); *see also County of Maricopa v. North Central Dev. Co.,* 566 P.2d 688, 691 (Ariz. Ct. App. 1977) (same).

SRP argues that solar customers are not similarly situated to non-solar customers and that its discriminatory rate has a rational basis. However, SRP completely ignores the number one factor fatal to its argument—whether Arizona has a *legitimate interest* in increasing its electricity rates for self-generating customers in order to recoup alleged stranded costs of serving them. Because Arizona law expressly prohibited this practice at the time E-27 was implemented and Plaintiffs charged, such an interest, by definition, cannot be considered legitimate. It can have no rational basis, and it cannot stand as a basis to differentiate between SRP customers.

### 1. Because Arizona law forbids charging differential rates, doing so cannot be considered a legitimate state interest.

The Arizona Constitution expressly establishes that the State's interest is to ensure that utility customers pay the same rates for the same services without respect to the provider's costs.

> All charges made for service rendered, or to be rendered, by public service corporations within this state shall be just and reasonable, and no discrimination in charges, service, or facilities shall be made between persons or places for rendering a like and contemporaneous service….

Ariz. Const. Art. 15, §12. Arizona statutes also prohibited entities like SRP from imposing discriminatory electricity rates regardless of differential costs to provide those services:

A. Public power entities shall:

> Establish unbundled ancillary electric transmission and distribution *and other*

8

1
2

*service prices and terms and conditions that are nondiscriminatory* and that reflect the just and reasonable price for providing the service. Except as provided in paragraph 3, public power entities shall not consider the profits or losses associated with electric generation service in establishing electric distribution service prices.

3

A.R.S. §30-805(A) (emphasis added). Furthermore, and most importantly, A.R.S. §30-805(D)

4

expressly *prohibited* SRP from using either 1) any increased cost to SRP or 2) solar customers'

5

reduced electricity purchases due to self-generation as a basis to justify discriminatory rates:

6
7
8

(D) Any reduction in electricity purchases from a public power entity resulting from self-generation, demand side management or other demand reduction attributable to any cause other than the retail access provisions of this chapter shall not be used to calculate or recover any stranded cost from a customer.[2]

9

While SRP is a public power entity, as opposed to a public service corporation like APS,

10

the anti-discriminatory price mandate in A.R.S. §30-805 is nevertheless consistent with the

11

Arizona Constitution's anti-discrimination clause, both of which reflect the State's interest in

12

prohibiting discriminatory rates—the precise opposite of what SRP contends justifies its

13

conduct. The State's interest reflected in §30-805(A) and (D) must be recognized—a point SRP

14

completely ignores in its brief. FAC ¶¶ 96-107.[3] SRP's actions imposing discriminatory rates

15

on solar customers are plainly contrary to these state interests. Its justifications of these actions

16

as a cost recovery mechanism therefore lacks any rational basis related to a legitimate state end.

17

*See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 462 (1981) (statutes reflect state's

18

interest).  *See also Chamber of Commerce v. City of Seattle*, 890 F.3d 769, 789-90 (9th Cir.

19

2018)(sub-state entity cannot set a state policy that trumps statutes enacted by the legislature).

20

In *Town of Wickenburg v. Sabin*, 200 P.2d 342, 343-44 (Ariz. 1948), the Arizona

21

Supreme Court noted that "the law on discrimination" is "well-settled," and explained:

22
23
24
25
26

[2]    While these statutory provisions may have recently changed, new laws are not applied retroactively and the Equal Protection analysis requires consideration of the laws and policies as existed at the time the challenged charges were made. Courts apply a presumption against retroactivity that generally requires "that the legal effect of conduct ... ordinarily be assessed under the law that existed when the conduct took place." *CFPB v Gordon*, 819 F 3d 1179, 1197 (9th Cir. 2000), citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (applying the presumption against retroactivity to statutes).

