**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Ellis, et al., | No. CV-19-01228-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Salt River Project Agricultural Improvement and Power District, | |
| Defendant. | |

Pending before the Court is Defendant Salt River Project Agricultural Improvement and Power District's ("SRP's") Renewed Motion to Dismiss ("Renewed MTD"). (Doc. 48.) The Motion is fully briefed, (*see* Docs. 49; 51), and the Court held oral argument on July 26, 2022. After considering the parties' briefing and arguments, as well as the relevant caselaw, the Court will grant SRP's Renewed MTD for reasons explained below.

## I.    BACKGROUND

The Court's original dismissal of this case contains a lengthier background section, (Doc. 29 at 1–4), which is incorporated by reference. Relevant here, Plaintiffs[1] are customers of SRP, a utility company that provides power to much of metropolitan Phoenix. (Doc. 48-1 at 6; Doc. 49 at 6.) Plaintiffs also have home solar installations that allow them to generate some of their own power. (Doc. 12 at ¶¶ 20–27.)

In 2014, SRP adopted a new rate structure ("Standard Electric Price Plans" or

---

[1] Plaintiffs include William Ellis, Robert Dill, Edward Rupprecht, and Robert Gustavis. (Doc. 49 at 6.)

"SEPPs") that included a new E-27 Plan—applicable to solar customers who began self-generating electricity after December 8, 2014—which charged certain customers additional fees and different rates for self-generating some of their own electricity through solar energy systems. (*Id.* at ¶¶ 6, 72–76.)  Plaintiffs installed solar panels sometime after the E-27 Plan took effect, (*id.* at 7–8), and they initiated this lawsuit in 2019, (Doc. 1).  At that time, Plaintiffs alleged violations of the Equal Protection Clause and the Sherman Act, 15. U.S.C. § 1 *et seq.*, as well as various state law claims.  (*See generally id.*)  On January 10, 2020, this Court granted SRP dismissal of all the claims against them.  (Doc. 29.)

Plaintiffs appealed, and the Ninth Circuit affirmed the Court's dismissal of the state law claims but reversed its dismissal of the federal law claims.  *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1266 (9th Cir. 2022).  Notably, on the equal protection claim, the Ninth Circuit refused to address Defendant's argument that its adoption of the SEPPs passed rational basis review.  *Id.* at 1273.  Because this Court had not considered the argument, the Ninth Circuit declined "to do so in the first instance" and, instead, left "it to the district court to consider on remand."  *Id.*  Moreover, regarding Plaintiffs' federal antitrust claims, the Ninth Circuit found that Plaintiffs had sufficiently alleged an antitrust injury.  *Id.* at 1275.  However, it affirmed this Court's finding that the Local Government Antitrust Act ("LGAA"), 15 U.S.C. §§ 34–36, shielded SRP from federal antitrust damages.  *Ellis*, 24 F.4th at 1277–78.  But because Plaintiffs also sought declaratory and injunctive relief, the Ninth Circuit remanded the federal antitrust claims for further proceedings.  *Id.* at 1278.

Consequently, three of the Claims in Plaintiffs' First Amended Complaint ("FAC") are still pending before the Court—their equal protection claim (Count VII), as well as their claims for monopolization (Count I) and attempted monopolization (Count II).  SRP has renewed its MTD on Counts II and VII for failure to state a claim. (Doc. 48-1 at 6.)

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the

claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the non-moving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.   DISCUSSION

In their Renewed MTD, SRP moves for dismissal of Plaintiffs' equal protection claims (Count IV), as well as their attempted monopolization claim (Count II).  (Doc. 48-1 at 1.)  The Court will address each claim in turn.

### A. Equal Protection

The parties all advance arguments under the assumption that SRP's allegedly

discriminatory ratemaking is subject to rational basis review.  (Doc. 12 at ¶ 114(d), 174; Doc. 48 at 10; Doc. 49 at 6, 11–13.)  The Court agrees.  "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008) (quoting *Hayes v. Missouri*, 120 U.S. 68, 71–72 (1887)).  Under equal protection rational review, "a law must bear a rational relationship to a legitimate governmental purpose." *Romer v. Evans*, 517 U.S. 620, 635, 116 S. Ct. 1620, 1629, 134 L. Ed. 2d 855 (1996).