27
28

[3]    That Plaintiff's separate claim under the EPCA was dismissed for technical reasons related to the sufficiency of the pre-filing notice of claim does not affect Plaintiffs' allegations that the provisions of EPCA reflect the state's interest for purposes of the equal protection claim.  Those allegations are expressly incorporated into the equal protection claim.  FAC ¶ 96-107, 169.

'The charges must be equal to all for the same service under like circumstances. A public service corporation is impressed with the obligation of furnishing its service to each patron at the same price it makes to every other patron for the same or substantially the same or similar service' ... 'The common law upon the subject is founded on public policy which requires one engaged in a public calling to charge a reasonable and uniform price to all persons for the same service rendered under the same circumstances.'

*Id.* at 77–78 (quoting 4 Eugene McQuillin, *Municipal Corporations* § 1829 (2d ed. 1943)). Relying on *Sabin*, the Arizona Supreme Court has further described the non-discrimination doctrine as the "obligation of a public service corporation to provide impartial services and rates to all its customers similarly situated." *Miller v. Salt River Valley Water Users' Ass'n*, 463 P.2d 840, 844 (Ariz. 1970) (citation omitted).[4]

Consistent with Plaintiff's contentions, the Ninth Circuit confirmed that Arizona's policy as reflected in the EPCA is to promote competition in the electricity market and disallow discriminatory rates.

The State requires public power entities to "open their entire service territories to competition to electricity suppliers certificated by the [Arizona Corporation Commission]," *id.* § 30-803(A), and prohibits them from charging their competitors discriminatory rates to use their facilities, *id.* § 30-805(E). It requires public power entities to "adopt a code of conduct to prevent anticompetitive activities," *id.* § 30-803(F), and to establish "terms and conditions for competition in the retail sale of electric generation service," *id.* § 30-802(B)(1)(a). *It prohibits public power entities from calculating rates so as to offset "[a]ny reduction in electricity purchases ... resulting from self-generation." Id. § 30-805(D).* And it subjects providers of "competitive electric generation service" to its antitrust laws. *Id.* § 30-813. As SRP concedes, this statutory framework expresses a general policy favoring competition.

… SRP responds that rate-setting is "inherently anticompetitive." Arizona specified just the opposite, however, when it declared "that the most effective manner of establishing just and reasonable rates for electricity" is not for SRP to set them anticompetitively but instead for them "to be established in a competitive market." Ariz. Rev. Stat. Ann. § 40-202(D).

*Ellis II*, 24 F.4th at 1276-77 (emphasis added). *See also SolarCity Corp. v. Salt River*

---

[4]    *See also McClusky v Sparks*, 291 P.2d 791, 793 (Ariz. 1955) ("Deliberate and systematic undervaluation of plaintiffs' property at a figure greatly in excess of the undervaluation of other like properties amounts to a violation of the Arizona constitution, art. 9, sec. 1, which requires that all taxes 'shall be uniform upon the same class of property within the territorial limits of the authority levying the tax * * *' and offends the equal protection clause of the Fourteenth Amendment to the constitution of the United States."); *S. Pac Co. v. Cochise County*, 377 P.2d 770, 776 (Ariz. 1963) citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923) (discriminatory taxes violate Equal Protection Clause).

*Project Agric. Improvement & Power Dist.*, 2015 WL 9268212, *3 (D. Ariz. Dec. 21, 2015)("Had the Court decided the issue as a matter of law, it would have found that Arizona has not expressly articulated a clear policy authorizing the conduct of [SRP]. . . . In fact, the opposite is true.").