Moreover, "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  The instant case is one of economic policy, and Plaintiffs neither allege a suspect classification, nor a violation of a fundamental constitutional right; thus, this heightened burden is theirs to bear.  *See id.* at 315 ("[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'"  (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973))).

SRP argues that Plaintiffs' equal protection claim should be dismissed because (1) Plaintiffs have not identified similarly situated individuals who were treated differently, and (2) there is a rational basis for SRP's enactment of the E-27 Plan.  (Doc. 48-1 at 10.) Plaintiffs respond that SRP lacks a legitimate governmental interest in "increasing its electricity rates for self-generating customers in order to recoup alleged stranded costs of serving them."  (Doc. 49 at 13.)  Plaintiffs also assert that there is no rational basis for SRP's actions, and that Plaintiffs have identified similarly situated individuals who were treated differently.  (*Id.* at 17, 19.)

Thus, the Court is tasked with determining if, as a matter of law, SRP's enactment

of the E-27 Plan (1) treated similarly situated individuals differently; (2) served a legitimate governmental interest; and (3) was rationally related to accomplishing that governmental interest.

### 1. Similarly Situated Individuals

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (internal quotation marks omitted). Thus, to prevail on their equal protection claim, Plaintiffs must show "that a class that is similarly situated has been treated disparately." *Id.* (quoting *Christian Gospel Church, Inc. v. City & Cty. of S.F.*, 896 F.2d 1221, 1225 (9th Cir. 1990), *superseded on other grounds by* 42 U.S.C. § 2000e).

"The first step in equal protection analysis is to identify the state's classification of groups." *Country Classic Dairies, Inc. v. State of Mont., Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). The next step is to "look for a control group" that is "composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018). "Parties allegedly treated differently in violation of the Equal Protection Clause are similarly situated only when they are 'arguably indistinguishable.'" *Erickson v. Cnty. of Nevada ex rel. Bd. of Supervisors*, 607 F. App'x 711, 712 (9th Cir. 2015) (quoting *Engquist*, 553 U.S. at 601 (2008)).

SRP has distinguished between three groups, which it claims are not similar in all relevant respects: (1) those who do not use any solar energy system to supplement their electricity ("Non-Solar Customers"); (2) those who started self-generating solar power *before* the SEPPs were adopted ("Grandfathered-Solar Customers"); and (3) those who started self-generating solar power *after* the SEPPs were adopted ("Solar Customers"). (*See* Doc. 48-1 at 13.) Plaintiffs claim that these three categories are identical in all relevant

respects and, therefore, should be treated this same.  (Doc. 49 at 17–18.)  The Court disagrees with Plaintiffs.

First, the Solar Customers are distinguishable from the Non-Solar Customers.  SRP correctly highlights that the FAC contains numerous differences between these two classes, including (1) energy usage: Solar Customers use less energy than Non-Solar Customers; (2) grid demands: sometimes Solar Customers draw energy from the grid and sometimes they generate excess energy, which the grid must absorb; and (3) the nature of their commercial relationship: Solar Custers buy energy from and sell energy to SRP, but Non-Solar Customers only buy.  (Doc. 51 at 10–11.)  The Court finds that these differences readily distinguish between Solar and Non-Solar Customers.

Yet, Plaintiffs argue that—under A.R.S. § 30-805(A) and (D), which has since been repealed—Arizona law prohibited distinctions between Solar and Non-Solar customers for the purpose of calculating or recovering "stranded costs." (Doc. 49 at 18.)  Indeed, Arizona law provides that "[a]ny reduction in electricity purchases from a public power entity resulting from self-generation . . . or other demand reduction attributable to any cause other than the retail access provisions of this chapter shall not be used to calculate or recover any *stranded cost* from a customer."  A.R.S. § 30-805(D).  But SRP responds that "stranded cost" is a term of art that is inapplicable here because the SEPPs were not adopted to "calculate or recover any stranded costs."  (Doc. 51 at 8 (citations omitted)).  The Court agrees.