The United States Department of Justice also confirmed in its amicus brief filed in this case, that given statutes such as the EPCA, SRP's conduct imposing discriminatory rates on solar customers was contrary to any state interest and SRP's contentions to the contrary were "wrong."[5]

Thus, Arizona's *express interest* as reflected in the EPCA, and now as reflected in the law of the case, is precisely the opposite of the interest SRP advances in an attempt to justify its discriminatory rates and unequal treatment of Plaintiffs. Because A.R.S. §30-805(A), (D) and (E) specifically prohibit any of the justifications SRP attempts to advance, such bases are, by definition, illegitimate. As a result, SRP's conduct imposing the discriminatory higher electricity rates only on customers that self-generated a portion of their power, but purchased the rest of their electricity at retail from SRP just like non-solar customers (or those grandfathered) is discriminatory and plainly violates the Equal Protection Clause.

SRP relies solely on *Freeport Minerals Corp. v. Arizona Corp. Comm'n*, for the proposition that Arizona has a legitimate interest in identifying the costs of serving different "classes of customers" to "minimize[e] subsidies among those different groups." Def. Br. at 10, ECF No. 48-1 at 15.  But that case concerned the establishment of rates among residential customers, *as a singular class*, and multiple commercial customer classes. *See Freeport Minerals Corp. v. Arizona Corp. Comm'n*, 419 P.3d 942, 945 (Ariz. Ct. App. 2018) (describing classes at issues as one residential class and four commercial classes). *Freeport* does not stand

---

[5]  Brief for the United States of America as Amicus Curiae Supporting Plaintiffs-Appellants at 27-29, *Ellis v. Salt River Project Agric. Improvement and Power Dist.*, No. 20-15301 (9th Cir. July 8, 2020), ECF No. 18)("Despite these deregulatory statutes [§§30-803, 30-805, 30-813], SRP asserted several arguments in the district court in an attempt to show a state policy to displace competition, but those arguments are legally wrong and unpersuasive") (Robinovitch Decl., Ex. A).

for the proposition that the residential class could itself be split up into subclasses for purposes of charging differential rates to minimize "subsidies" *within* a customer class. Nor could it— that practice is prohibited by Arizona law as demonstrated above.

> **2. Because Arizona law forbids differentiating between self-generating customers and other utility customers, Plaintiffs are similarly situated to non-solar users.**

The equal protection analysis requires the Court to identify the state's classification of groups. *Country Classic Dairies, Inc. v. Milk Control Bureau,* 847 F.2d 593, 596 (9th Cir. 1988). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). SRP aims to draw a distinction "between solar and non-solar customers," and between plaintiffs and "grandfathered solar customers," for purposes of defeating the similarly-situated prong of the equal protection theory. Viewed in the full context of the FAC, however, these distinctions lack the proverbial difference necessary to evade equal protection of the law.

First, equal protection claims are premised on the notion that there is some identifiable difference between the group being unfairly treated compared to another group. Therefore, merely pointing out "differences" – without showing why they are relevant – does nothing to defeat the similarly-situated test. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) ("The groups need not be similar in all respects, but they must be similar in those respects relevant to the Defendants' policy.").

Second, the only difference Defendant points to between solar and "non-solar" customers is that solar customers use less electricity than non-solar customers. *See* Def. Br. at 5, ECF No. 48-1 at 10. ("different usage patterns"; "different demands" on grid; sell electricity back to grid). So the relevant distinction offered by Defendant is not solar versus non-solar, but is instead customers who use less electricity versus other customers. But this line cannot support the solar versus non-solar dichotomy. The Complaint alleges that many non-solar customers themselves use far less electricity than other customers, with no resulting disparity in rates. *See* FAC ¶105 (customers who use significantly less electricity include those who also use natural gas, those who only live in Arizona part of the year, and those who take steps to reduce their consumption).

Therefore, solar customers are similarly situated to non-solar customers in at least two ways: (1) they purchase the same electricity from SRP (FAC ¶¶ 1, 5, 9-13, 17, 71-72, 83-85) and (2) they have consumption patterns similar to—or even less than—other customers who are not being charged higher rates (FAC ¶¶105-106).