The Ninth Circuit has opined that "stranded costs are those costs an electrical supplier incurs in anticipation of serving customers that later become unrecoverable because the supplier either cannot charge a rate that allows cost recovery or is unable to sell sufficient power."  *S. California Edison Co. v. Lynch*, 307 F.3d 794, 801 (9th Cir. 2002).  Or, put differently, "[s]tranded costs are historic investments and contractual obligations of the utilities that exceed the value of the underlying assets in a competitive environment."  *Pac. Gas & Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1021 (N.D. Cal. 2002).  "This most typically occurs when there is a shift in utility rate philosophy from a

'cost plus rate of return' design to a market-driven rate." *S. California Edison Co.*, 307 F.3d at 801 (quoting *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1180 (9th Cir.1997)).  And such philosophical changes usually happen in a "transition from a regulated environment to a competitive market." *Id.*  "Examples of stranded costs are the expenses of certain generating plants or long-term power supply contracts that cannot be recovered from customers through competitive electrical prices." *Pac. Gas & Elec. Co.*, 216 F. Supp. 2d at 1021.

As SRP correctly explains, "[t]his case has nothing to do with stranded costs." (Doc. 51 at 9.)  SRP never proffered stranded costs as a reason for adopting the SEPPs or the E-27 Plan.  The FAC itself does not allege that the E-27 Plan was a surcharge meant to recover the expenses of certain generating plants or long-term power supply contracts.  Rather, as the FAC acknowledges, SRP's proffered explanations for the distinction is that "[S]olar [C]ustomers are 'subsidized' by [Non-Solar Customers] because the payments solar customers make to SRP do not allow it to recover a sufficient portion of the *fixed costs* of offering service to those customers."  (Doc. 12 ¶ 100 (emphasis added)).  Simply put, SRP's justification was related to fixed costs, not stranded costs, and the FAC recognizes as much.  Thus, the Court is unpersuaded that Arizona law prohibits the classification that SRP has made.

Second, the Solar Customers are distinguishable from the Grandfathered-Solar Customers.  The FAC concedes that Grandfathered-Solar Customers—unlike Solar Customers—installed their solar energy systems, and thereby incurred their costs, *before* the adoption of the SEPPs and the E-27 Plan.  (*Id.* ¶ 16.)  Plaintiffs mischaracterize SRP's reliance on this fact as an argument for "permitting discrimination merely because the target of discrimination allegedly acquiesced to it." (Doc. 49 at 18.)  This is incorrect.  SRP actually argues that (1) Grandfathered-Solar Customers "have legitimate *reliance interests* in the previous rate," which Solar Customers do not; and (2) subjecting Grandfathered-Solar Customers to E-27 could result in "rate shock."  (Doc. 51 at 12 (emphasis added)).  A customer's reliance interests and a desire to avoid rate shock are permissible distinctions

under Arizona and federal law. *See Nordlinger v. Hahn*, 505 U.S. 1, 13 (1992) ("This Court previously has acknowledged that classifications serving to protect legitimate expectation and reliance interests do not deny equal protection of the laws."); *Freeport Mins. Corp. v. Arizona Corp. Comm'n*, 419 P.3d 942, 947 (Ariz. Ct. App. 2018) (explaining that "gradualism," which is the avoidance of "rate shock," is a "well-recognized tenet of, and generally accepted as a legitimate concern in, utility ratemaking").[2]

Therefore, the Court finds that Plaintiffs have failed to make prima facie showing that similarly situated individuals were treated differently because they have not provided the Court with similarly situated individuals to compare to SRP's Solar Customers. This alone warrants dismissal of Plaintiffs' equal protection claim. *See Arizona Dream Act Coal.*, 855 F.3d at 966 ("To prevail on an Equal Protection claim, plaintiffs must show that a class that is similarly situated has been treated disparately." (internal quotation marks and citation omitted)). However, given that this case has already been appealed and remanded once, and given that part of the reason for that remand was this Court's unaddressed arguments in the alternative, *Ellis*, 24 F.4th at 1273, the Court will address the parties' additional arguments about rational basis review.

## 2.    Legitimate Governmental Interest

Plaintiffs argue that SRP lacks a legitimate governmental interest in increasing its electricity rates for Solar Customers to recoup the cost of serving them. (Doc. 49 at 13.) To bolster this claim, Plaintiffs point to Arizona law that purportedly prohibits "charging different rates" to different customers. (*Id.*) SRP argues that it has a legitimate interest in ensuring that Solar Customers "pay their fair share," and that the E-27 Plan's furtherance of that interest is consistent with Arizona law. (Doc. 51 at 6.) SRP also contends that, given the economic nature of the regulation, it is owed extreme deference on the legitimacy

---

[2] The Court notes that the arguments about rate shock and reliance interests are more fitting in a discussion of the regulation's legitimacy. *See, e.g.*, *Nordlinger*, 505 U.S. at 13. However, the parties advanced these arguments in their discussions of similarly situated individuals, and the Court maintains this framework for the sake of clarity in ruling on the parties' arguments.

of its interests.  (Doc. 48-1 at 14.)  The Court agrees with SRP.