Third, at the time SRP imposed the E-27 rate, Arizona law expressly *forbade* distinguishing between solar and non-solar customers on the basis that solar customers who self-generate purchase less electricity or a desire to charge more to recover stranded costs. A.R.S. §30-805(A) and (D). Because Arizona *outlawed the distinction Defendant draws* between solar and non-solar customers based on solar customers' reduction in electricity purchases, solar customers are, by definition, similarly situated to non-solar customers. SRP cites *Gen. Textile Printing & Processing Corp. v. City of Rocky Mount*, 908 F. Supp. 1295 (E.D.N.C. 1995), where the court rejected an equal protection claim against a municipal utility based on differences between ratepayers. However, in that case North Carolina law *expressly permitted* the municipality to charge a differential rate based on the cost of service and the quantity used, and a "handful" of customers generated 88% of the city's wastewater. *Id*. at 1309. Here, in contrast, Arizona law forbids charging a differential rate in these circumstances, including even *calculating* any stranded cost, and solar customers use less, not more, electricity.

Finally, SRP offers no relevant reason, much less any authority, to view customers who installed solar after the E-27 plan went into effect differently from those who installed systems before the higher rates began. The possibility that some installers may have known about E-27 is not a valid basis to discriminate against them. SRP points to no authority permitting discrimination merely because the target of discrimination allegedly acquiesced to it. The prohibitions against discrimination in §30-805(A) and (D) are absolute and not based on deception. Thus, SRP's equal protection violations cannot be excused by arguing that some consumers hypothetically may have purchased their solar systems knowing they would be subjected to discriminatory rates that violate the statute (which they had no alternative but to

PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS

pay given SRP's monopoly position).[6] The fact that SRP treats pre-E-27 installers the same as non-solar customers tends to support Plaintiffs' allegation that all these distinctions are meaningless and are used as a pretext to preventing future solar installations.

### 3. Plaintiffs have plausibly alleged that the E-27 rate does not rationally relate to SRP's purported interest of balancing costs among customers.

In the alternative, even if charging self-generators a higher rate in an attempt to recoup stranded costs of serving them were a legitimate state interest, Plaintiffs have adequately alleged that SRP's E-27 rate cannot achieve that goal because no such costs exist. Although, as SRP notes, a classification may be over and underinclusive and need not reflect a perfect policy, a classification fails rational-basis review when it "rests on grounds wholly irrelevant to the achievement of the State's objective." *See Heller v. Doe by Doe,* 509 U.S. 312, 324 (1993) (quoting *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 71 (1978)). The classification must bear a logical relationship to its purported purpose. *Romer v. Evans,* 517 U.S. 620, 632-33 (1996). If the purpose does not exist, then the classification cannot bear a rational relation to it.

Here, Plaintiffs have not merely alleged that the execution of E-27 was not done with "mathematical nicety" or that it was an "imperfect fit" with the goal of recouping costs. Instead, the FAC specifically alleges that the entire basis for the higher rate—increased costs caused by solar users—does not exist.[7] The rational basis for the purported concern must ultimately be supported by evidence in the record. Without such evidence, the basis for the classification cannot be considered rational. *See Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 969 (9th Cir. 2017) (holding no rational basis for concern that state could face liability for improperly issuing drivers' licenses to noncitizens where evidence showed no instances where state had

---

[6]   A.R.S. §30-813 evidences the state's interest against such activities.

[7]   *See* FAC ¶11 ("solar energy systems confer substantial benefits to the grid and to SRP itself that offset or reduce the costs of service for customers with solar energy systems"); ¶101 ("The ultimate premises of SRP's assertion are unsubstantiated. Rather than forcing additional costs on other customers, solar customers actually benefit SRP and all its customers in numerous ways, including reducing SRP's costs of generating power, distribution…."); ¶104 ("SRP is charging solar customers far more than the amount of fixed costs than are attributed to such customers, while charging all other customers a small fraction of the fixed costs attributable to their use of the SRP grid."); ¶105 ("SRP's argument that it is preventing a 'subsidy' is pretextual and is demonstrated by SRP's comfort with the large 'cross subsidies' it continues to provide since those subsidies do not arise from solar competition.").