As an initial matter, "[t]he general rule is that legislation is presumed to be valid." *City of Cleburne*, 473 U.S. at 440.  That presumption is stronger "[w]hen social or economic legislation is at issue," *id.*, as is the case here.  Moreover, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Commc'ns, Inc.*, 508 U.S. at 315.  "These restraints on judicial review have added force 'where the legislature must necessarily engage in a process of line-drawing.'" *Id.* (quoting *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).  This is because "[d]efining the class of persons subject to a regulatory requirement . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line"; thus, "the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* at 315–16 (citation omitted) (cleaned up).  "This necessity renders the precise coordinates of the resulting legislative judgment *virtually unreviewable*, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Id.* at 316 (emphasis added).  Given this framework of extreme deference to regulatory economic line-drawing, the Court turns to the Arizona laws that—according to Plaintiffs—render illegitimate SRP's governmental interest.

First, as explained above, Plaintiffs' reliance on A.R.S. § 30-805(D) is misplaced. *See supra* Section III.A.1.  To reiterate, Section 30-805(D) addresses the calculation and recovery of *stranded costs*, but SRP never proffered recovery or calculation of stranded costs as the justification for its regulation.  Thus, Section 30-805(D) is inapplicable here.

Second, Plaintiffs' reliance on Arizona anti-discrimination laws—specifically Arizona Constitution, article 15, section 12, and A.R.S. § 30-805(A) and (E)—is also misplaced.  Section 12 of article 15 applies to "public service corporations," which SRP is not.  Ariz. Const. art. XV, § 12.  Plaintiffs already conceded that SRP is not a public service corporation  (*see* Doc. 49 at 14 ("SRP is a public power entity, as opposed to a public service corporation like APS.")).  Similarly, A.R.S. § 30-805(E) does not apply to

1     Plaintiffs.   That section requires that SRP "allow any provider of electric generation

2     service" access to SRP's facilitates "under rates and terms and conditions of service that

3     are nondiscriminatory, cost based, just and reasonable and comparable to the rates charged

4     for the public power entity's own use of the same facilities."  Plaintiffs are not providers of

5     an "electric generation service," which is statutorily defined as "the provision of electricity

6     for sale to retail electric customers," A.R.S. § 30-801(10).

7         Thus, the Court finds that Plaintiffs' challenges to the legitimacy of SRP's

8     governmental interest fail as a matter of law, and that the strong presumption of the

9     regulation's validity commands this outcome.[3]

10                            3.   Rational Relation

11        Plaintiffs contend that, "even if charging [Solar Customers] a higher rate in an

12    attempt to recoup stranded costs of serving them were a legitimate state interest, Plaintiffs

13    have adequately alleged that SRP's E-27 rate cannot achieve that goal because no such

14    costs exist." (Doc. 49 at 19.)  Put differently, Plaintiffs challenge that factual veracity of

15    SRP's claim that enacting the E-27 Plan saves SRP money.  SRP responds that (1) Plaintiffs

16    misconstrue SRP's justification for enacting the E-27 plan, and (2) whether the plan

17    actually achieved that goal is not, as a matter of law, relevant to the current inquiry.  (Doc.

18    51 at 12.)  Plaintiffs' arguments fail for at least three reasons.

19        First, SRP's rationale for adopting the new SEPPS does not depend on "increased

20    costs caused by [S]olar [Customers]," as Plaintiffs contend.  (Doc. 49 at 19.)  Rather, SRP's

21    rationale—as plead in the FAC—is that Solar Customers' lower electricity usage means

22    that "the payments [S]olar [C]ustomers make to SRP do not allow it to recover a sufficient

23

24    _____

      [3] Although the Court need not address the argument to resolve this matter, it agrees with

25    Defendants that the anti-discrimination doctrine embodied in the above state law provisions
      is functionally identical to that provided by the U.S. Constitution's Equal Protection

26    Clause.  *Compare Town of Wickenburg v. Sabin*, 200 P.2d 342, 343 (Ariz. 1948) ("All
      patrons of the same class are entitled to the same service on equal terms."), *with Arizona*

27    *Dream Act Coal.*, 855 F.3d at 966 ("To prevail on an Equal Protection claim, plaintiffs
      must show 'that a class that is similarly situated has been treated disparately.'" (citation

28    omitted)).