14

faced liability for issuing licenses to noncitizens not authorized to be present in the country, among other bases for concern unsupported by the evidence). At the pleading stage, Plaintiffs' clearly pleaded complaint alleging that solar users do not ultimately result in higher costs for SRP is sufficient to satisfy the lack of rational basis element of the equal protection claim.

**C.      Standing Exists for Plaintiffs' Attempted Monopolization Claim.**

 SRP asks this Court to blatantly ignore the Ninth Circuit's clear finding that Plaintiffs adequately alleged antitrust injury. *See* Def. Br. at 14-15; *Ellis II*, 24 F.4th at 1275 ("[Plaintiff] adequately alleges antitrust injury."). The Court should reject this argument and disregard SRP's attempt to frame its position as something other than direct contradiction of clear guidance from the Ninth Circuit.  Standing exists for Plaintiff's attempted monopolization claim.

Given the Ninth Circuit's holding, there is no dispute that SRP "cannot escape liability by portraying [Plaintiffs'] injury as mere collateral damage of its exclusionary conduct." *Ellis II*, 24 F.4th at 1275. SRP also acknowledges that the Ninth Circuit did, in fact, rule "on antitrust injury." Def. Br. at 14. Nevertheless, SRP rehashes its argument that Plaintiffs cannot, as a matter of law, have suffered antitrust injury. *See* Def. Br. at 15 (arguing Plaintiffs lack antitrust standing because they cannot establish injury due to their status as consumers).

SRP asks this Court to look at other relevant factors outside of antitrust injury to determine Plaintiffs' antitrust standing. Granted, while antitrust injury is a preeminent factor in determining antitrust standing, there are several other factors the Supreme Court has identified, including: (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1054 (9th Cr. 1999). "[A] court need not find in favor of the plaintiff on each factor" to establish antitrust standing. *Id.* at 1055. No single factor is decisive, but "great weight" is given to the first factor of antitrust injury. *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS

1    All factors weigh in favor Plaintiffs' antitrust standing. The Court of Appeals held that

2    Plaintiffs' alleged injuries are the type the antitrust laws were intended to prevent. *See Ellis II*,

3    24 F.4th at 1275 (finding antitrust injury). As to the second factor of direct injury, Plaintiffs paid

4    inflated rates directly to SRP. The Ninth Circuit rejected SRP's framing of Plaintiffs' injury as

5    merely "collateral." *See id*. The Ninth Circuit's finding that the LGAA shields SRP from federal

6    antitrust damages moots the third through fifth factors, though these factors would weigh in

7    Plaintiffs' favor regardless. The harm suffered by Plaintiffs is also not merely speculative;

8    Plaintiffs' payments reflect measurably higher rates than those paid by power consumers

9    without solar panels. There would be no risk of duplicative recovery, as Plaintiffs would seek

10   only to recover the overcharges that they themselves paid. Finally, there would be no complexity

11   in apportioning damages because there are no other parties who could or would seek recovery

12   for the inflated rates paid by power consumers who have solar panels installed.

13   Once a plaintiff establishes antitrust standing based on the Supreme Court's articulated

14   factors, the distinction between competitor and consumer is not itself an additional relevant

15   factor to be considered in the standing analysis. Neither precedent nor this Court's earlier ruling

16   indicates otherwise. Indeed, this Court discussed the relevance of the distinction between

17   consumers and competitors only in the context of the Court's evaluation of the antitrust injury

18   component of antitrust standing. *See Ellis I*, 432 F. Supp. 3d at 1093 n.17. The Court cited

19   *Neagle v. Goldman Sachs Group, Inc.*, to highlight the specific relevance of this distinction. *Id.*

20   The *Neagle* court specifically considered the distinction only in its analysis of establishment of

21   an antitrust *injury*, rather than the establishment of antitrust *standing* more broadly. *Neagle*, No.