1  portion of the fixed costs of offering service to those customers." (Doc. 12 at ¶ 100.)   It

2  was about equalizing the costs to prevent subsidies.   Thus, Plaintiffs misconstrue, in their

3  brief, the rationale they alleged in their FAC.

4       Second, Plaintiffs' argument rests on the faulty premise that SRP was factually

5  wrong to conclude that the SEPPs and the E-27 Plan were necessary to address SRP's

6  recovery of fixed costs and prevent the subsidy of Solar Customers.  Indeed, whether SRP's

7  regulation "in fact" achieves its objective is not the question; the question is what SRP

8  "could rationally have decided," regardless of whether the actual objective is achieved. *See*

9  *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) ("Whether *in fact* the

10  Act will promote [it's purported objective] is not the question: the Equal Protection Clause

11  is satisfied by our conclusion that the Minnesota Legislature *could rationally have decided*

12  that its [legislation] might foster [its purported objective].").  Here, SRP certainly "could

13  rationally have decided" that different rates for Solar Customers were needed to eliminate

14  a subsidy for those customers at the expense of others.

15       Third, it is irrelevant whether SRP's ratemaking was factually supported when they

16  made their decision.  As the Supreme Court has opined, "a legislative choice is not subject

17  to courtroom fact-finding and may be based on rational speculation unsupported by

18  evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

19  Thus, Plaintiffs' factual dispute about SRP's rationale does not allow them to survive

20  dismissal.

21       Plaintiffs have fallen far short of their burden to allege facts that plausibly "negative

22  every conceivable basis which might support" SRP's differentiated rates for Solar

23  Customers.  *See Beach*, 508 U.S. at 314–315 (quoting *Lehnhausen*, 410 U.S. at 364).

24  Consequently, the Court must conclude that SRP's regulation is rationally related to

25  achieving its legitimate governmental interests.

26       In sum, SRP's adoption of the SEPPS and the E-27 Plan does not treat similarly

27  situated individuals differently and, even if it did, the regulation is rationally related to a

28  legitimate governmental interest.  Therefore, the regulation passes constitutional muster

1    under rational basis review, and Plaintiffs' equal protection claim will be dismissed.

2                    **B.  Attempted Monopolization**

3          SRP argues that Plaintiffs—who are consumers, not competitors—lack standing to

4    bring an *attempted* monopolization claim, even though the Ninth Circuit held there is an

5    antitrust injury here.  (Doc. 48-1 at 19.)  Plaintiffs content that the Ninth Circuit's holding

6    regarding antitrust injury settles the matter of standing.[4]  (Doc. 49 at 20.)  Plaintiffs are

7    mistaken.  "In fact, the Supreme Court has noted that '[a] showing of antitrust injury is

8    necessary, but not always sufficient, to establish [antitrust] standing.'"  *Am. Ad Mgmt., Inc.*

9    *v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999) (quoting *Cargill, Inc.*

10   *v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n. 5 (1986)) (first alteration original).

11   Thus, although the Ninth's Circuit's determination that Plaintiffs have an antitrust injury

12   is instructive to this Court, it does not settle the issue before it.

13         The Supreme Court has "identified certain factors for determining whether a

14   plaintiff *who has borne an injury* has antitrust standing."  *Id.* at 1054 (emphasis added).

15   These factors are: (1) "the nature of the plaintiff's alleged injury; that is, whether it was the

16   type the antitrust laws were intended to forestall"; (2) "the directness of the injury"; (3)

17   "the speculative measure of the harm"; (4) "the risk of duplicative recovery"; and (5) "the

18   complexity in apportioning damages."  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir.

19   1996) (citing *Associated Gen. Contractors of California, Inc. v. California State Council*

20   *of Carpenters*, 459 U.S. 519, 534–35 (1983)).  Here, the Court agrees with Plaintiffs that

21   the Ninth's Circuits holding—that Plaintiffs may not obtain antitrust damages here—moots

22   the third and fourth factors.  Thus, the Court need only consider factors one, two, and five.

23   _____

24   [4] Plaintiffs argue that SRP's distinctions between customers and consumer is factually
     wrong here because, "[a]s alleged in the Complaint, Plaintiffs are both consumers and
25   competitors of SRP because they generate power that decreases demand for SRP's own
     generated power."  (Doc. 49 at 22.)  The Court agrees with SRP that this argument was
26   never raised in the FAC, nor is it logical.  To say that Plaintiffs are consumers and
     customers because they generate some of their own power is like saying that everyone who
27   cooks at home is a competitor of major restaurant chains, or that anyone who uses public
     transit is a competitor of fossil fuel companies.  The argument is non-sensical, and the
28   Court will not entertain it.

                                        - 12 -

Moreover, "[t]o conclude that there is antitrust standing, a court need not find in favor of the plaintiff on each factor." *Am. Ad Mgmt., Inc.*, 190 F.3d at 1055. Indeed, "[n]o single factor is decisive," but the Court "must balance the factors." *Amarel*, 102 F.3d at 1507 (quoting *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989)). However, the Ninth Circuit has instructed that "the nature of the plaintiff's alleged injury is of 'tremendous significance' in determining whether a plaintiff has antitrust standing." *Id.* (quoting *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470 n.3 (9th Cir.1985)).

Turning to the first factor, the nature of Plaintiffs' injury for their attempted monopolization claim is that they were charged high than normal—or supracompetitive— rates for their electricity. This is problematic for Plaintiffs. One of our sister courts cogently explained the problem as follows: "As a matter of economic theory, supracompetitive rates are the result of monopoly, *not attempted monopoly*. A company which charges higher than competitive fees *before it achieves monopoly power* is merely creating an incentive for entry into that market by new competitors, not committing an exclusionary act." *In re Air Passenger Computer Rsrv. Sys.*, 727 F. Supp. 564, 569 (C.D. Cal. 1989) (emphasis added and internal citations omitted). Put differently, "higher prices paid by consumers in an attempted monopolization, as [the Plaintiff] alleges here, are not injuries the antitrust laws were designed to prevent." *Neagle v. Goldman Sachs Grp., Inc*, No. 6:18-CV-00754-MC, 2019 WL 1102199, at *12 (D. Or. Mar. 1, 2019), *aff'd sub nom. Neagle v. Altisource Sols., Inc.*, 820 F. App'x 606 (9th Cir. 2020).

The proverbial catch-22 is this: if SRP charged higher rates *after* achieving monopoly, there is antitrust claim for monopolization but not attempted monopolization because they monopoly has already been accomplished. If SRP charged higher rates *before* achieving a monopoly, there still no claim for attempted monopolization because charging higher than competitive rates in an open market is not monopolistic—in fact, it makes achieving a monopoly harder. Thus, bringing an attempted monopolization claim for supracompetitive rates is inherently flawed.

1       Consequently, other Courts have concluded that "[t]he competitor, not the

2   consumer, is the party with antitrust standing to bring a claim of attempted

3   monopolization." *Id.*; *see also Simpson v. US W. Commc'ns, Inc.*, 957 F. Supp. 201, 205

4   (D. Or. 1997) ("[P]laintiffs, as consumers, lack standing to bring a claim for attempted

5   monopolization."); *Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839-CIV-NESBITT, 1994 WL

6   912242, at *16 (S.D. Fla. Feb. 1, 1994) ("[Customer] Plaintiffs lack standing as a matter

7   of law to bring a claim for attempted monopolization.").  Indeed, this Court noted as much

8   in its previous order, (Doc. 29 at 27 n.17), and still finds that to be the case.

9       Even weighing factors two and four in Plaintiffs' favor, the Court finds that a

10  balance of the factors weighs against Plaintiffs.  Thus, Plaintiffs lack standing, and their

11  attempted monopoly claim will be dismissed.

12      **IV.**    **CONCLUSION**

13      Therefore,

14      **IT IS ORDERED** granting SRP's Renewed MTD, (Doc. 48).

15      Dated this 18th day of August, 2022.

16

17

18                           Honorable Susan M. Brnovich

19                           United States District Judge

20

21

22

23

24

25

26

27

28