22   6:18-cv-00754-MC, 2019 WL 1102199, at *12 (D. Or. Mar. 1, 2019) ("Thus, higher prices paid

23   by consumers in an attempted monopolization, as Neagle alleges here, are not injuries the

24   antitrust laws were designed to prevent."). Because there is already a finding from the Ninth

25   Circuit on the existence of Plaintiffs' antitrust injury, the consumer-competitor distinction is

26   altogether irrelevant.

27   SRP's argument is further undermined by the Ninth Circuit's recognition that "it is not

28   the status as a consumer or competitor that confers antitrust standing, but the relationship

16

between the defendant's alleged unlawful conduct and the resulting harm to the plaintiff." *Am. Ad. Mgmt., Inc. v. Gen. Tel. of California*, 190 F.3d 1051, 1058 (9th Cir. 1999). In the present case, the Ninth Circuit found just such a relationship:

> The increased prices that SRP imposed on solar customers are "inextricably intertwined with"—indeed they are the means of—SRP's allegedly unlawful scheme to reduce solar-energy competition. SRP cannot escape liability by portraying Ellis's injury as mere collateral damage of its exclusionary conduct. Ellis alleges "a purposefully anticompetitive scheme" and "seeks to recover as damages the sums lost to [him] as the consequence of [SRP's] attempt to pursue that scheme." He adequately alleges antitrust injury.

*Ellis II*, at 1275 (cit. omit) (quoting *Blue Shield of Va. v. McCready*, 457 U.S. 465, 483-84 (1982)). The United States Department of Justice also filed an amicus brief supporting that Plaintiffs sufficiently alleged antitrust standing and injury. *See* Brief for the United States of America as Amicus Curiae Supporting Plaintiffs-Appellants at 11-20, *Ellis v. Salt River Project Agric. Improvement and Power Dist.*, No. 20-15301 (9th Cir. July 8, 2020), ECF No. 18 at 11-14 and n.4 (explaining that consumers have antitrust standing in attempted monopolization cases where the means of trying to attain monopoly power is through imposing penalties on them)(Robinovitch Decl., Ex. A).

Moreover, even if SRP were not mistaken on the law, which it is, SRP is also wrong on the facts of its own argument. As alleged in the Complaint, Plaintiffs are both consumers *and* competitors of SRP because they generate power that decreases demand for SRP's own generated power. FAC ¶¶ 60-87, ECF No. 12. So even if SRP's consumer/competitor distinction acted as a total bar to antitrust standing for Count II, which it does not, Plaintiffs as competitors of SRP would still have antitrust standing for that claim.

This Court should therefore reject SRP's back-door bid to undermine the Ninth Circuit's finding that Plaintiffs adequately alleged antitrust injury.  Standing for Count II plainly exists.

## IV.   CONCLUSION

For all the above reasons, this Court should deny SRP's renewed motion in its entirety.

**ZIMMERMAN REED LLP**

Date:  June 16, 2022          By:    /s/ Hart Robinovitch
                                     Hart L. Robinovitch (AZ SBN 020910)
                                     14646 North Kierland Blvd., Suite 145
                                     Scottsdale, AZ 85254
                                     Telephone: (480) 348-6400
                                     Facsimile: (480) 348-6415
                                     Email: hart.robinovitch@zimmreed.com


**ZIMMERMAN REED LLP**
David M. Cialkowski (*pro hac vice*)
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
Email: david.cialkowski@zimmreed.com


**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (*pro hac vice*)
Daniel C. Hedlund (*pro hac vice*)
Daniel J. Nordin (*pro hac vice*)
Kaitlyn L. Dennis (*pro hac vice forthcoming*)
Canadian Pacific Plaza
120 South Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
Email: dhedlund@gustafsongluek.com
Email: dnordin@gustafsongluek.com
Email: kdennis@gustafsongluek.com


*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS